## AFFIDAVIT OF JOHN W. (DON) BARRETT

STATE OF MISSISSIPPI
COUNTY OF HOLMES

I was a Carrier Scholar at the University of Mississippi, graduating *magna cum laude* in 1967. While at Ole Miss, I was a member of numerous scholastic and leadership honorary societies, was editor of the 1967 *Ole Miss* yearbook, and was elected to the University Hall of Fame. I graduated with honors from the Ole Miss Law School in 1969.

Except for a short stint in the Air Force, I have been actively engaged in the practice of law in Lexington, Mississippi, for over forty-two years; and have held an AV rating by Martindale-Hubbell for many years. I have an active trial practice throughout Mississippi, and have substantial experience in state and federal courts throughout the nation, primarily in product liability, environmental torts, and consumer fraud.

I am a former chairman of the toxic torts section of the Mississippi Trial Lawyers Association, a founding member of the Charles Clark Inn of Court in Jackson, the founding president of the Mississippi Community College Attorneys Association, and was the Mississippi Bar delegate to the 1993 and 1994 Fifth Circuit Judicial Conferences.

Basically, I make my living preparing and trying lawsuits for injured plaintiffs and cheated consumers. I have not kept count of the cases I have tried, but there have been many. I have won a substantial majority of the cases that I have tried. I have lost some cases, too.

Since 1986 I have taken a national leadership role in litigation against cigarette companies. I am one of only three plaintiff's attorneys in the United States to have tried three tobacco liability cases through jury submission. I had a leadership role in the massive *Castano* class action litigation in the U. S. District Court in New Orleans, and in its related state class action cases around the country. I am one of the attorneys who represented the State of Mississippi, through Attorney General Mike Moore, in the state's successful efforts to recover its cigarette-related health care monies spent over the past years. I also represented the Attorneys General of New York,

Louisiana, Arizona, Washington, Indiana, Alaska, Idaho, Oregon, Rhode Island, Ohio, Vermont, Illinois, and the Commonwealth of Puerto Rico in their successful litigation against the tobacco industry. I was one of three plaintiffs' attorneys who negotiated the landmark settlement with Liggett Group announced in March of 1996, as well as one of the lead attorneys in the historic settlement agreement entered into by twenty-two Attorneys General with Liggett Group on March 20, 1997. My tobacco litigation experiences have been chronicled in various national publications, including the *ABA Journal*, *The New York Times*, *The American Lawyer*, the *Wall Street Journal*, and *The Washington Post*. I have been featured in two books concerning tobacco litigation: (Cornered: Big Tobacco at the Bar of Justice, by Peter Pringle (Henry Holt and Company, New York City, 1998); and The People vs. Big Tobacco, by Carrick Mollencamp, et al (Bloomberg Press, Princeton, N.J., 1998), and my experiences in tobacco litigation are the primary focus of another book, Assuming the Risk, by Michael Orey (Little, Brown & Co., New York City, September, 1999).

I have also been featured on national television shows, including CBS's 60 Minutes, ABC's Day One, CNN's Moneyline, Court TV's Cochran & Grace and Pro's & Con's, British Broadcasting Company (BBC)'s The Tobacco Wars, which was rebroadcast in the United States by The Learning Channel, for my work in tobacco litigation, and on NBC's Dateline concerning my insurance fraud litigation.

One case which I have concluded is the class action case of *Nealy v. Woodman of the World Life Insurance Society*. This was a discrimination case brought against an insurance company, in which I was co-lead counsel. This case was settled for $23.1 million, which settlement was approved by Chief Judge William H. Barbour, Jr., of the U. S. District Court for the Southern District of Mississippi in August of 1995. In approving this settlement, Judge Barbour had the following to say:

> THE COURT...I have got a very brief statement to make that I want to make into the record...

2

> Despite the protestations of Woodmen as to their innocence of discrimination, I think it is fairly clear that the company has since its inception practiced invidious racial discrimination against African-American citizens. I think that obviously...this lawsuit has been the impetus on the very direct actions of Woodmen to hire black agents and to begin very actively selling and soliciting to black policyholders. This should also move to remove the discrimination from the lodge systems and other fraternal benefits.
>
> I think that this is a very good example as to how the class action suit can be made and used to make substantial changes that need to be made and which could not be made but for the fact that there is enough reward system in it for diligent counsel on the class plaintiffs' side to make substantial investments not only of time but also of dollars to prosecute these cases.
>
> So I think that this is a very good example of how (the) private attorney general idea under the class action mechanism can be used to obtain very real results and I see the results in this case not so much in the substantial settlement of $23 million, which will benefit these class members, but in the breakdown of a very strong system of racial discrimination which has apparently been followed by this company until it had the heat put on it by this lawsuit...
>
> Accordingly, I congratulate the class counsel for the settlement that you have made, for the progress you have made in regard to this particular company and for the results that have been obtained.

I understand that I have a good reputation among the bar that I practice with and against.

Alex Alston, a past president of the Mississippi Bar, said the following in an affidavit filed in support of our petition for approval of the settlement in the above-mentioned *Nealy* case:

> Highly skilled and competent counsel were required to achieve these results, from the basic formulation of a theory and a filing of a class action complaint to the class action settlement before this court. In my opinion, the members of the team working together to resolve this matter on behalf of the class were highly skilled, and their respective talents were necessary to bring about this remarkable result. All of class counsel (have) previously been involved in class action and complex litigation over the country, especially in the southeastern United States.
>
> Class counsel Don Barrett has been practicing law primarily on the side of plaintiffs in the southeastern United States for over 25 years. I have observed him and worked with him throughout his practice.

> He is an extremely highly skilled plaintiff's lawyer who is recognized as one of the best in this state.

I confess that I am not held in high esteem by everybody. My great friends at Adams & Reese, a high quality, blue chip defense firm headquartered in New Orleans, which represents mostly major corporations, in September of 2002 declined an invitation from my firm to associate in a new case, pointing out in an internal memorandum that "Barrett.... is seen as the devil incarnate by many of our clients."

I was lead counsel in *Houchens, et al v. Rockwell*, a complex environmental tort case which resulted in a $218 million verdict for the plaintiffs on May 31,1996, after a two-month trial in Russellville, Kentucky. After multiple trips through the Kentucky appellate system, this verdict was finally overturned in the fall of 2004. We should have settled. Over the past several years I have tried and collected damages for various plaintiffs in other environmental cases, the total of which exceeds $35 million.

I also represented the State of Mississippi in its effort to recover monies lost by Mississippi consumers, and by the state itself, as a result of an alleged price-fixing conspiracy among infant formula manufacturers. I was also co-counsel for plaintiffs in state court class-actions in thirteen state court actions involving this same price-fixing conspiracy. These cases resulted in multi-million dollar settlements in twelve of these states, but only in the making of some bad law in the thirteenth state (Louisiana), on a remand issue that plaintiffs lost in a tie vote (4-4) before the U.S. Supreme Court in March of 2000.

I was the lead Court-appointed counsel for the plaintiffs in the litigation against General Motors Corporation concerning the "sidesaddle" fuel tank litigation. Final approval of a nationwide settlement with a minimum value to the class of $500 million was achieved in April of 1999.

I was co-lead counsel in the national class action against Chrysler Corporation for its defective rear minivan door latches. In this case, a settlement was reached in the U.S. District

4

Court for the Middle District of California in the fall of 1995, and was finally approved by the Ninth Circuit Court of Appeals in early 1999.

I was lead counsel for the plaintiffs in Cox v. Shell Oil Co., et al, in the state court in Tennessee, a class action case concerning defective home plumbing systems; this case resulted in a nation-wide settlement in November, 1995, of approximately $1.1 billion, by far the largest property-damage settlement ever achieved in this country. As a result of the Cox litigation, on July 22, 1997, I was awarded the Public Justice Achievement Award by the Trial Lawyers for Public Justice Foundation "in recognition of (my) extraordinary contribution to the public interest."

I was co-lead counsel for the plaintiff class in Holmes v. Trustmark National Bank, et al, U.S.D.C., So. Dist Mississippi, No 1:95cv323BrR, a forced-placed insurance class action which resulted in an $8.8 million settlement approved by Judge Bramlette on June 4, 1997. In approving the settlement, the Court referred to my "substantial experience in mass-tort litigation" and wrote that class counsel "vigorously and zealously represented (the class members') interests throughout this litigation."

I was lead class counsel and lead trial attorney for the plaintiffs in a national class action against State Farm Mutual Insurance Company in Illinois, concerning State Farm's use of imitation crash parts in auto repair. After a seven-week trial ending in October of 1999, the jury awarded a verdict of $456 million and an additional $600 million in punitive damages was awarded by the trial judge. This was the largest verdict ever rendered in the State of Illinois and the largest against any insurance company in the United States. As a result of that litigation, I was named the first-ever "Litigator of the Month" by the National Law Journal in its issue of November 22, 1999. This verdict was subsequently affirmed by a unanimous Illinois Court of Appeals, and reversed by a 4-2 vote of the Illinois Supreme Court. Easy come, easy go.

On November 22, 2000, I was appointed as the Lead Class Counsel by Chief Judge Sarah

5

Evans Barker in the Bridgestone/Firestone/Ford tire and Explorer litigation, centralized in the U.S. District Court for the Southern District of Indiana (MDL No. 1373). A Nationwide settlement of the consumer class case against Bridgestone/Firestone was achieved in 2004 and approved by the Court in a Texas state case. On December 3, 2007, Judge David DeAlba of the Superior Court of Sacramento County, California preliminarily approved a multi-state class action settlement with Ford Motor Company. Final approval was granted in April, 2008.

In the Summer of 2001, I was named by Judge Kathleen O'Malley, U.S.D.C., Northern District of Ohio, to the Plaintiffs' Steering Committee in *In Re: Inter-Op Hip Prosthesis Liability Litigation*, MDL No. 1401, and I was a principal negotiator for the plaintiff class for a $1.045 billion settlement reached with defendants, which settlement was finally approved by Judge O'Malley on May 22, 2002.

I was lead counsel in the "alternative commission" class action litigation against Progressive Insurance Company, in which a nationwide settlement valued by the court at $493 million was reached in the Circuit Court of Johnson County, Illinois, with final approval being given by the court on November 14, 2002. In its order granting class counsel's petition for fees, the court said:

> Class Counsel were highly competent. The Class Counsel who prosecuted this case have an impressive background, and substantial experience in prosecuting similar cases on behalf of large classes against well-funded corporations. It is evident from the record that Class Counsel worked efficiently, aggressively, and with a high degree of professionalism.

In 2003, I was co-lead trial counsel in a national class action in the U.S. District Court for the Central District of California, entitled *Austin, et al. v. Lehman Brothers, Inc., et al*. At the conclusion of this three-month trial, on May 14, 2003, Judge David O. Carter made the following statement:

> Mr. Barrett, you are a superb attorney. Truly this jury has come to recognize your humor and your competency. I will never forget you looking for the elephant on

your tiptoes.

You've been courteous. You've been competent. The class is, indeed, fortunate to have you as a presenter.

You mastered the complicated fact situations and brought clarity in this Court's opinion to an extremely complex area, on behalf of your clients, and it was very helpful to the jury.

After five weeks of deliberation, the jury on June 16, 2003, returned a verdict for the plaintiff class. According to the Los Angeles Times, "the verdict marked the first time a financial backer of an abusive lender has been held liable, carving out a new area of vulnerability for Wall Street."

This *Austin v. Lehman Brothers* trial rated a chapter in the recently published book The Monster: How a Gang of Predatory Lenders and Wall Street Bankers Fleeced America – and Spawned a Global Crisis, by Michael W. Hudson (Henry Holt & Company, New York City, 2010). Lehman Brothers should have listened.

On September 17, 2003, I was appointed plaintiffs' co-lead counsel in *In Re Welding Rods Litigation* (MDL 1535) by the U.S. District Court in Cleveland, Ohio. This litigation continues. At a contested class certification hearing in that Court on April 24, 2007, nationally-prominent defense attorney John Beisner represented to the Court that I am one of "the most outstanding lawyers in the country." I do not believe that Mr. Beisner really meant it, but he did say it.

I have been frequently invited to speak at nationally-recognized legal seminars and conferences. I have spoken twice at Practicing Law Institute seminars in New York City, and at the American Conference Institute seminar in New Orleans in November of 2004, and I was the co-chairman of the Mealey's Welding Rods Litigation Conference held in West Palm Beach in October of 2004. I was a faculty member at the Sedona Conference on Complex Litigation held in April of 2005.

In an article entitled "Victory at Hand for GOP Tort Reform?" in the February 3-16, 2004, edition of *Insight,* a national news magazine, I was extensively quoted, and described therein as "one of the nation's leading litigators." I believe that description to be an exaggeration, but I do

7

consider myself to be an experienced plaintiffs' attorney and class action litigator.

On November 22, 2004, I was appointed Plaintiffs' Co-lead Counsel in *In Re High Sulfur Content Gasoline Products Liability Litigation (MDL No. 1632),* by U.S. District Judge Ivan L.R. Lemelle of the Eastern District of Louisiana. A $100 million plus settlement was finally approved by the Court in September of 2006.

On December 16, 2004, I was appointed one of six members of the Class Plaintiffs' Steering Committee in the *In Re Neurontin Marketing and Sales Practices Litigation (MDL No. 1629)*, by U.S. District Judge Patti B. Saris of the District of Massachusetts. Class certification in that case is pending. However, the case of an individual plaintiff (Kaiser Foundation Health Plan) against the defendant Pfizer, Inc., was tried over a five week period in February and March, 2010 in Boston, and I was a member of the trial team for Kaiser. That trial resulted in a jury verdict for plaintiff on its civil RICO claim in the amount of $47.34 million, which will be trebled under the RICO statute. This is believed to be the first civil RICO verdict ever rendered against a major pharmaceutical company.

During the course of that trial the Court told the jury that the lawyers in the case on both sides were "the best in the country," and thanked the attorneys for conducting "a fabulous trial...it's the kind of thing that you become a judge to sit on." As a result of my work on this case, I was selected by the Public Justice Foundation as a finalist for the 2011 Trial Lawyer of the Year Award.

On April 13, 2006, I was inducted as a Fellow of the Mississippi Bar Foundation, "for outstanding legal ability and devotion to the public and profession."

I am presently lead counsel of the Katrina Litigation Group, a consortium of lawyers who represent hundreds of homeowners along the Mississippi Coast who were victimized first by Hurricane Katrina and then by their insurance companies. To date our group has favorably settled over 1,600 homeowners' claims (including those of former U.S. Senator Trent Lott, U.S. Representative Gene Taylor, and U.S. District Court Judge Louis Guirola) for more than $215 million. We are the only attorneys to have tried Hurricane Katrina cases to successful verdict in

both state and federal court (*Lisanby v. USAA,* in June of 2008, resulting in a verdict and payment to Admiral and Mrs. Lisanby of $849,841; and *Penthouse v. Certain Underwriters at Lloyds,* resulting in a verdict on February 24, 2011, amounting to $1,832,804. On December 21, 2011, the *Penthouse* Court entered final judgment in the case, adding attorneys' fees, costs, and interest in the amount of $3,111,533, bringing the total award to $4,944,135. This time, *they* should have settled.

I was co-lead counsel in a class action lawsuit *(Holman v. Noble Energy, Inc.*, District Court County of Weld, Colorado) brought on behalf of royalty owners in the Greater Wattenberg natural gas field in Colorado. This suit, which complained of systematic under-payments of royalties by a major natural gas producer, has recently resulted in a $98 million settlement for the class. This settlement received final approval by the Colorado court on June 11, 2007. Since that time, we have achieved class settlements in four similar cases, most recently in the federal district court in Denver on October 29, 2010. These five cases have produced settlements exceeding $150 million; I am also co-lead counsel in several similar cases currently pending in the Western District of Virginia. In the smallest of these cases, a settlement of $3.4 million, which recovers over 95% of all compensatory damages claimed by the plaintiff class, received final approval by the District Court on October 4, 2011. In approving the fee application for that case, Judge James P. Jones complimented our work, adding, "I'm sure the class realizes that, were it not for the experienced and well-resourced counsel in this case, there would be no recovery."

The State of Mississippi believes that the City of Memphis, Tennessee, is unlawfully taking about 20% of its water from an underground reservoir lying within Mississippi, and has sued to enjoin the practice and for money damages exceeding $1.2 billion. I have been retained by the State of Mississippi as lead trial counsel for this case.

On January 26, 2009, in *Stanich, et al v. Travelers Indemnity Company, et al*, U.S.D.C., N.D. Ohio, No. 1:06 CV 962-KMO, I with others was appointed as class counsel in a certified class action concerning fraudulent insurance pricing. In this order the Court stated,

> Counsel has been both thorough and insightful in its analysis of the potential claims of class members....The Court is quite familiar with the attorneys..., all of whom are well-qualified, experienced and capable of conducting class action litigation...Finally, the Plaintiff's counsels' conduct to date as well as the Court's familiarity with their attorneys and firms, clearly indicates that they have sufficient resources to prosecute this action and intend to apply themselves to the task diligently.

On March 31, 2010, the Court approved a settlement reached in that case which the Court valued at $17,398,633, finding that class counsel were "experienced, professional, and highly skilled."

On October 26, 2009, Chief U.S. District Judge John A. Woodcock, Jr., of the District of Maine, appointed me to the Plaintiffs' Executive Committee in *In Re: Light Cigarettes Sales Practices Litigation* (MDL Docket No. 1-09-MD-2068). On November 3, 2009, the members of that PEC elected me to co-chair that governing committee.

I am co-lead class counsel in *Vereen v. Lowe's Home Centers, Inc.*, a national class action over the sale of defective drywall, pending in the Superior Court of Muscogee County, Georgia. On January 12, 2012, a settlement was finally approved by that court, affording financial relief to over 40,000 claimants. In approving the requested fee award, the *Vereen* Court spoke of our "excellent reputations in the legal community."

Outside the practice of law, I am engaged in the usual civic and religious affairs of our community. Over the course of my adult life, I have been president of the Lexington Rotary Club (and on February 15, 2011, was named a Paul Harris Fellow by the Rotary Foundation), chairman of the Board of Stewards of the Lexington Methodist Church, and chairman of the school board. I even got elected a few years ago by the Holmes County Chamber of Commerce as Holmes County's "Man of the Year," an unusual honor for a trial lawyer. I founded and am a director of Lexington Homes, Inc., a successful manufactured housing company that has employed several hundred people in our town over the past seven years, and am founder and co-owner of Lexington Home Center, a hardware store/lumber yard that does right well and keeps Lexingtonians from having to shop at Lowe's or Walmart.

My wife Nancy Katherine and I have been married for over forty-four years. We have three children, so far, and eight grandchildren. In our spare time, we share a keen interest in American history. Nancy is on the governing board of the Hermitage, President Andrew Jackson's home in Nashville; I am on the governing board of Beauvoir, the home of Jefferson Davis. I am founding member of the Advisory Board of the Center for Civil War Research at the University of Mississippi. On September 16, 2011, I was elected to governing Board of Trustees of the Civil War Trust, the nation's largest non-profit organization dedicated to the preservation of America's Civil War battlefields.

Further, affiant sayeth not.

_____
John W. (Don) Barrett

SWORN TO and subscribed before me, on this the 15th day of January, 2012.

(SEAL) # 63088
LENA P. DAVIS
Commission Expires June 5, 2013
STATE OF MISSISSIPPI NOTARY PUBLIC
HOLMES COUNTY

_____
Notary Public

My Commission Expires: 6-5-13

11