1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, California 95126
3   Telephone:     (408) 369-0800
    Facsimile:     (408) 369-0752
4   pgore@prattattorneys.com

5   Sandra Cuneo (SBN 110388)
    CUNEO, GILBERT & LADUCA, LLP
6   11620 Wilshire Boulevard, Suite 900
    Los Angeles, CA 90025
7   Telephone:     (310) 582-5939
    Facsimile:     (310) 582-5943
8   scuneo@cuneolaw.com

9   *Attorney for Plaintiffs and the Putative Class*

10  (Additional counsel listed on signature page)

11              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
12              **SAN FRANCISCO DIVISION**

13  LOS GATOS MERCANTILE, INC. D/B/A          No. 3:13-cv-01180-WHO
    LOS GATOS ACE HARDWARE, et al.,
14                                            **PLAINTIFFS' MEMORANDUM IN**
    Plaintiffs,                               **OPPOSITION TO DEFENDANTS'**
15                                            **MOTION TO DISMISS THE FIRST**
    v.                                        **AMENDED CLASS ACTION**
16                                            **COMPLAINT**
    E.I. DUPONT DE NEMOURS AND
17  COMPANY, et al.                           Date: April 23, 2014
    Defendants.                               Time: 2:00 p.m.
18                                            Courtroom: Courtroom 2, 17th Floor
                                              Judge: Honorable William H. Orrick, III
19

20

21

22

23

24

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ........................................................................................................ 1

SUMMARY OF FACTS ............................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.    Legal Standard ................................................................................................ 2

II.   IPPs Have Standing to Pursue Their Claims ..................................................... 3

    A.  IPPs Have Standing Under Article III .......................................................... 3

        1.  Class Certification is "logically antecedent" to questions of Article III standing .................................................................................................. 3

        2.  IPPs have sufficiently alleged injury-in-fact. ................................................ 5

    B.  IPPs Have Alleged Antitrust Standing .......................................................... 8

        1.  *AGC* does not apply to IPPs' state antitrust claims. ....................................... 8

        2.  Application of the *AGC* factors supports antitrust standing. ......................... 10

    C.  IPPs May Pursue Injunctive and Equitable Relief ......................................... 12

III.  IPPs State a Claim Under the States' Antitrust Laws ........................................ 13

    A.  IPPs Allege a Nexus Between Defendants' Unlawful Conduct and Intrastate Commerce ................................................................................................... 13

    B.  IPPs Adequately Allege Hawaii and Illinois Claims ...................................... 14

        1.  The Hawaii notice requirement does not require dismissal for non-compliance. ................................................................................................ 14

        2.  The Illinois class action bar is a procedural rule that is superseded by Rule 23 and *Shady Grove* ..................................................................................... 15

IV.    IPPs State a Claim Under the States' Consumer Protection Laws ................................... 15

    A.  Arkansas and Rhode Island Permit Price-Fixing Claims .......................................... 15

    B.  IPPs Have Standing to Sue Under the Arkansas, New York, and Vermont Consumer Protection Laws ...................................................................................................... 17

    C.  *Shady Grove* Permits Class Action Lawsuits Under the Laws of Montana, New York, and South Carolina ................................................................................................ 18

    D.  Business Entities Can Bring Claims in the District of Columbia, Massachusetts, Montana, and New York ...................................................................................... 18

    E.  IPPs Properly Allege Consumer-Oriented Conduct Under New York Law ............. 20

    F.  IPPs Properly Allege Unconscionable Conduct ..................................................... 21

    G.  IPPs Properly Plead Fraud and Deceitful Conduct.................................................. 23

    H.  IPPs Sufficiently Allege a Nexus to Intrastate Conduct........................................... 24

    I.   IPPs Followed the Proper Procedures for Bringing Claims in Massachusetts .......... 25

V.    IPPs Properly Allege Unjust Enrichment ........................................................................ 25

    A.  IPPs' Allegations Are Sufficiently Specific Under *Twombly* and *Iqbal* ................... 25

    B.  IPPs May Pursue Restitution Through Unjust Enrichment Claims........................... 26

    C.  IPPs Adequately Allege Unjust Enrichment ......................................................... 27

        1.  IPPs did not receive the benefit of their bargains.......................................... 27

        2.  Evaluating consideration is a fact issue inappropriate for determination under Rule 12(b)(6). ......................................................................................... 28

        3.  IPPs do not have to confer a direct benefit on Defendants to state an unjust enrichment claim. .................................................................................... 29

        4.  IPPs pleaded the absence of a legal remedy. ................................................ 30

        5.  IPPs' pleadings satisfy all the elements of unjust enrichment...................... 30

VI.   IPPs' Claims Are Not barred by Any Statutes of Limitations..........................................32

    A.  Fraudulent Concealment is a Factual Issue ................................................................33

    B.  IPPs Adequately Allege Fraudulent Concealment ......................................................33

        1.  IPPs adequately allege affirmative acts of concealment. ..............................33

        2.  IPPs adequately allege that they had neither actual nor constructive
            knowledge of the facts giving rise to their claims. ........................................35

        3.  IPPs adequately allege due diligence............................................................37

    C.  The Discovery Rule Tolls the Statutes of Limitations in Most States.......................37

CONCLUSION ............................................................................................................................38

## **TABLE OF AUTHORITIES**

**Cases:**

*Alexander v. Exxon Mobil*, 219 Cal. App. 4th 1236 (Cal. App. 2 Dist. 2013) ....................... 38

*Ark. ex rel. Bryant v. R & A Inv. Co.*, 985 S.W.2d 299 (Ark. 1999) ........................................ 21

*Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004) ........................................................... 9

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ................................................................................................................... 8, 9

*Baptist Health v. Murphy*, 226 S.W.3d 800 (Ark. 2006) ........................................................ 15

*Bell Atlantic Co. v. Twombly,* 550 U.S. 544 (2007) .............................................................. 2, 3

*Bubar v. Ampco Foods, Inc.*, 752 F.2d 445 (9th Cir. 1985) ..................................................... 12

*Bunker's Glass Co. v. Pilkington PLC*, 75 P. 3d 99 (Ariz. 2003) ............................................. 9

*Burton v. Micron Tech., Inc.*, No. CV 2004-226-1 (Ark. Cir. Ct. 1st Div. Nov. 6, 2009) ....... 16

*Cal. v. Infineon Tech. AG*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................. 16, 38

*California v. ARC America Corp.*, 490 U.S. 93 (1989) .................................................. 8, 9, 12

*Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wash. 2010) .............................................. 5

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) ............................................ 33

*Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53 (2002) ........................................... 19, 20

*Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ............................................ 31

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499 (9th Cir. 1988) ............. 33, 35, 37

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ................................ 3

*Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762 (8th Cir. 2010) ...................................... 21

*D.R. Ward Const. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006) ...... *passim*

*Dew v. Langford*, 666 So. 2d 739 (Miss. 1995) ................................................................. 30, 31

*Dist. Cablevision Ltd. Ptshp. v. Bassin*, 828 A.2d 714 (D.C. 2003) ...................................... 22

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................ 5

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) .................................................. 4

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392 (9th Cir. 1989).................... 32

*Elkins v. Microsoft Corp.*, 817 A.2d 9 (Vt. 2002)................................................... 17

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) ....................................................... 8

*Fernandes v. Havkin,* 731 F. Supp. 2d 103 (D. Mass. 2010) .................................... 30

*Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 09-CV-00852, 11-CV-00162, 2012 WL 3841397 (E.D. Wis. Sept. 5, 2012) ............................................................. 17, 29, 30

*Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012)................ 32

*Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ................................................................................................ 17

*Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045 (S.D. Fla. 2009) ................... 24

*Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986) ............................ 32

*Hines v. Overstock.com, Inc.*, 09 CV 991 SJ, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013)............................................................................................. 25, 26

*Holmes v. Nat'l Serv. Indus., Inc.*, 717 S.E.2d 751 (S.C. 2011) ............................................ 37

*Hook v. Lippolt*, 755 N.W.2d 514 (Iowa 2008) ................................................... 38

*Hovering v. Transnation Title Ins. Co.,* 545 F. Supp. 2d 662 (E.D. Mich. 2008)..................... 4

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009).................................... 26

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03-Civ-5889, 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) ................................................................................ 14

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ......................................... 8, 9, 12

*In re Actiq Sales and Marketing Practices Litig.*, 790 F. Supp. 2d 313 (E.D. Pa. 2011) ........ 28

*In re Aftermarket Filters Antitrust Litig.*, Case No. 08-C-4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009).................................................................................. *passim*

*In re Auto Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612
(E.D. Mich. June 6, 2013) ................................................................ *passim*

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010)................................................ 4, 5

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002)........................................ 6

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000)............. 27, 29, 30

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL 1917, 2013 WL 4505701
(N.D. Cal. Aug. 21, 2013) .................................................................. 25

*In re Cathode Ray Tube Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010) ........ 8, 33, 34

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009).... *passim*

*In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224 (M.D. Pa. 2010)........... 15

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
782 F. Supp. 487 (C.D. Cal. 1991).............................................. 35, 36, 37

*In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012) ...... 29

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......... 20, 21, 25, 27

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*,
CIV. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013)......................... 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................... 8, 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) .............................. 16, 17, 20, 21

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009)................. *passim*

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524 (E.D. Pa. 2010) ......................... 20, 26, 27

*In re Graphics Processing Units Antitrust Litig.,* 540 F. Supp. 2d 1085
(N.D. Cal. 2007)...................................................................... 8, 11, 12, 14

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993
(S.D. Cal. 2011) .............................................................................. 3, 4

*In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-MD-2087,
2014 WL 295302 (S.D. Cal. Jan. 27, 2014) ............................................................ 18

*In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730, 2007 WL 1959225
(D.N.J. Jun. 29, 2007) .................................................................................................... 4

*In re Infant Formula Antitrust Litig.*, MDL No. 878, 1992 WL 503465
(N.D. Fla. Jan 13, 1992) .............................................................................................. 33

*In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404
(D. Del. 2007) ..................................................................................................... 12, 28

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ................................. 28, 29, 30

*In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004) ........................................ 38

*In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3d Cir. 2002) ............................................ 10

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) ................................................................... 16, 25, 28

*In Re Optical Disk Drive Antitrust Litig.*, 10–MD–2143 RS, 2011 WL 3894376
(N.D. Cal. Aug. 3, 2011) ............................................................................................... 8

*In re Optical Disk Drive Antitrust Litig.*, No. 3:10–md–2143, 2012 WL 1366718
(N.D. Cal. Apr. 19, 2012) ................................................................................. 12, 13, 18

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010) ......................... 26

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) ................... 13, 25

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777 (N.D. Ohio 2011) ................. 36

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009) ........................................ 9

*In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012) ...... *passim*

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27 (D.D.C. 2008) ........... 3

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 593 F. Supp. 2d 29 (D.D.C. 2008) .......... 13

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) ............................................ 4

*In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777 (N.D. Cal. 2007) ................. *passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-2343, 2013 WL 2181185
(E.D. Tenn. May 20, 2013) ........................................................................................ 27

*In re Southeastern Milk Antitrust Litig.,* 555 F. Supp. 2d 934 (E.D. Tenn. 2008)..................... 3

*In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603
(N.D. Cal. 2009)....................................................................................................... 13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896
(N.D. Cal. 2008)......................................................................................................... 3

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819,
2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ............................................................. 16

*In re Static Random Access Memory Antitrust Litig.*, 2008 WL 2610549
(N.D. Cal. Feb. 14, 2008)......................................................................................... 16

*In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13 (3d Cir. 1978) .............................................. 10

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D 672 (S.D. Fla. 2004).................... 31

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036 (N.D. Cal. 2011) .......... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL 4501223
(N.D. Cal. Sept. 28, 2011)................................................................................... 31, 32

*In re TFT-LCD (Flat Panel) Antitrust Litigation,* 267 F.R.D. 583 (N.D. Cal. 2010)............. 13

*In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489 (1st Cir. 2009).................................. 20

*In re Vitamins Antitrust Litig.*, No. MISC99–197, 2000 WL 1524912
(D.D.C. July 14, 2000) ............................................................................................. 38

*In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000).................................... 10

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
495 F. Supp. 2d 1027 (N.D. Cal. 2007) .................................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109
(N.D. Cal. 2009)................................................................................................. *passim*

*Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882 (E.D. Ark. 2008)...................... 17, 21

*ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42 (4th Cir. 1983) .......................................... 22

*Jepson v. Ticor Title Ins. Co.*, C06-1723, 2007 WL 2060856
(W.D. Wash. May 1, 2007) ........................................................................................... 4, 5, 6

*Kaufman v. Sirius XM Radio, Inc.*, No. 11-121, 2012 WL 1109397
(2d Cir. April 4, 2012) .................................................................................................... 25

*Kersey v. Fernald*, 911 So.2d 994 (Miss. App. 2005) ............................................................ 30

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) .............................. 10

*Lorenzo v. Qualcomm*, 603 F. Supp. 2d 1291 (S.D. Cal. 2009) ............................................... 9

*Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007) ..................................... 9, 10, 11, 12

*Lucas Auto. Eng'g v. Bridgestone/Firestone, Inc.,* 140 F.3d 1228 (9th Cir. 1998) ................ 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................... 3, 5, 6

*Martis v. Grinell Mut. Reinsurance Co.,* 905 N.E. 2d 920 (Ill. Ct. App. 2009) ...................... 31

*Melton v. Carolina Power & Light Co.*, No. 11-270, 2012 WL 2401635
(D.S.C. June 25, 2012) .................................................................................................... 31

*Meyer v. Snyders Lance, Inc.*, 4:12-cv-215, 2012 WL 6913724
(M.D. Ga. Dec. 12, 2012) .................................................................................................. 3

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ........................... 5

*Nelson v. Ho*, 564 N.W.2d 482 (Mich. Ct. App. 1997) .......................................................... 19

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) ......................................................... 3

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007) .............................................. 11

*Opp v. Matzke*, 559 N.W.2d 837 (N.D. 1997) ....................................................................... 31

*Osborne v. Capital City Mortg. Corp.*, 727 A.2d 322 (D.C. 1999) ........................................ 22

*Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458
(D. Del. 2010) ................................................................................................................. 19

*Pace Indus. Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir. 1987) .................................... 32

*Paschall's v. Dozier*, 407 S.W.2d 150 (Tenn. 1966) .............................................................. 28

*Payton v. Cnty. of Kane*, 308 F.3d 673 (7th Cir. 2002) ........................................................... 4

*Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840 (N.D. Cal. 2012)...................................................... 26

*Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496 (D.N.J.2009)................................................. 4

*Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880 (W.Va. 2000)................................................. 31

*Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161 (S.C. 2003).................................................. 31

*Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858
(Kan. Ct. App. Apr. 20, 2007)......................................................................................... 28

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ...................... 15, 18

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline,
PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................................ 25, 32

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, Case No. 07-5205,
2008 WL 3833577 (D.N.J. Aug. 13, 2008)......................................................................... 4

*Slobin v. Henry Ford Health Care*, 666 N.W.2d 632 (Mich. 2003) ........................................ 19

*Stanislaus Food Products Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059
(E.D. Cal. 2011) ............................................................................................................ 9, 11

*Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381 (D. Md. 1990)................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................................... 3

*Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009) ......... 4, 6, 14

*Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28 (E.D.N.Y.2006) ............................................. 19

*Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005) ......................................................... 16

*Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980
(S.D. Fla. Sept. 19, 2011)................................................................................................. 30

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)..................................... 32

1   **Statutes, Rules, and Other Materials:**

2   28 U.S.C. § 1332(d) ................................................................................................8

3   ARK. CODE. ANN. § 4-88-107(a)(10)....................................................................22

4   FED R. CIV. P. 8(d)(3)............................................................................................30

5   FED. R. CIV. P. 23(a) ...............................................................................................6

6   FLA. STAT. ANN. § 501.204 ....................................................................................23

7   MASS. GEN. LAWS ch. 93A § 9(3) .........................................................................26

8   MONT. CODE ANN. §§ 30-14-133(1), 30-14-102(1)...............................................20

9   N.M. STAT. § 57-12-2(E) ........................................................................................23

10  RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011) ......27

11  UTAH CODE § 76-10-919(1) .....................................................................................7

12

13

14

15

16

17

18

19

20

21

22

23

24

1

## INTRODUCTION

Defendants do not and could not argue that Plaintiffs Los Gatos Mercantile, Inc. d/b/a Los Gatos Ace Hardware; Fred Swaim, Inc. d/b/a Quality Auto Parts; Ace Hardware of South Walton, Inc.; Lexington Home Center, LLC; R.F. Cole, Inc. d/b/a Brewers Paint Center; Cusimano Carstar, Inc.; and The Carpet Shoppe, Inc. (IPPs) fail to plausibly allege an antitrust conspiracy. IPPs' lawsuit is directly analogous to a direct purchaser case in the District of Maryland against the same defendants based on the same facts, in which the district court denied Defendants' motions to dismiss, granted the plaintiffs' motion for class certification, and then denied motions for summary judgment. *In re Titanium Dioxide Antitrust Litig.*, No. 1:10-cv-00318 (D. Md.). Defendants settled that lawsuit for $163.5 million on the eve of trial. They now seek dismissal of IPPs' claims based on standing, statutes of limitations, and other state specific issues. IPPs have alleged a detailed conspiracy by Defendants violating numerous state antitrust and consumer protection laws that caused them and the putative class members injuries of the type those statutes were designed to remedy. IPPs have properly pleaded claims for relief arising from Defendants' conspiracy, and Defendants' motion should be denied.

## SUMMARY OF FACTS

IPPs plead facts clearly indicating that Defendants E.I. DuPont de Nemours and Co.; Huntsman International, LLC; Kronos Worldwide, Inc.; and Millennium Inorganic Chemicals, Inc. ("Defendants") engaged in a long-running conspiracy to fix prices, rig bids, and allocate the market and customers for Titanium Dioxide. The First Amended Class Action Complaint (FAC) points to 45 coordinated price increases by Defendants over a nine-year period that resulted in Titanium Dioxide's rising from $0.05 per pound in 2002 to a zenith of $0.25 per pound in 2011 (a 500 percent increase). FAC ¶ 137. These successful increases came only after

1     DuPont's admission to the Titanium Dioxide Manufacturers Association (TDMA), of which the

2     remaining Defendants were already members, and were instituted despite a decrease in demand.

3     FAC ¶¶ 77-78, 80.  TDMA provided Defendants with ample opportunities to meet and discuss

4     price increases.  Eight-eight percent of the price increases during the relevant time period

5     occurred within a month of TDMA meetings.  FAC ¶ 71.

6          It is now clear that Defendants' coordinated price increases for businesses, including

7     IPPs, were successful and raised the prices that consumers paid for Titanium Dioxide.  FAC ¶¶

8     142-45.  Because there are no viable alternatives for Titanium Dioxide, IPPs were forced to pay

9     the artificially high prices.  FAC ¶ 50.  It cannot be denied that Titanium Dioxide follows a

10     traceable path through the distribution chain and that overcharges for Titanium Dioxide were

11     passed on to them through that distribution chain.  *Id.*  There is an easily traceable physical

12     chain of distribution evidencing how IPPs were injured by Defendants' conspiracy in violation

13     of the Sherman Act and various state antitrust and consumer protection laws.  FAC ¶¶ 142-45.

14     Direct purchasers have said that Titanium Dioxide "makes up most of [its] raw material costs"

15     and have confirmed that those costs are passed on to their customers.  FAC ¶¶ 143, 145.

16     "Manufacturers of products containing Titanium Dioxide know what percentage of its products

17     is comprised of Titanium Dioxide, and they often advertise that percentage on the product

18     packaging."  FAC ¶ 143.

19                        **ARGUMENT**

20   **I.**    **Legal Standard**

21          Under *Bell Atlantic Co. v. Twombly* and Rule 12(b)(6), IPPs "must allege 'only enough

22     facts to state a claim to relief that is plausible on its face.'"  *In re Flash Memory Antitrust Litig.*,

23     643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) ("*Flash Memory*") (quoting 550 U.S. 544, 570

24     (2007)).  "The standard "does not impose a probability requirement at the pleading stage; it

1  simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence

2  of illegal agreement." *Twombly*, 550 U.S. at 556. "All material allegations in the complaint

3  will be taken as true and construed in the light most favorable to the plaintiff." *In re Static*

4  *Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 900 (N.D. Cal. 2008)

5  (citing *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986)).

6        While *Twombly* did not radically alter Rule 8 pleading requirements, it gave rise to the

7  unfortunate practice of filing motions to dismiss in every case, no matter how well grounded,

8  causing needless delay and draining judicial resources. *Meyer v. Snyders Lance, Inc.*, 4:12-cv-

9  215, 2012 WL 6913724, *1 (M.D. Ga. Dec. 12, 2012). "[T]he court's job is not to scrutinize

10  each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc. v. Makor*

11  *Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). This long-standing principle governs the

12  construction of antitrust claims. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370

13  U.S. 690, 699 (1962). Post-*Twombly* antitrust decisions have routinely rejected attempts to

14  compartmentalize factual allegations. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*,

15  587 F. Supp. 2d 27, 33, n. 4. (D.D.C. 2008); *In re Southeastern Milk Antitrust Litig.*, 555 F.

16  Supp. 2d 934, 943-44 (E.D. Tenn. 2008).

17  **II.**    **IPPs Have Standing to Pursue Their Claims**

18      **A.**    **IPPs Have Standing Under Article III**

19          *1. Class Certification is "logically antecedent" to questions of Article III standing.*

20      To have Article III standing, IPPs "'must have suffered an "injury in fact"—an invasion

21  of a legally protected interest which is (a) concrete and particularized, and (b) actual or

22  imminent, not conjectural or hypothetical.'" *In re Hydroxycut Mktg. & Sales Practices Litig.*,

23  801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011) ("*Hydroxycut*") (quoting *Lujan v. Defenders of*

24

*Wildlife*, 504 U.S. 555, 560 (1992)).  There can be no doubt that businesses and consumers in every state allowing indirect injury cases against price-fixers suffered cognizable injury as a result of Defendants' cartel.  However, Article III standing under the various state statutes should not be resolved at the pleadings stage because class certification is "logically antecedent" to issues of Article III standing under state law.  *See id*. at 1004 (quoting *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J.2009)); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264 (W.D. Wash. 2009); *Jepson v. Ticor Title Ins. Co.*, C06-1723, 2007 WL 2060856, *1-2 (W.D. Wash. May 1, 2007).[1]  Even in the Ninth Circuit, where "*Easter* indicates that there is no per se rule that class certification must be considered before standing issues, it does not – and cannot – stand for the proposition that standing always must be considered first." *Jepson*, 2007 WL 2060856 at *2 (distinguishing *Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)).

Defendants "conflate the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23."  *Hydroxycut*, 801 F. Supp. 2d at 1004 (quoting *Ramirez*, 644 F. Supp. 2d at 505).  "Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."  *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d

---

[1] *Accord Hovering v. Transnation Title Ins. Co.,* 545 F. Supp. 2d 662, 667 (E.D. Mich. 2008); *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("[S]tatutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs."); *Chocolate*, 602 F. Supp. 2d at 579-80; *Filters*, 2009 WL 3754041, at *5; *Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, Case No. 07-5205, 2008 WL 3833577, *8-9 (D.N.J. Aug. 13, 2008); *In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730, 2007 WL 1959225, at *15 (D.N.J. Jun. 29, 2007); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267-70 (D. Mass. 2004).

356, 377 (E.D.N.Y. 2010).  Their "capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law antitrust claims on behalf of class members in these states."  *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579 (M.D. Pa. 2009) ("*Chocolate*").  This is what makes standing "logically antecedent" to class certification.[2]

### 2.  IPPs have sufficiently alleged injury-in-fact.

"[A]ll of the plaintiffs, named and unnamed, have Article III standing to sue defendants."  *In re Aftermarket Filters Antitrust Litig.*, 08 C 4883, 2009 WL 3754041, *5 (N.D. Ill. Nov. 5, 2009) ("*Filters*").  IPPs, unlike the *Easter* plaintiffs, allege injury in fact and can trace it to Defendants' conspiracy.  *See*, *e.g.*, FAC ¶ 13 (alleging that Defendants' conduct "substantially affected commerce throughout the United States"), ¶ 45 ("Defendants have acted in ways that cause similar injury to the Classes as a whole."), ¶¶ 141-49 (describing the effects Defendants' conspiracy had on IPPs' and the putative class members).  *See also Jepson*, 2007 WL 2060856 at *2 (distinguishing the *Easter* plaintiffs who "lacked standing to sue certain defendants because they could not trace their injuries to them"); *Lujan*, 504 U.S. at 560-61 (providing that a plaintiff adequately pleads injury-in-fact through allegations that she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent).  "That is, the named Plaintiffs allegedly personally purchased [Titanium Dioxide] at artificially inflated prices—a monetary injury—which constitutes actual harm."  *In re Processed*

---

[2] Defendants cite *Miller v. Ghirardelli Chocolate Co.* for the proposition that IPPs lack standing to pursue claims for products they have not purchased.  *Miller* is a food labeling case, and the products at issue had different labels.  912 F. Supp. 2d 861, 870 (N.D. Cal. 2012).  Here, "the same core factual allegations and causes of actions" apply to all products containing Titanium Dioxide.  *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010).  Defendants' argument "boil[s] down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage."  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012).

*Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 887 (E.D. Pa. 2012) ("*Eggs*"); FAC ¶¶ 142-49.  "Furthermore, this injury purportedly was caused by the Defendants' alleged conspiratorial conduct which named Plaintiffs complain violated the [32] states' laws."  *Eggs*, 851 F. Supp. 2d at 887; FAC ¶¶ 142-49.   The conspiracy was between manufacturers that control over 70 percent of the Titanium Dioxide market, minimizing the possibility that a plaintiff purchased a product unaffected by the cartel.  FAC ¶ 57, 62.  This level of specificity is all that Article III and the Supreme Court require. *See Lujan*, 504 U.S. at 561; *D.R. Ward Const. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 492-93 (E.D. Pa. 2006) ("*D.R. Ward*") (finding plaintiffs' allegations of constitutional standing sufficient because they alleged paying "inflated prices for products . . . due to an overcharge . . . which was passed on to them from the intervening links within the distribution chain"); *Filters*, 2009 WL 3754041 at *5; *Eggs*, 851 F. Supp. 2d at 887-91.

Given that IPPs have suffered an injury in fact, requiring them to add plaintiffs from all 32 states "would be inefficient and contrary to the purposes of Rule 23."  *Vernon*, 643 F. Supp. 2d at 1264.  The named IPPs and the putative class members have suffered the same injuries from a single course of conduct.

> If certification is granted, the proposed class would contain plaintiffs who have personal standing to raise claims under the laws governing purchases in all of the [32] states, and the only relevant question about the named plaintiffs' standing to represent them will be whether the named plaintiffs meet the ordinary criteria for class standing [commonality, typicality, and adequacy].

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("*Buspirone*"); FED. R. CIV. P. 23(a).  "It is thus 'appropriate to decide class certification before resolving alleged Article III challenges of the present kind.'"  *Jepson*, 2007 WL 2060856 at *1 (quoting *Buspirone*, 185 F. Supp. 2d at 377.

Nearly all of the states' antitrust and consumer protection laws have broad language that "can plainly be construed to not require in-state residency or an in-state purchase, but rather only that some of the Defendants' conduct occurred, or the effects of which were felt, within the state—thereby violating the statute." *Eggs*, 851 F. Supp. 2d at 888. *See* Exhibit A. "Indeed, when read literally, the language of these respective provisions authorizes broad private enforcement, and thereby can be read to afford relief to all persons whose injuries may have occurred outside of the state, but are causally related to an antitrust violation." *Eggs*, 851 F. Supp. 2d at 888-89. *Compare* UTAH CODE § 76-10-919(1) (explicitly conferring standing only on "[a] person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury").[3]

The FAC plainly alleges that "Titanium Dioxide price competition was restrained, suppressed, and eliminated" and "Titanium Dioxide prices were raised, fixed, maintained, and stabilized at artificially high levels" throughout each of the states and that "Defendants' illegal conduct substantially affected" commerce within each state.[4]   In the "absence of definitive legal authority as to whether *vel non* an extraterritorial injury that might be traced to an antitrust violation is cognizable" under the state statutes, motions to dismiss based on Article III standing should be rejected. *Eggs*, 851 F. Supp. 2d at 891.

---

[3] Though none of the IPPs are citizens or residents of Utah, the putative classes explicitly include such entities and individuals.  FAC ¶¶ 36-38.  For the reasons discussed in Section II.A.1 *supra*, their non-residency is not a basis for dismissing IPPs' Utah claims.

[4] FAC ¶¶ 179(a)-(b) (Arizona), 181(a)-(b) (District of Columbia), 182(a)- (b) (Hawaii), 183(a)-(b) (Illinois), 184(a)-(b) (Iowa), 185(a)- (b) (Kansas), 186(a)-(b) (Maine), 187(a)-(b) (Michigan), 188(a)-(b) (Minnesota), 189(a)-(b) (Mississippi), 190(a)-(b) (Nebraska) 191(a)-(b) (Nevada), 192(a)-(b) (New Hampshire), 193(a)-(b) (New Mexico), 195(a)-(b) (North Carolina), 196(a)-(b) (North Dakota), 197(a)-(b) (Oregon), 198(a)-(b) (South Dakota), 200(a)-(b) (Utah), 201(a)-(b) (Vermont), 202(a)-(b) (West Virginia), 203(a)-(b) (Wisconsin), 213(c)-(d) (Massachusetts).

B.     **IPPs Have Alleged Antitrust Standing**

*Associated General Contractors of California, Inc. v. California State Council of Carpenters* (*AGC*) is an interpretation of *federal* antitrust law in a wholly different context and does not address IPPs' state antitrust claims.[5]     459 U.S. 519 (1983).   The vast majority of courts addressing this issue hold that *AGC* does not apply to indirect purchaser claims.[6]   IPPs have alleged facts sufficient to show antitrust injury under state antitrust laws and, to the extent state antitrust laws so require, under *AGC* as well.

*1.   AGC does not apply to IPPs' state antitrust claims.*

Because this Court is sitting in diversity under the Class Action Fairness Act, it must follow state law in interpreting antitrust standing.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *D.R. Ward*, 470 F. Supp. 2d at 494-95; 28 U.S.C. § 1332(d).   Applying *AGC* to bar IPPs' damages claims would effectively abrogate the remedies authorized by the *Illinois Brick*

---

[5] *AGC* postdated *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which held that indirect purchasers could not maintain damages claims under federal antitrust law.   In response to *Illinois Brick*, many states created *Illinois Brick* "repealer" provisions that permitted indirect purchasers to maintain damages claims under state law.   After *AGC*, the Supreme Court rejected a preemption challenge to these "repealer" statutes, and affirmed the right of the states to provide indirect purchasers with redress for their antitrust injuries.  *California v. ARC America Corp.*, 490 U.S. 93 (1989) ("*ARC America*").   The *AGC* analysis does not, therefore, apply to indirect purchasers' antitrust claims under state laws.

[6] Defendants rely heavily on *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* (an opinion they incorrectly attribute to Judge Illston), which has been rejected by most other courts.   516 F. Supp. 2d 1072, 1085-96 (N.D. Cal. 2007) ("*DRAM I*").   Upon appeal, after the State of California urged reversal of *DRAM*'s *AGC* holding, the defendants settled with indirect purchasers for $310,720,000.   Subsequent opinions in the same district have rejected *DRAM*'s reasoning and held that indirect purchasers of products containing price-fixed components have antitrust standing.   *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123-1125 (N.D. Cal. 2009) ("*Flat Panel*"); *Flash Memory*, 643 F. Supp. 2d at 1154.   *See also In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) (*GPU*); *In re Cathode Ray Tube Antitrust Litig.*,738 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2010) (*CRT*); *In Re Optical Disk Drive Antitrust Litig.*, 10–MD–2143 RS, 2011 WL 3894376, at *12 (N.D. Cal. Aug. 3, 2011).

1    repealer statutes, disregarding the Supreme Court's directive in *ARC America* that federal

2    remoteness constraints addressed in *AGC* should not be applied to indirect purchaser claims

3    under state antitrust laws.  490 U.S.at 105-06.  As the Minnesota Supreme Court emphasized in

4    rejecting an *AGC* challenge to an indirect purchaser claim, the legislature did not "repudiate[ ]

5    *Illinois Brick* and invite[ ] indirect purchaser suits only for courts to dismiss those suits on the

6    pleadings based on the very concerns that motivated *Illinois Brick*."  *Lorix v. Crompton Corp.*,

7    736 N.W. 2d 619, 629 (Minn. 2007).

8         Even in the face of harmonization provisions or judicial reference to federal antitrust

9    precedents, "it is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the

10   repealer states' laws in the absence of a clear directive from those states' legislatures or highest

11   courts."[7]  *Flat Panel,* 586 F. Supp. 2d 1123.  Defendants cite few, if any, such directives,

12   relying almost entirely on Judge Hamilton's decision in *DRAM*.[8]  Because a majority of courts

13   considering this issue have declined to follow *DRAM*, this Court should presume that in the

14   absence of a clear directive from a state's legislature or highest court, *AGC* does not apply to

15   indirect purchaser standing and deny Defendants' Motion with regard to such states.  *See*

16   Exhibit B.

---

[7] *See, e.g.*, *Flash Memory*, 643 F. Supp. 2d at 1151-53; *D.R. Ward*, 470 F. Supp. 2d at 494-96; *Filters*, 2009 WL 3754041 at *7; *Bunker's Glass Co. v. Pilkington PLC*, 75 P. 3d 99, 106 (Ariz. 2003); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36-38 (Neb. 2004).

[8] *See supra* note 6.  The other federal ruling relied upon by Defendants, *In re Potash Antitrust Litig.*, establishes little.  667 F. Supp. 2d 907 (N.D. Ill. 2009).  The court dismissed antitrust claims under Iowa law and Mississippi law while admitting that "Mississippi has not provided a clear indication as to the adoption of *AGC*".  *Id.* at 945-46.  But the court declined to find *AGC* applicable to plaintiffs' Kansas and Michigan antitrust claims and denied the defendants' motion to dismiss on that basis.  *Id.* at 943-44.  *Lorenzo v. Qualcomm* is likewise inapposite as the plaintiffs were in the cell phone market and the defendants were in the patent market.  603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) (distinguished by *Stanislaus Food Products Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1071 (E.D. Cal. 2011) ("*Stanislaus*")).

1

2.   *Application of the AGC factors supports antitrust standing.*

2          Even if *AGC* were applicable to IPPs' claims, IPPs allege facts sufficient to establish

3   antitrust standing.  IPPs have alleged "antitrust injury" under state law.  FAC ¶¶ 141-49.  IPPs

4   have alleged a *per se* antitrust violation, namely fixing prices and rigging bids for Titanium

5   Dioxide.  FAC ¶ 2.  "It is difficult to imagine a more formidable demonstration of antitrust

6   injury."  *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000).  *See also*

7   *Lorix*, 736 N.W.2d at 631 ("The violation complained of – price fixing – is a *per se* violation of

8   the law that strikes at the heart of antitrust law's purpose of protecting competition . . . . The

9   injury alleged – overcharge – is exactly the sort that would be expected to flow from the

10  violation.").  IPPs' allegations are certainly sufficient to state a claim under the repealer states'

11  antitrust laws and/or *AGC*.

12          **Causal Connection.**  Defendants argue that the distribution chain is too complex and

13  that there are a number of market factors that affect the prices each plaintiff paid.  Defendants'

14  argument is directly contradicted by IPPs' allegations and the case law of this District.  *See* FAC

15  ¶¶ 141-49.  The ability of purchasers to trace overcharges for components through a distribution

16  chain has been repeatedly recognized by federal courts.[9]  Repealer states allow these claims

17  because indirect purchasers often "suffer[ ] the greatest, if not the most direct, injury of the

18  price-fixing conspiracy."  *D.R. Ward,* 470 F. Supp. 2d at 503.  *See also Lorix*, 736 N.W.2d at

19  631.  Defendants would have this Court repeal these statutes, but IPPs have sufficiently alleged

20

---

21  [9] *See*, *e.g.*, *Flat Panel,* 586 F. Supp. 2d at 1123-24 (rejecting the defendants' argument that "indirect plaintiffs' injuries are too indirect because a variety of manufacturing, distribution, and retail sales channels separate the indirect plaintiffs' alleged injury from the allegedly restrained markets for TFT–LCD panels"); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989-90 (9th Cir. 2000) (finding a causal connection between a restrained cheese market and depressed milk prices); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159 (3d Cir. 2002); *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978).

22

23

24

1    that they paid higher prices for products containing Titanium and that the price-fixed products

2    are traceable through the chain of distribution.  *See* FAC ¶¶ 141-49.

3        **Relevant Market.**  The repealer states do not impose a rigid market participant test for

4    indirect purchaser claims.  *See Lorix,* 736 N.W. 2d at 629-30; *D.R. Ward,* 470 F. Supp. 2d at

5    502-03.  Nor do federal courts impose a bright-line "market participant" requirement for

6    antitrust standing.[10]  Titanium Dioxide is sold for a single purpose – its magnifying or

7    opacifying ability.  *See* FAC ¶ 50 (describing the unique nature of Titanium Dioxide and why it

8    is inextricably linked to the products purchased by IPPs).  It is, as IPPs have alleged, "an

9    essential (non-substitutable) element in the production of consumer goods."  FAC ¶ 61.

10    Because there are no substitutes, IPPs "have no alternative but to pay the unfairly fixed and

11    maintained prices set by Defendants."  FAC ¶ 50.  IPPs have sufficiently alleged that the

12    markets for Titanium Dioxide and the products containing it are inextricably linked such that

13    IPPs participate in the relevant market in which the antitrust injury occurred.  *See* FAC ¶¶ 50,

14    61, 141-49.

15        **Speculative Damages.**  Numerous courts have refused to find "remoteness" or

16    "speculativeness" at the pleading stage in cases involving price-fixed components or

17    ingredients.  *See*, *e.g.*, *Flat Panel,* 586 F. Supp. 2d at 1124 (finding "that it would be

18    inappropriate to determine 'complex and intensely factual' damages issues without 'a more

19    fully developed factual record'"); *GPU*, 540 F. Supp. 2d at 1099.  IPPs have sufficiently alleged

20

21    [10] *See Flash Memory*, 643 F. Supp. 2d 1133, 1154 (N.D. Cal. 2009) (recognizing that flash
memory provides the same functionality regardless of how it is sold); *Flat Panel*, 586 F. Supp.
22    2d at 1123 (finding that "it may be, as plaintiffs allege, that the indirect purchaser plaintiffs
'have participated in the market for LCD panels through their purchases of products containing
23    such panels'"); *Stanislaus*, 782 F. Supp. 2d at 1070-72; *D.R. Ward*, 470 F. Supp. 2d at 491;
*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 316 (4th Cir. 2007).

24

1    "that such overcharges can be traced through the relatively short distribution chain," and this is

2    not a basis for dismissal.  FAC ¶¶ 141-49; *Flat Panel I*, 586 F. Supp. 2d at 1124.

3        **Duplicative Recoveries**.  The risk of duplicative recovery "is inherent in the dual

4    system of private antitrust enforcement created by *Illinois Brick* and *California v. ARC America*

5    *Corp.*"  *Lorix,* 736 N.W.2d at 628.  "[I]t is not a risk that [this Court] may remedy by restricting

6    [repealer states'] antitrust law in ways that [the] legislature has not."  *Id.  See also In re Auto*

7    *Parts*, 2013 WL 2456612, *18 (E.D. Mich. 2013) ("The risk of duplicative recovery analysis is

8    impacted by the fact that state statutes authorize indirect purchasers to bring these claims.

9    States have explicitly repealed *Illinois Brick*, and this Court declines to undermine what the

10   state legislatures have condoned."); *D.R. Ward*, 470 F. Supp. 2d at 504; *Intel*, 469 F. Supp. 2d at

11   410; *Lorix,* 736 N.W.2d at 628; *Flash*, 643 F. Supp. 2d at 1155 ("States . . . which have repealed

12   *Illinois Brick* and allowed indirect purchasers to sue for antitrust violations, have necessarily

13   made the policy decision that duplicative recovery may permissibly occur."); *In re Intel Corp.*

14   *Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 410 (D. Del. 2007) ("*Intel*").  Even when

15   courts have considered the risk of "duplicative recovery," many found that traceability of the

16   price-fixed input could contend with the problem.  *GPU*, 540 F. Supp.2d at 1098; *TFT–LCD*,

17   586 F.Supp.2d at 1124; *Flash*, 643 F. Supp. 2d at 1155.  Defendants' Motion should be denied.

18       **C.    IPPs May Pursue Injunctive and Equitable Relief**

19       The Clayton Act provides that "[a]n antitrust plaintiff seeking injunctive relief need only

20   show a threatened injury, not an actual one."  *In re Optical Disk Drive Antitrust Litig.*, No.

21   3:10–md–2143, 2012 WL 1366718, *8 (N.D. Cal. Apr. 19, 2012) (*ODD*) (citing *Lucas Auto.*

22   *Eng'g v. Bridgestone/Firestone, Inc.,* 140 F.3d 1228, 1235 (9th Cir. 1998)).  "[S]tanding to

23   enjoin an antitrust violation is and should be more readily accorded than standing for treble

24   damage purposes."  *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 449 n.2 (9th Cir. 1985).  "The

'efficient enforcement factors' identified in *AGC* do not apply to claims for injunctive relief." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 593 F. Supp. 2d 29, 41 (D.D.C. 2008).

IPPs have alleged that Defendants engaged in an unlawful conspiracy to fix prices and rig bids for Titanium Dioxide that began to impact industry pricing as early as January 2002. *See* FAC ¶ 6, ¶¶ 64-140.  There have been no public disclosures on the extent or nature of Defendants' plans for antitrust compliance.  The DOJ has not filed a civil action, making a government-imposed injunction unlikely.  Direct purchasers have settled their claims solely on monetary terms.  Without injunctive relief, Defendants could readily continue to sell and/or resume selling Titanium Dioxide at higher prices, continually exposing IPPs to harm from those price increases.  Courts have found similar allegations sufficient to sustain a nationwide injunctive relief claim, and Defendants' motion to dismiss IPPs' claim for injunctive relief should be denied.  *See In re TFT-LCD (Flat Panel) Antitrust Litigation,* 267 F.R.D. 583, 595-97 (N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 610-11 (N.D. Cal. 2009); *ODD*, 2012 WL 1366718 at *8.

## III.    IPPs State a Claim Under the States' Antitrust Laws

### A.    IPPs Allege a Nexus Between Defendants' Unlawful Conduct and Intrastate Commerce

"[T]he 'intrastate effects' requirement is met at the pleading stage by allegations . . . claiming that the anticompetitive conduct caused supracompetitive price effects nationwide." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 664 (E.D. Mich. 2011) ("*Ice*").  IPPs satisfy the pleading requirements to allege antitrust claims under the laws of the District of Columbia, Mississippi, New York, North Carolina, and West Virginia, alleging that Defendants' illegal conduct caused these results:

(1) Titanium Dioxide price competition was restrained; (2) Titanium Dioxide prices were fixed; (3) IPPs and members of the Damages Class were deprived of

free and open competition; (4) IPPs and members of the Damages Class paid supracompetitive prices for Titanium Dioxide; and (5) intrastate commerce was substantially affected.

FAC ¶¶ 181, 189, 194, 195, 202.[11]  IPPs also allege that Defendants' illegal conduct affected prices nationwide.  FAC ¶¶ 3, 4, 11-14, 57, 141, 157, 161, 175, 176, 180, 231, 234.  Courts have repeatedly concluded that similar allegations sufficiently plead the nexus between illegal conduct and intrastate commerce required under the laws of those five states.  *See* Exhibit C.

Whether IPPs' claims fail because no named plaintiff resides in a few states implicates IPPs' adequacy to protect the interests of businesses consumers in other states and should not be resolved at the pleadings stage.  *See supra* Section II.A; *Vernon*, 643 F. Supp. 2d at 1264 (denying a motion to dismiss on this ground and stating, "[t]o require [IPPs] to add a plaintiff from each state . . . to survive a motion to dismiss would be inefficient and contrary to the purposes of Rule 23 of the Federal Rules of Civil Procedure.").

## B.   IPPs Adequately Allege Hawaii and Illinois Antitrust Claims

### 1.   *The Hawaii notice requirement does not require dismissal for non-compliance.*

Although Section 480-13.3 of Hawaii's Deceptive Practices Act may require some plaintiffs to notify the Hawaii Attorney General of unfair competition claims, "the statute does not provide for dismissal of the action for failure to comply . . . [and] dismissal is inconsistent

---

[11] This Court should disregard the cases cited by Defendants.  In *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, the court merely denied a motion to remand after finding that the plaintiff's claim arose under the Sherman Act because the conduct alleged had a greater impact on interstate, versus intrastate, commerce.  No. 03-Civ-5889, 2005 WL 323750, *4 (S.D.N.Y. Feb. 9, 2005).  This district has not followed *In re Microsoft Corp. Antitrust Litig.*'s interpretation of Mississippi law.  *See GPU*, 540 F. Supp. 2d at 1099 (allowing plaintiffs who "alleged that defendants' conspiracy substantially affected commerce in each of those states" to proceed); FAC ¶ 189(b).  And IPPs' allegations satisfy the law of the District of Columbia, despite Defendants' contrary citation.  *See Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 740 F. Supp. 381, 397 (D. Md. 1990) ("*Sun Dun*") (refusing to dismiss D.C. antitrust claims despite allegations that were "vague in terms of the situs of harm").

with the remedial purposes of the statute." *Filters*, 2009 WL 3754041 at *6.  Accordingly, the

Court should reject Defendants' argument.  *See id.* (denying motion to dismiss Hawaii antitrust

claim for not complying with notification procedure).  Alternatively, the Court should grant

IPPs leave to amend the FAC to expressly limit their Hawaii claims to unfair and deceptive acts,

which are not subject to the Attorney General notification procedure.  *See*, *e.g.*, *Flash Memory*,

643 F. Supp. 2d at 1158; *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224,

232-33 (M.D. Pa. 2010).

> 2.  *The Illinois class action bar is a procedural rule that is superceded by Rule 23 and Shady Grove.*

Defendants argue that IPPs fail to state a cognizable claim under the Illinois Antitrust

Act because Section 7(2) of the Act bars class actions by indirect purchasers, but Illinois's

procedural class action bar is inapplicable in federal courts.  *See infra* Section IV.C; *Shady*

*Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("*Shady Grove*").  The

issue of whether a claim under Section 7(2) may be brought as a class action is properly

considered at the class certification stage, rather than on a motion to dismiss.  Therefore IPPs'

Illinois antitrust claim is cognizable and should not be dismissed.

## IV.   IPPs State a Claim Under the States' Consumer Protection Laws

### A.     Arkansas and Rhode Island Permit Price-Fixing Claims

The Arkansas Supreme Court defines "unconscionable" to mean "an act that 'affronts

the sense of justice, decency, or reasonableness,'" including acts "violative of public policy or a

statute." *Baptist Health v. Murphy*, 226 S.W.3d 800, 810-11 (Ark. 2006).  A number of federal

courts, including this one, have recognized that a claim for price-fixing is actionable under the

1   Arkansas Deceptive Trades Practices Act (ADTPA).[12]   The federal cases cited by Defendants

2   all relied on a perceived absence of authority "interpreting the [ADTPA] to apply to price-

3   fixing." *Flat Panel*, 586 F. Supp. 2d at 1124.[13]

4       At least one Arkansas court has found price fixing "actionable under the ADTPA as

5   conduct that is deemed an 'unconscionable, false or deceptive act or practice.'"   *Burton v.*

6   *Micron Tech., Inc.*, No. CV 2004-226-1, at 2 (Ark. Cir. Ct. 1st Div. Nov. 6, 2009) (attached as

7   Exhibit G).  The lone Arkansas case cited by Defendants, *Wallis v. Ford Motor Co.*, 208 S.W.3d

8   153 (Ark. 2005), did not involve allegations of price-fixing, and the court there did nothing

9   more than reject a consumer's claim that he had been damaged by "overpaying" for a vehicle

10  that *might* experience – but had not yet sustained – a widely-publicized type of defect.  *Id.* at

11  954-55.  The harm caused by a deliberate scheme to increase prices, which IPPs have actually

12  suffered, is of an entirely different character, and this Court should deny Defendants' motion.

13      Numerous courts have "determined that price-fixing injuries fall within the scope of the

14  statute and have allowed consumers alleging a price-fixing claim to proceed under" the Rhode

15  Island Unfair Trade Practices and Consumer Protection Act (RIUTPCPA).[14]  IPPs have pleaded

16  _____

17  [12] *Auto Parts*, 2013 WL 2456612, at *27; *Filters*, 2009 WL 3754041, at *9 (Nov. 5, 2009);
    *Flash Memory*, 643 F. Supp. 2d at 1157; *Chocolate*, 602 F. Supp. 2d at 583; *DRAM I*, 516 F.
18  Supp. 2d at 1108; *Cal. v. Infineon Tech. AG*, 531 F. Supp. 2d 1124, 1143-44 (N.D. Cal. 2007);
    *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 178-79 (D.
19  Me. 2004) (*NMV*).

20  [13] *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal.
    2011) (mentioning believed "lack of any cases from Arkansas state or federal courts"); *In re*
21  *Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL 5094289,
    at *8 (N.D. Cal. Dec. 8, 2010) ("The Court has found no Arkansas case law indicating that the
22  ADTPA reaches price-fixing conduct of the nature presented in this lawsuit.").

23  [14] *Auto Parts*, 2013 WL 2456612, at *27 (citing *Chocolate*, 602 F. Supp. 2d at 586); *see also*
    *Flat Panel*, 586 F. Supp. 2d at 1129-30; *In re Dynamic Random Access Memory (DRAM)*
24  *Antitrust Litig.*, 536 F. Supp. 2d 1129, 1144-45 (N.D. Cal. 2008) ("*DRAM II*"); *In re Static*
    *Random Access Memory Antitrust Litig.*, 2008 WL 2610549, at *4 (N.D. Cal. Feb. 14, 2008).

precisely what is required and more:  "Defendants' deception . . . likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Titanium Dioxide at prices born by a free and fair market," causing "an ascertainable loss of money or property" to Rhode Island consumers as a result.  *See* FAC ¶ 219(e)-(f).  This is sufficient to state a claim under the RIUTPCPA.

### B.   IPPs Have Standing to Sue Under the Arkansas, New York, and Vermont Consumer Protection Laws

*AGC* stands as no impediment to IPPs' claims in Arkansas, New York, or Vermont.  *See supra* Section II.B.  Defendants have cited no authority stating that *AGC* is applicable to Arkansas,[15] New York,[16] or Vermont[17] claims.  It is generally accepted that a determination of whether *AGC* applies requires application of "the substantive law of the state's highest court,"

---

[15] The only case cited by Defendants, *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 888 (E.D. Ark. 2008), was not an antitrust action and did not even mention *AGC*.  In that case, the court held that the defendants, distributors of medicine who committed no illegal acts, could not be held liable for the activities of third parties, methamphetamine cooks, who were outside the legal chain of distribution.  *Id.* at 889.  IPPs assert that it was the Defendants, not third parties, who caused them harm, and that such harm was caused as a result of obtaining products containing Titanium Dioxide through the contemplated, legal chain of distribution, which originated with Defendants.  Such allegations are not "too remote" under Arkansas law.  *See Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 09-CV-00852, 11-CV-00162, 2012 WL 3841397, *5 (E.D. Wis. Sept. 5, 2012) ("*Fond du Lac*").

[16] In the only case Defendants cite that addresses New York law, the plaintiffs did not oppose dismissal of the New York claims on standing grounds.  *See DRAM II*, 536 F. Supp. 2d at 1142 .

[17] Defendants cite a Vermont trial court decision that did not involve indirect purchasers.  *See Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 WL 3030037, *2-3 (Vt. Super. Ct. Dec. 27, 2004).  As with other cases involving consumer purchases affected by a tying arrangement imposed on merchants, the Vermont trial court found the derivative injuries too remote.  In *D.R. Ward*, the court rejected the *Fucile* court's application of *AGC* and refused to find "the Vermont Supreme Court would adopt the *AGC* factors for determining standing under the [Vermont Consumer Fraud Act (the "VCFA")]," because doing so "would undermin[e] the VCFA's overarching remedial goal."  470 F. Supp. 2d at 501.  *See also Elkins v. Microsoft Corp.*, 817 A.2d 9, 17 (Vt. 2002) (rejecting argument "that the definition of who may sue under the [VCFA] must be consistent with the definition of who may sue under federal antitrust law").

and other courts have rejected Defendants' remoteness argument.  *Wire Harness*, 2013 WL 2456612, at \*14, 30.  In any event, IPPs have met the *AGC* test, and this is not a bar to IPPs' claims in Arkansas, New York, or Vermont.  *See supra* Section II.B.

### C.  *Shady Grove* Permits Class Action Lawsuits Under the Laws of Montana, New York, and South Carolina

In 2010, the Supreme Court expressly held that New York's class action bar did not preclude plaintiffs, proceeding in diversity, from bringing a class action lawsuit under Rule 23. *Shady Grove*, 559 U.S. 393.  Justice Scalia explained:

> A class action no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of separate suits. And like traditional joinder it leaves the parties' legal rights and duties intact and the rules of decision unchanged.

*Id*. at 408.  Since then, multiple courts have applied *Shady Grove*'s reasoning to other states' class action bars, including those promulgated by South Carolina and Montana.  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-MD-2087, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014) (applying *Shady Grove* to South Carolina and Montana's class action bars); *ODD*, 2012 WL 1366718 (same); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, \*30. (E.D. Mich. June 6, 2013) (same).  This Court should do the same.  The cases Defendants rely on pre-date *Shady Grove* and do not justify dismissal of IPPs' Montana, New York, or South Carolina class action claims.  In any event, the Court need not reach this issue now as it is more appropriately considered at class certification.

### D.  Business Entities Can Bring Claims in the District of Columbia, Massachusetts, Montana, and New York

Interpreting consumer protection statutes nearly identical to those of New York, Montana, and the District of Columbia, courts have emphasized that the focus is not on the character of any particular plaintiff, but rather upon "the use to which the goods [will] be put."

1    *Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 482 (D. Del. 2010).  *See*

2    *also Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich. Ct. App. 1997) ("[C]ourts must examine the

3    nature of the conduct complained of case by case.").   Those jurisdictions that limit their

4    consumer protection laws to items designed for "personal" consumption recognize the claims of

5    those who serve as "conduit[s] or intermediar[ies]," obtaining goods so as to "pass them along"

6    to the ultimate consumer.[18]  *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 635 (Mich.

7    2003).  *See also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F.

8    Supp. 2d 1027, 1033-34 (N.D. Cal. 2007) (allowing insurance intermediaries to bring consumer

9    protection claims).  Merchant IPPs are such "intermediaries," because they purchase Titanium

10   Dioxide in bulk not for their own commercial use but in order to "pass them along" to persons

11   and entities who will devote the use for "personal, family, or household purposes."[19]  *Cf.* Mont.

12   Code Ann. §§ 30-14-133(1), 30-14-102(1) (ability to sue resides in those victimized during

13   transactions for merchandise *primarily* meant for "personal, family, or household purposes").

14         Defendants also incorrectly argue that Merchant IPPs cannot maintain claims under the

15   Massachusetts  Consumer  Protection  Act  (MCPA).    The  Supreme  Judicial  Court  of

16   Massachusetts concluded that Section 9 of the MCPA, governing claims brought by individuals,

17   unquestionably extends to indirect purchasers.  *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436

18   Mass. 53, 66-67 (2002) ("We read the language of [the Consumer Protection Act] as a clear

19   _____

20   [18] *See Zeneca, Inc.*, 710 F. Supp. 2d at 473 (finding that "plaintiffs must show: 'first, that the
     challenged act or practice was consumer-oriented; second, that it was misleading in a material
     way; and third, that the plaintiff suffered injury as a result of the deceptive act'") (quoting *Vitolo*
21   *v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y.2006)).

22   [19] IPPs' putative "Merchant Class" is defined as "[a]ll business entities . . . *that purchased*
     *products for resale* containing, in some form, Titanium Dioxide manufactured by one or more
23   of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates
     thereof, during the Class Period."  FAC ¶ 36 (emphasis added).

24

1  statement of legislative policy to protect Massachusetts consumers through the authorization of .

2  . . indirect purchaser actions.").  Merchant IPPs proceed under the next section of the same Act,

3  Section 11 – providing "for a claim for 'unfair' or 'deceptive' trade practices as between

4  businesses."  *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 495 (1st Cir. 2009).  That

5  section should be construed to permit claims by indirect purchasers.  Sections 9 and 11 are part

6  of the same consumer protection law, and "[s]tatutes addressing the same subject matter clearly

7  are to be construed harmoniously so as to . . . give rise to a consistent body of law."  *Ciardi*, 436

8  Mass. at 62.

9     It would be "absurd" and "unreasonable" to interpret sections 9 and 11 inconsistently

10  with respect to indirect purchaser claims.  *Id.* at 68 (Sosman, J., dissenting).  This Court should

11  join other federal district courts presiding over consolidated antitrust actions and hold that

12  "Massachusetts does not bar indirect purchaser standing under its consumer protection act," *In*

13  *re Flonase*, 692 F. Supp. 2d 524, 545 (E.D. Pa. 2010) ("*Flonase*") (claims of union health and

14  welfare plans alleging damages for reimbursement of plan members who purchased Flonase at

15  inflated prices upheld).  *See also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413

16  n.12 (S.D.N.Y. 2011) ("*Digital Music*") ("[B]oth direct and indirect purchasers may maintain a

17  cause of action under the [Massachusetts] consumer protection act.").

18     **E.     IPPs Properly Allege Consumer-Oriented Conduct Under New York Law**

19     To proceed under Section 349, IPPs "need only allege consumer-oriented conduct that

20  implicates the public interest in New York."  *DRAM II*, 536 F. Supp. 2d at 1143.  There is no

21  requirement that misleading statements be specifically directed at consumers.  *Id.*  The FAC

22  alleges that Defendants' price-fixing and bid-rigging scheme had the following effects:

23     (1) Titanium Dioxide price competition was restrained, suppressed, and
        eliminated throughout New York; (2) Titanium Dioxide prices were raised, fixed,

24      maintained, and stabilized at artificially high levels throughout New York; (3)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 13-CV-01180 (WHO)                                              20

Plaintiffs and members of the classes who reside in and/or made purchases of products containing Titanium Dioxide in New York were deprived of free and open competition and subject to Defendants' deceptive practices in New York; and (4) Plaintiffs and members of the classes who reside in and/or made purchases of products containing Titanium Dioxide in New York paid supracompetitive, artificially inflated prices in New York for products containing Titanium Dioxide, and were subjected to Defendants' deceptive practice in New York.

FAC ¶ 217(d).[20]   This Court has repeatedly found such allegations to be sufficient, and IPPs' claims under Section 349 should not be dismissed.  *See Flat Panel*, 586 F. Supp. 2d at 1128; *DRAM II*, 536 F. Supp. 2d at 1143 (N.D. Cal. 2008).

**F.     IPPs Properly Allege Unconscionable Conduct**

The ADTPA was enacted "to protect the interests of both the consumer public and the legitimate business community" and is to be liberally construed.  *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 780 (8th Cir. 2010); *Ark. ex rel. Bryant v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999).  To state an ADTPA claim, IPPs only need to allege that Defendants engaged in any "unconscionable, false, or deceptive act or practice." ARK. CODE. ANN. § 4-88-107(a)(10).  "The "Arkansas Supreme Court define[s] an unconscionable act as an 'act that affronts the sense of justice, decency, or reasonableness' including acts that violate public policy or a statute." *Independence Cty.*, 534 F. Supp. 2d at 886, *aff'd*, 552 F.3d 659 (8th Cir. 2009).  Liberal construction means that the ADTPA contemplates price-fixing, committed in violation of the Sherman Act, as an "unconscionable, false, or deceptive act." *See, e.g., Flash Memory*, 643 F. Supp. 2d at 1156-57.  Moreover, the argument that failure to plead "grossly unequal bargaining power" is fatal to an ADTPA claim has been expressly rejected by this and

---

[20] The classes include a putative "Consumer Class" that the FAC defines as "[a]ll natural persons . . . who purchased products for personal use and not for resale containing, in some form, Titanium Dioxide." FAC ¶ 37.

1  other district courts.  *Id.*; *Filters*, 2009 WL 3754041, at *8-9; *Chocolate*, 602 F. Supp. 2d at 583

2  n.57.

3           A violation of the District of Columbia's Consumer Protection Practices Act (DCCPPA)

4  does not require "unconscionable conduct."  "While the [DCCPPA] enumerates a number of

5  specific unlawful trade practices . . . the enumeration is not exclusive."  *Dist. Cablevision Ltd.*

6  *Ptshp. v. Bassin*, 828 A.2d 714, 723 (D.C. 2003).  *See also Osborne v. Capital City Mortg.*

7  *Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).  IPPs "may maintain a claim for defendant's alleged

8  price-fixing under the statute," without additional unconscionability allegations.  *Flat Panel*,

9  586 F. Supp. 2d at 1126.

10          In support of their New Mexico Unfair Practices Act (NMUPA) claim, IPPs explicitly

11 plead that Defendants' price fixing conduct "resulted in a gross disparity between the value

12 received by IPPs and the members of the classes and the prices paid by them for products

13 containing Titanium Dioxide," which New Mexico law expressly defines as an "unconscionable

14 trade practice."  FAC ¶ 216(b); N.M. STAT. § 57-12-2(E).  These allegations "are sufficient as a

15 matter of pleading to state a claim" under the NMUPA, even if not "factually specific."  *Flat*

16 *Panel*, 586 F. Supp. 2d at 1127 (distinguishing *GPU*, relied upon by Defendants, where

17 plaintiffs made no "gross disparity" allegation); *Eggs*, 851 F. Supp. 2d at 906-07 (collecting

18 cases).

19          As to North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA),

20 Defendants ignore that a violation of antitrust law is, in and of itself, a violation of the

21 NCUDTPA.  *See ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 48 (4th Cir. 1983), *aff'd on*

22 *rehearing*, 742 F.2d 170 (4th Cir. 1984); *Eggs*, 851 F. Supp. 2d at 909-11.

23

24

When it comes to Florida, Defendants direct this Court to no case law, only citing to the Florida statute declaring unlawful any "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce." FLA. STAT. ANN. § 501.204.  The price-fixing scheme alleged in the FAC is more than sufficient to state a claim under this Florida statute.

### G.    IPPs Properly Plead Fraud and Deceitful Conduct

IPPs allege in detail Defendants' massive price-fixing scheme, which violates the consumer protection laws of Arkansas, California, the District of Columbia, Florida, Missouri, New Mexico, New York, and Rhode Island.  *See* FAC ¶¶ 65-140, 209, 210, 211, 212, 214, 216, 217, 219.  They further detail numerous fraudulent and deceptive steps Defendants took to conceal their unlawful conduct from IPPs and the putative class such as secret meetings and false justifications for prices increases.  FAC ¶¶ 167-69.  These allegations go far beyond the "threadbare assertions" cited by Defendant and point to specific deceptive acts by Defendants over a period of years.[21]  The FAC sufficiently states claims under the consumer protection laws of Arkansas, the District of Columbia, Florida, Missouri, New Mexico, New York, and Rhode Island, including those that might have a heightened pleading requirement.[22]  *See* Exhibit D.

---

[21] *See*, *e.g.*, FAC ¶ 167 (alleging that DuPont told customers "that price increases were justified in part because industry profitability had declined"); FAC ¶ 168 (alleging that DuPont's Global Business Director attributed price increases to the "existence of higher raw material, energy and transportation costs" and strong demand); FAC ¶ 169 (detailing a public statement by DuPont in 2004 that ""the price increases are the result of rising raw-material costs, economic expansions that are driving 'very strong global Ti02 demand,' high capacity rates, and 'reinvestment economics for capital funding to support industry growth'").

[22] IPPs do not concede that the heightened pleading standard of Rule 9 applies to their California, District of Columbia, or Florida claims.  *See Eggs*, 851 F. Supp. 2d at 899-900 (refusing to apply a heightened pleading standard to California, District of Columbia, and Florida consumer protection claims when the "[p]laintiffs are alleging that the Defendants' alleged antitrust violation is itself the unfair method of competition); *Auto Parts*, 2013 WL 2456612 at *23 (finding that a "plaintiff need not prove the elements of fraud to sustain an

*Eggs* does not stand for the principle that "pretextual explanations" cannot amount to fraudulent concealment.  In *Eggs*, the plaintiffs did not allege any specific false justifications for price increases.  Instead, they merely alleged that the defendants "agreed to . . . unfairly and deceptively fixing, raising, stabilizing, and maintaining prices."  *Eggs*, 851 F. Supp. 2d at 908. They then argued in opposition to a motion to dismiss that the defendants hid their conduct with pretextual justifications.  *Id.*  Ultimately, the Court determined that their legal conclusions were unsupported by the factual allegations in their complaint.  *Id.*  IPPs have, in sharp contrast, alleged a number of specific instances (described above) where Defendants intentionally gave false justifications for their price increases.  Thus, *Eggs* does not apply to IPPs' fraudulent concealment claim.

*GPU II* (and *GPU I*) are likewise unpersuasive.  *See* Exhibit D.  Numerous courts have rejected that court's interpretation of the consumer protection laws of Arkansas, the District of Columbia, and Rhode Island.  *Id.*  This Court should do the same and allow IPPs, who have made detailed allegations of a secretive and deceptive price fixing and bid rigging scheme by Defendants, to proceed under the consumer protection laws of Arkansas, the District of Columbia, Florida, Missouri, New Mexico, New York, and Rhode Island.  *Id.*

## H.    IPPs Sufficiently Allege a Nexus to Intrastate Conduct

IPPs include businesses and residents in California, Florida, and New York who allege that they were injured when they purchased Titanium Dioxide, in those states, indirectly from one or more of the Defendants.  FAC ¶¶ 15, 17, 20, 23.  They also specifically allege a substantial effect on intrastate commerce in California, Florida, Missouri, Montana, New York,

---

action under the [FDUTPA]") (quoting *Galstaldi v. Sunvest Cmtys. USA*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009)).  However, should this Court choose to apply such a standard, the allegations in the FAC are, for the reasons stated herein, more than sufficient.

1    North Carolina, and Vermont.  FAC ¶¶ 210, 212, 214, 215, 217, 218, 221.  Therefore, they have

2    satisfied those states' instrastate nexus requirements, and this is not a basis for dismissal.[23]

3        **I.**       **IPPs Followed the Proper Procedures for Bringing Claims in Massachusetts**

4        Defendants wrongly assume that the notice requirements of Section 93 apply to them.

5    "[T]his prerequisite does 'not apply ... if the prospective respondent does not maintain a place of

6    business or does not keep assets within [Massachusetts].'" *Eggs*, 851 F. Supp. 2d at 903

7    (quoting MASS. GEN. LAWS ch. 93A § 9(3)).  The FAC "plainly does not recite any factual

8    allegations that the Defendants' places of business or assets are located in Massachusetts." *Id.*

9    "Accordingly, pleading pre-suit notification is not required here." *Id.  See also In re Cathode*

10   *Ray Tube (CRT) Antitrust Litig.*, MDL 1917, 2013 WL 4505701, *11 (N.D. Cal. Aug. 21, 2013)

11   (requiring a written demand letter only for defendants who "ha[ve] a place of business or keeps

12   assets in Massachusetts").

13   **V.**    **IPPs Properly Allege Unjust Enrichment**

14       **A.**       **IPPs' Allegations Are Sufficiently Specific Under *Twombly* and *Iqbal***

15       The FAC is not the type of generic pleading that the courts dismissed in *Ice*, *Ductile*

16   *Iron*, and *Hines*.  *Contra* 779 F. Supp. 2d at 667-68 (E.D. Mich. 2011) (dismissing unjust

17   enrichment claims for failing to identify the specific state laws); *In re Ductile Iron Pipe Fittings*

18   *(DIPF) Indirect Purchaser Antitrust Litig.*, CIV. 12-169, 2013 WL 5503308, *8 (D.N.J. Oct. 2,

19   2013) (same); *Hines v. Overstock.com, Inc.*, 09 CV 991 SJ, 2013 WL 4495667 (E.D.N.Y. Aug.

20

---

21   [23]  In addition, the "'intrastate effects' requirement is met at the pleading stage by allegations,
     like those in the FAC, that the anticompetitive conduct caused supra-competitive price effects
22   nationwide." *Ice*, 779 F. Supp. 2d at 664 (and citations therein).  *See also Digital Music*, 812 F.
     Supp. 2d at 407-408; *Sheet Metal Workers Local 441 Health & Welfare Plan v.*
     *GlaxoSmithKline, PLC,* 737 F. Supp. 2d 380, 406 (E.D. Pa. 2010) ("*Sheet Metal*"); *Kaufman v.*
23   *Sirius XM Radio, Inc*., No. 11-121, 2012 WL 1109397 (2d Cir. April 4, 2012); *NMV*, 350 F.
     Supp. 2d at 192.

24

19, 2013) (same).  IPPs identify 32 states' laws, alleging that they "bring this claim under the laws of all states listed in the First and Second Claims."  FAC ¶ 223.  They then allege that they conferred a benefit on Defendants, "having paid higher prices for products containing Titanium Dioxide than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy," and that "it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayment made by [IPPs]."[24]  FAC ¶¶ 148, 225.  This "provide[s] Defendants with fair notice of [IPPs'] claims and the grounds on which they are based, such that these Defendants will know how to respond" and satisfies the requirements of *Twombly* and *Iqbal*.  *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1017 (E.D. Mich. 2010) (analyzing *Twombly* and *Iqbal*).

### B.    IPPs May Pursue Restitution Through Unjust Enrichment Claims

IPPs seek, in the alternative, claims for restitution of Defendants' unjust enrichment. IPPs' claims are brought for indirect purchasers in states that permit recovery of antitrust damages, based on those states' laws, and are not free standing.  *Flonase* and *Digital Music* do not support Defendants' argument that IPPs are barred from pursuing unjust enrichment claims or restitution.  Those decisions permit unjust enrichment claims to the extent, as here, that the plaintiffs' claims emanate from states that permit recovery of antitrust damages.  *See Flonase*,

---

[24] To state a claim for unjust enrichment, plaintiffs must generally allege as follows:

> (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011), *cited by Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 852 (N.D. Cal. 2012). *See Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 568 (E.D. Mich. 2009) (finding "few real differences" among states' laws on unjust enrichment).

1    692 F. Supp. 2d at 542-42; *Digital Music*, 812 F. Supp. 2d at 413, 420. "[C]ourts often award

2    equitable remedies under common law claims for unjust enrichment in circumstances where

3    claims based upon contract or other state law violations prove unsuccessful." *In re Cardizem*

4    *CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000) ("*Cardizem*").

5           A plaintiff's ability to succeed on its statutory claims does not determine its ability to

6    succeed on its unjust enrichment claims because, "[r]ather than allegations and proof of the

7    elements necessary for its antitrust claims, Plaintiffs' common law claims for unjust enrichment

8    depend upon allegations and proof that the defendant has unjustly retained a benefit to the

9    plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental

10   principles of justice, equity, and good conscience.'" *Id.* Responding to the same argument

11   made by Defendants, another court has held that the availability of recovery under state unjust

12   enrichment laws is not dictated by the availability of recovery under state statutes. *In re*

13   *Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-2343, 2013 WL 2181185, at *24-25 (E.D.

14   Tenn. May 20, 2013). In the absence of authority from state courts precluding the common law

15   cause of action, it is incorrect to assume that any state's laws prevent an unjust enrichment

16   claim.[25]

17          **C.     IPPs Adequately Allege Unjust Enrichment**

18                 *1. IPPs did not receive the benefit of their bargains.*

19          At the threshold, Defendants' "benefit of the bargain" argument assumes a contractual

20   relationship between IPPs and Defendants—a relationship that has never existed—as well as a

21   benefit of dubious nature. IPPs did not bargain for, and cannot be deemed to have received, a

---

[25] Defendants also argue that Plaintiffs' unjust enrichment claims fail because the underlying antitrust and consumer protection claims fail. However, IPPs have sufficiently pleaded their antitrust and consumer protection claims, as stated in Section II *supra*.

benefit from a hidden overcharge resulting from Defendants' illegal conduct.  The "benefit of the bargain" rule typically applies when there is a contract between the parties and each party has expressly agreed to their respective responsibilities and bargained-for benefits.  *See* Exhibit D.  There are no contracts between IPPs and Defendants.

Defendants incorrectly rely on irrelevant cases which consider "freestanding" unjust enrichment claims, rather than unjust enrichment claims based on antitrust violations.  Although *Intel* dismissed plaintiffs' unjust enrichment claim, that claim was not based in antitrust law. 496 F. Supp. 2d at 412, 421 (citing *NMV*, 350 F. Supp. 2d t 209-10).  The *Intel* decision did not address the *NMV* holding that antitrust-based unjust enrichment claims may proceed in states where indirect purchasers may pursue antitrust recovery and should not guide this Court's ruling on IPPs' antitrust-based unjust enrichment claims.  *See NMV*, 350 F. Supp. 2d at 211-212.

> 2.  *Evaluating consideration is a fact issue inappropriate for determination under Rule 12(b)(6).*

Defendants' argument goes too far, essentially claiming that *any* consideration is sufficient to preclude unjust enrichment claims.  This argument was rejected by the court in *K-Dur*, where the court held that the indirect purchaser plaintiffs' "receipt of valuable medicine for their payments" did not bar their unjust enrichment claims.  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 545 (D.N.J. 2004) ("*K-Dur*").  *See also In re Actiq Sales and Marketing Practices Litig.*, 790 F. Supp. 2d 313, 330 (E.D. Pa. 2011).  Defendants' cases fail to support the argument that "any" consideration defeats an unjust enrichment claim.  *See* Exhibit D.  Instead, courts invoke varying standards for evaluating consideration, such as whether it was reasonable, full, valuable, or adequate.  *Paschall's v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966) (sustaining unjust enrichment claim by benefit furnisher who did not receive the "reasonable value" of benefits furnished); *Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858,

at *8 (Kan. Ct. App. Apr. 20, 2007) (noting that plaintiffs were not "fully compensated" for their services).  These determinations are primarily questions of fact that depend on "evaluating whether a benefit received approximates the value paid" and are not appropriately addressed on a motion to dismiss.  *K-Dur*, 338 F. Supp. 2d at 546.

>    ### 3.   IPPs do not have to confer a direct benefit on Defendants to state an unjust enrichment claim.

Defendants incorrectly assert that certain states require indirect purchasers to confer a "direct benefit" on Defendants.[26]  Privity is not required under the laws of any of these states to pursue an unjust enrichment claim.  IPPs may confer a "direct benefit" by conferring a benefit that is not "incidental."  *Eggs*, 851 F. Supp. 2d at 934.  Unjust enrichment claims are sufficiently alleged by indirect purchasers of price-fixed products or components from conspiring manufacturers.  *See* Exhibit D.

 "It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the "benefit" passed through an intermediary before being conferred on a defendant."  *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011).  *See also K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 545 n.35 ("[T]he essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties.").  "Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct."  *Cardizem*, 105 F. Supp. 2d at 671. *See also In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 234 (S.D.N.Y. 2012) (upholding Florida unjust enrichment claims); *Fond du Lac*, 2012 WL 3841397 at *5 (accepting allegations "that, as the consumers of AM parts, [plaintiffs] drive demand for such parts and that

---

[26] Florida, Kansas, Maine, Michigan, North Carolina, North Dakota, and Utah..

1    defendants profit from the sale of AM parts as a direct result of their purchases"). IPPs

2    "allege[] that they conferred a benefit, in the form of overpayments and increased profits, on

3    Defendants, that Defendants accepted that benefit[,] and that it would be unjust under the

4    alleged circumstances for Defendants to retain that benefit." FAC ¶¶ 148, 222-27. These

5    allegations were sufficient in *Cardizem*, and they are sufficient here.

6                    *4.  IPPs pleaded the absence of a legal remedy.*

7         Rule 8 allows for alternative claims "regardless of consistency," and IPPs do not need to

8    specifically allege an inadequate remedy at law. Fed R. Civ. P. 8(d)(3); *Cardizem*, 105 F. Supp.

9    2d at 671 n.25. Thus, the possible availability of a remedy at law furnishes no ground for

10   dismissal.  *K-Dur*, 338 F. Supp. 2d at 544 (ability to plead in the alternative renders it

11   "premature" to dismiss unjust enrichment claims). There is nothing unique about Arizona,

12   Florida, Hawaii, Massachusetts, Minnesota, North Dakota, Tennessee, or Utah law that would

13   preclude IPPs from such an alternative pleading in this case.[27]  *See* Exhibit D

14                   *5.  IPPs' pleadings satisfy all the elements of unjust enrichment.*

15        IPPs adequately plead claims for unjust enrichment for all 31 states and the District of

16   Columbia.[28]

17        •   In Mississippi, "[t]he doctrine of unjust enrichment or recovery . . . applies to
              situations where there is no legal contract but where the person sought to be
18            charged is in possession of money or property which in good conscience and
              justice he should not retain but should deliver to another, the courts imposing
19            a duty to refund the money or the use value of the property to the person to
              whom in good conscience it ought to belong." *Kersey v. Fernald*, 911 So. 2d
20            994, 997 (Miss. App. 2005) (quoting *Dew v. Langford*, 666 So. 2d 739, 745

21   ───────────────
     [27] *Fernandes v. Havkin* does not apply to IPPs' claims. That court dismissed plaintiff's unjust
22   enrichment claim because there was an "express contract" barring plaintiff from arguing unjust
     enrichment to override the contract's terms. 731 F. Supp. 2d 103, 115 (D. Mass. 2010).

23   [28] Defendants' argue that IPPs do not adequately allege an Alabama unjust enrichment claim.
     IPPs concede this point as it is not a claim they are pursuing.
24

(Miss. 1995)).  The concept of "good conscience and justice" is not limited. Indirect purchasers of price-fixed products may assert unjust enrichment claims under Mississippi law.  *See, e.g., Eggs*, 851 F. Supp. 2d at 913- *914*; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL 4501223, *8-9 (N.D. Cal. Sept. 28, 2011) ("*Flat Panel II*").  *Cf. In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D 672, 697 n.40 (S.D. Fla. 2004).

- "California courts, including the Supreme Court of California, have acknowledged that parties may pursue causes of action arising from an unjust enrichment claim." *Eggs*, 851 F. Supp. 2d at 913.

- In Illinois, where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). The Seventh Circuit noted that the application of unjust enrichment articulated in *Martis v. Grinell Mut. Reinsurance Co.* should be limited to *Martis'* set of facts. *Cleary*, 656 F.3d at 518 (citing 905 N.E. 2d 920 (Ill. Ct. App. 2009)).

- To state an unjust enrichment claim in South Carolina, IPPs must allege "(1) that [they] conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167 (S.C. 2003).   South Carolina does not impose a unique "existence of a duty" element to unjust enrichment claims.  *See, e.g.*, *Melton v. Carolina Power & Light Co.*, No. 11-270, 2012 WL 2401635 (D.S.C. June 25, 2012) ("[A] cause of action for unjust enrichment may be available" where the conduct at issue is "not covered by the express agreement.").

- IPPs satisfy North Dakota's unjust enrichment elements by alleging that (1) Defendants are enriched because they enjoyed unlawfully inflated prices and profits; (2) IPPs are impoverished because they made overpayments; (3) the enrichment and impoverishment are connected because the Defendants' actions in conspiring and fixing the price of Titanium Dioxide resulted in Defendants' gain and the IPPs' loss; (4) because the enrichment and impoverishment resulted from unlawful behavior, there is no justification; and (5) North Dakota allows for pleading alternative theories of recovery. Nothing more is required. *See Opp v. Matzke*, 559 N.W.2d 837, 839-840 (N.D. 1997) (setting forth elements of unjust enrichment).

- In West Virginia, "if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884–85 (W.Va. 2000).  The retention of the benefits

of a criminal antitrust conspiracy is sufficiently unconscionable to satisfy Plaintiffs' pleading burden under West Virginia law.  *See Flat Panel II*, 2011 WL 4501223 at *13; *Sheet Metal*, 737 F. Supp. 2d at 447.

## VI.    IPPs' Claims Are Not Barred by Any Statutes of Limitations

"A cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act."  *Pace Indus. Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).  "[A]n overt act restarts the statute of limitations if it: (1) is "a new and independent act that is not merely a reaffirmation of a previous act;" and (2) "inflict[s] new and accumulating injury on the plaintiff."  *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1187 (N.D. Cal. 2012).  IPPs' FAC clearly alleges a continuing violation of federal and state antitrust and consumer protection laws, and the 45 coordinated price increases described therein each constitute an overt act that restarted the relevant statutes of limitations for the damages resulting therefrom.

Under the doctrine of fraudulent concealment, "the applicable statute of limitations is tolled 'if the plaintiff proves the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence.'"  *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) ("*E.W. French*") (citing *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986)). This applies to both the Clayton Act's four-year statute of limitations and the states' antitrust and consumer protection laws.  *See, e.g.*, *E.W. French*, 885 F.2d at 1398-99; Section V.B.  In some states, IPPs need not show fraudulent concealment because the cause of action did not accrue until IPPs discovered, or reasonably should have discovered, their causes of action.  *See* Section V.C.

### A. Fraudulent Concealment is a Factual Issue

This Court and other federal courts have recognized the unfairness of dismissing fraudulent concealment allegations prior to discovery, especially in the antitrust context, where "the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007) ("*Rubber*").[29] Because fact issues have been raised and can be clarified through discovery, IPPs' fraudulent concealment allegations do not provide a basis for dismissal.

### B. IPPs Adequately Allege Fraudulent Concealment

The FAC adequately pleads the three elements required to toll the statute of limitations under a fraudulent concealment theory: (1) Defendants affirmatively misled IPPs, and (2) IPPs had neither actual nor constructive knowledge of the facts giving rise to their claim (3) despite due diligence. *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988) (defining fraudulent concealment). IPPs also plead the circumstances of the concealment and the facts supporting due diligence with peculiarity. *Id.*

#### 1. IPPs adequately allege affirmative acts of concealment.

The Complaint alleges affirmative acts of concealment similar to those found sufficient by other courts. In *Rubber Chemicals*, the court found that the following alleged affirmative acts were sufficient to plead fraudulent concealment: "secret meetings to set prices, agreement not to publicly discuss the nature of the scheme, destruction of documents that might evidence [defendants'] actions, [and] pretextual justifications for the inflated prices of rubber chemicals."

---

[29] *Accord Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 448 (6th Cir. 2012); *CRT*, 738 F. Supp. 2d at 1024; *Flat Panel I*, 586 F. Supp. 2d at 1119-20; *In re Infant Formula Antitrust Litig.*, MDL No. 878, 1992 WL 503465, at *2 (N.D. Fla. Jan 13, 1992).

*Rubber*, 504 F. Supp. 2d at 788.  In *Flat Panel I*, the plaintiffs sufficiently pleaded fraudulent concealment by alleging that (1) defendants provided pretextual reasons for price increases and (2) defendants agreed not to publicly discuss the nature of the scheme.  586 F. Supp. 2d at 1119-20.  And in the *CRT* litigation, the court found the following alleged affirmative acts of concealment sufficient:  (1) agreements to keep the meetings secret through limiting attendance and limiting written evidence of the meeting; (2) giving false and pretextual reasons for price increases; (3) agreements on what to tell customers regarding price changes; and (4) agreements to eliminate references in expense reports that might reveal the existence of the meetings.  738 F. Supp. 2d at 1025.

IPPs' FAC identifies the following acts of active concealment in their FAC:  (1) Defendants met secretly to discuss Titanium Dioxide prices, customers, and markets; (2) Defendants agreed to not publicly discuss or otherwise reveal the nature and substance of the acts in furtherance of their illegal scheme; (3) Defendants gave false and pretextual reasons for price increases; (4) Defendants falsely described Titanium Dioxide pricing as being the result of competitive factors rather than collusion; and (5) Defendants wrongfully and fraudulently concealed their collusive activities through various other means and methods designed to avoid detection.  FAC ¶ 159, ¶¶ 167-69.  *See supra* note 21.  Defendants' unsupported assertion that this activity needed to be directed at IPPs finds no support in the case law, which does not require IPPs to make such an allegation.  If it did, there could never be indirect purchaser actions.

IPPs have pleaded Defendants' affirmative acts of concealment with particularity.  They allege, for example, that Defendants used trade association meetings as an opportunity to have private discussions about price increases and that 88 percent of price increase announcements

by Defendants came within 30 days of such trade association meetings.  FAC ¶ 71.  IPPs further allege that Defendants instructed any employee given access to exchanged information to keep that information secret and undertook measures to keep inventory buildup secret.  FAC ¶¶ 83, 95.

IPPs also allege that Defendants continually raised prices between 2002 and 2010 despite industry overcapacity and that Defendants gave pretextual reasons for those price increases, such as market forces and increases in the price of energy and freight.  FAC ¶¶ 104, 106-108, 114, 116, 119, 121, 127.  Defendants continued to cite market forces and the price of energy as reasons for their price increases even as excess inventory increased and the price of energy declined—both of which should have brought down the price of Titanium Dioxide. FAC ¶¶ 127, 139. These alleged affirmative acts, taken as true, identify with particularity concrete steps taken by Defendants to conspire to raise prices, explain the increase with pretextual excuses, and keep their agreements secret.

> ### 2.  *IPPs adequately allege that they had neither actual nor constructive knowledge of the facts giving rise to their claims.*

IPPs declare that they had no actual knowledge of Defendants' price-fixing conspiracy. This averment is sufficient to create a factual dispute at this stage in the litigation.  *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 491 (C.D. Cal. 1991) ("*Petroleum Prods.*").   Nor did IPPs have constructive knowledge of the conspiracy.  A plaintiff has constructive knowledge when plaintiff "should have been alerted to facts that, following due diligent inquiry, could have advised it of its claim."  *Id*. at 493 (quoting *Conmar Corp.*, 858 F.2d at 502).  Knowledge of facts relevant to a claim "will not amount to constructive knowledge if those facts were not of a type to prompt investigation."   *Id*.

1    Similarly, constructive knowledge does not exist if, even upon investigating, a plaintiff might

2    reasonably be unable to uncover the claims.  *Id.*

3         IPPs allege that Defendants' price fixing conspiracy was "inherently self concealing,"

4    making it impossible for IPPs to discover the pertinent facts until the July 2010 public

5    announcement that the price increases were being passed on to the IPPs.  FAC ¶ 159-60.   Such

6    allegations, taken as true, "would not give rise to any information that would excite the inquiry

7    of a reasonable person and thereby require IPPs to engage in affirmative steps to attempt to

8    discover the conspiracy."  *Rubber*, 504 F. Supp. 2d at 788 (internal quotation omitted).  Similar

9    allegations were found sufficient in *Rubber* and *Flat Panel I*. *Id.*; 586 F. Supp. 2d at 1119-20.

10        The mere fact that prices were rising was not enough to create constructive knowledge

11   of a conspiracy.  Defendants publicly announced that price increases were the result of market

12   forces, and IPPs had no knowledge of facts that would cause them to disbelieve these public

13   statements.  *See* FAC ¶ 114; *Petroleum Prods.*, 782 F. Supp. at 493 ("Even where a plaintiff

14   actually knows of public speculation [about facts relevant to a claim], constructive knowledge

15   cannot be established absent awareness of some evidence tending to support it." (internal

16   quotations omitted)).  IPPs are not required to assume that Defendants were engaged in criminal

17   activity whenever prices rose.  *See In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d

18   777, 804 (N.D. Ohio 2011) ("[I]t makes little sense to require a plaintiff to inquire of each of his

19   vendors whether a [product's] price was determined by market forces or a concealed, multi-

20   year, multi-member antitrust conspiracy.").  Even if IPPs had investigated, they could not have

21   discovered the conspiracy because of Defendants' misleading public statements and hidden

22   conspiratorial acts.

23

24

*3.  IPPs adequately allege due diligence.*

The due diligence requirement "is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person." *Conmar*, 858 F.2d at 504.  As the *Petroleum Products* court explained, "Due diligence is not required in the abstract.  Plaintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have." *Petroleum Prods.*, 782 F. Supp. at 498.  Similarly, the *Rubber Chemicals* court explained:

> Plaintiffs['] allegation that they had no knowledge of facts that would have led to discovery of the conspiracy by the exercise of reasonable due diligence is sufficient to establish, at the pleading stage, that there were no facts that would excite the inquiry of a reasonable person to trigger a duty to inquire.

*Rubber*, 504 F. Supp. 2d at 789.  The plaintiffs in both *Petroleum Products* and *Rubber Chemicals* alleged price-fixing conspiracies, and the courts found that allegations of hidden conspiracies satisfied the due diligence requirement.

IPPs likewise allege that they had no knowledge of facts that would have led to discovery of the conspiracy by the exercise of reasonable due diligence, at least until after the direct purchasers' July 2010 public announcement.  FAC ¶ 159.  This lack of knowledge resulted from Defendants' active concealment of their illegal activities.  FAC ¶¶ 157-172.  IPPs further allege that they had no direct transactions with Defendants that would have raised suspicion that Defendants were engaging in illegal collusive conduct.  FAC ¶ 153.  IPPs have therefore adequately alleged due diligence.

## C.  The Discovery Rule Tolls the Statutes of Limitations in Most States

"Under the discovery rule, the statute of limitations begins to run from the date the claimant knew or should have known that, by the exercise of reasonable diligence, a cause of action exists." *Holmes v. Nat'l Serv. Indus., Inc.*, 717 S.E.2d 751, 753 (S.C. 2011). *See also*

1   *Alexander v. Exxon Mobil*, 219 Cal. App. 4th 1236, 1251 (Cal. App. 2 Dist. 2013) (cause of

2   action accrues when plaintiff actually discovers injury or cause or could have discovered

3   through reasonable diligence); *Hook v. Lippolt*, 755 N.W.2d 514, 521 (Iowa 2008) (statute of

4   limitation tolled until person has knowledge of all elements of cause of action).  IPPs meet the

5   discovery rule standard because the FAC alleges that they (1) did not discover their claims until

6   at least July 2010 and (2) could not have discovered their claims sooner.  FAC ¶¶ 150-155.  The

7   Court should apply the discovery rule in states that allow claims to toll until a plaintiff discovers

8   its cause of action.  *See* Exhibit E.  *See, e.g.*, *Cal. v. Infineon Techs. AG*, 531 F. Supp. 2d at

9   1161; *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 342–344 (E.D. Pa. 2004); *In re*

10  *Vitamins Antitrust Litig.*, No. MISC99–197, 2000 WL 1524912, at *3 (D.D.C. July 14, 2000).

11  *Cf. Filters*, 2009 WL 3754041 at *4.

12                                    **CONCLUSION**

13         For the foregoing reasons, Defendants' motion should be denied in all respects.

14

15  Dated: March 5, 2014                         Respectfully submitted,

16  PRATT & ASSOCIATES                           CUNEO GILBERT & LADUCA LLP

17  */s/ Ben F. Pierce Gore*                     */s/ Sandra Cuneo*
    Ben F. Pierce Gore (SBN 128515)              Sandra Cuneo (SBN 110388)

18  1871 The Alameda, Suite 425                  CUNEO, GILBERT & LADUCA, LLP
    San Jose, California 95126                   11620 Wilshire Boulevard, Suite 900

19  Telephone:  (408) 369-0800                   Los Angeles, CA 90025
    Facsimile:   (408) 369-0752                  Telephone:  (310) 582-5939

20  pgore@prattattorneys.com                     Facsimile:   (310) 582-5943
                                                 scuneo@cuneolaw.com

21  Don Barrett (admitted *pro hac vice*)        Jonathan W. Cuneo (admitted *pro hac vice*)
    Barrett Law Group, P.A.                      Joel Davidow (*pro hac vice* to be filed)

22  P.O. Box 927                                 Katherine Van Dyck (admitted *pro hac vice*)
    404 Court Square                             Victoria Romanenko (admitted *pro hac vice*)

23  Lexington, MS 39095                          507 C Street, N.E.
    Telephone: (662) 834-2488                    Washington, DC 20002

24  dbarrett@barrettlawgroup.com                 Telephone:      (202) 789-3960

| | | |
|---|---|---|
| 1 | | Facsimile:      (202) 789-1813 |
| | Charles F. Barrett  (admitted *pro hac vice*) | jonc@cuneolaw.com |
| 2 | Charles Barrett, P.C. | joel@cuneolaw.com |
| | 6518 Highway 100, Suite 210 | kvandyck@cuneolaw.com |
| 3 | Nashville, TN 37205 | vicky@cuneolaw.com |
| | Telephone:   (615) 515-3393 | |
| 4 | Facsimile:    (615) 515-3395 | |
| | Email: charles@cfbfirm.com | |
| 5 | | |
| | Thomas P. Thrash (admitted *pro hac vice*) | Dewitt Lovelace |
| 6 | Marcus N. Bozeman | Lovelace & Associates, P.A. |
| | Thrash Law Firm, P.A. | 12870 US Hwy 98 West, Ste. 200 |
| 7 | 1101 Garland Street | Miramar Beach, FL 32550 |
| | Little Rock, AR 72201 | Telephone: (850) 837-6020 |
| 8 | Telephone: (501) 374-1058 | dml@lovelacelaw.com |
| | tomthrash@sbcglobal.net | |
| 9 | bozemanmarcus@sbcglobal.net | |
| 10 | Shawn M. Raiter | Phillip Duncan |
| | Paul Sand | Richard Quintus |
| 11 | Larson • King, LLP | Duncan Firm, P.A. |
| | 2800 Wells Fargo Place | 900 S. Shackleford, Suite 725 |
| 12 | 30 East Seventh Street | Little Rock, AR 72211 |
| | St. Paul, MN 55101 | Telephone: (501) 228-7600 |
| 13 | Telephone: (651) 312-6500 | phillip@duncanfirm.com |
| | sraiter@larsonking.com | richard@duncanfirm.com |
| 14 | psand@larsonking.com | |
| 15 | Gerard V. Mantese | |
| | Mantese Honigman Rossman & | |
| 16 | Williamson, P.C. | |
| | 1361 E. Big Beaver Road | |
| 17 | Troy, Michigan 48083 | |
| | Telephone:    (248) 457-9200 | |
| 18 | Facsimile:     (248) 457-9201 | |
| | gmantese@manteselaw.com | *Attorneys for IPPs and the Putative Class* |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 13-CV-01180 (WHO)                                                         39