1   Beatrice B. Nguyen (CSB No. 172961, bbnguyen@crowell.com)
    CROWELL & MORING LLP
2   275 Battery Street, 23rd Floor
    San Francisco, CA  94111
3   Telephone: 415.986.2800
    Facsimile: 415.986.2827
4
5   Shari Ross Lahlou (*Pro Hac Vice*, slahlou@crowell.com)
    CROWELL & MORING LLP
6   1001 Pennsylvania Avenue, N.W.
    Washington, DC 20004
6   Telephone: 202.624.2500
7   Facsimile: 202.628.5116
8   Attorneys for Defendant
    E. I. DU PONT DE NEMOURS AND COMPANY
9
    Additional moving defendants and counsel listed on signature pages
10

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

| | |
|---|---|
| 15   LOS GATOS MERCANTILE, INC. d/b/a LOS GATOS ACE HARDWARE, FRED SWAIM, INC. d/b/a QUALITY AUTO PARTS, ACE HARDWARE OF SOUTH WALTON, INC., LEXINGTON HOME CENTER, LLC, R.F. COLE, INC. d/b/a BREWERS PAINT CENTER, CUSIMANO CARSTAR COLLISION, INC., and THE CARPETSHOPPE, INC., on behalf of themselves and all others similarly situated, | Case No. 5:13-cv-01180-BLF **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

16

17

18

19

20                                    Date:     February 5, 2015
                                      Time:     9:00 a.m.
21              Plaintiffs,           Dept:     Courtroom 3, 5th Floor
                                      Judge:    Honorable Beth Labson Freeman
22       v.

23   E. I. DU PONT DE NEMOURS AND
     COMPANY, HUNTSMAN
24   INTERNATIONAL LLC, KRONOS
     WORLDWIDE, INC., and MILLENNIUM
25   INORGANIC CHEMICALS INC.,

26              Defendants.

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2015, at 9:00 a.m., in Courtroom 3, 5th Floor, of this Court at 280 South 1st Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, Defendants E. I. du Pont de Nemours and Company, Huntsman International, LLC, Kronos Worldwide, Inc., and Cristal USA Inc., formerly known as Millennium Inorganic Chemicals Inc. (collectively, "Defendants") will and hereby do move the Court for an order (1) dismissing with prejudice all claims against Defendants asserted by Plaintiffs Los Gatos Mercantile, Inc. d/b/a Los Gatos Ace Hardware; Fred Swaim, Inc. d/b/a Quality Auto Parts; Ace Hardware of South Walton, Inc.; Lexington Home Center, LLC; R.F. Cole, Inc. d/b/a Brewers Paint Center; Cusimano Carstar, Inc.; The Carpet Shoppe, Inc.; Morgan Tanner; and William Aviles (collectively, "Plaintiffs"); and (2) striking all class allegations asserted by Plaintiffs.  As a matter of law, Plaintiffs' Second Amended Class Action Complaint ("SAC") fails to establish standing or state a claim against Defendants upon which relief can be granted.  Moreover, Plaintiffs' class allegations should be stricken because Plaintiffs and their counsel do not meet the "adequacy" requirement of  Rule 23 of the Federal Rules of Civil Procedure.  The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the SAC, and other such matters that the Court may consider.

**RELIEF SOUGHT**

Defendants seek an order dismissing all claims against Defendants in Plaintiffs' SAC with prejudice.  Defendants further seek an order striking all class allegations contained in the SAC.

Dated:  November 17, 2014

CROWELL & MORING LLP

*/s/ Shari Ross Lahlou*

Shari Ross Lahlou
Beatrice B. Nguyen
Attorneys for Defendant
E. I. DU PONT DE NEMOURS AND COMPANY

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

1   Dated: November 17, 2014                 VINSON & ELKINS LLP

2                                  */s/ James Arthur Reeder, Jr.*

3

4                            James Arthur Reeder, Jr.
                                 Erica L. Krennerich

5                            Attorneys for Defendant
                        HUNTSMAN INTERNATIONAL, LLC

6

7   Dated: November 17, 2014                  LOCKE LORD LLP

8                                     */s/ Paul Edward Coggins*

9

10                            Paul Edward Coggins
                           Kelly Rothermel Vickers

11                           Attorneys for Defendant
                         KRONOS WORLDWIDE, INC.

12

13   Dated: November 17, 2014              ARNOLD AND PORTER LLP

14                                 */s/ James L. Cooper*

15                            James L. Cooper
                              Ryan Z. Watts

16                            Noah L. Browne

17                           Attorneys for Defendant
             CRISTAL USA INC., FORMERLY KNOWN AS

18        MILLENNIUM INORGANIC CHEMICALS INC.

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................. 1

RELIEF SOUGHT .................................................................................................................. 1

INTRODUCTION ................................................................................................................... 1

STATEMENT OF ISSUES ..................................................................................................... 2

LEGAL ARGUMENT ............................................................................................................ 2

I.   Plaintiffs Lack Constitutional and Antitrust Standing to Assert Their Claims.................. 2

    A.   Plaintiffs Lack Article III Standing to Assert Any Claim Because They Have Not Alleged an Injury That Is Traceable to Defendants' Alleged Acts ........ 3

        1.   TiO2 Is Completely Integrated Into Architectural Coatings and Does Not Remain an Identifiable and Discrete Physical Product.............. 3

        2.   Plaintiffs' Vague, Conclusory Allegations Further Confirm that Their Purported Injuries Are Not Fairly Traceable Through the Various Distribution Chains.......................................................................... 5

    B.   Plaintiffs Also Fail to Plead Facts Showing They Have Antitrust Standing .......... 7

    C.   Plaintiffs Lack Standing to Pursue Injunctive and Equitable Relief.................... 12

II.   Plaintiffs' Consumer Protection Claims Should Be Dismissed ....................................... 13

    A.   Consumer Protection Claims Cannot Be Brought as Class Actions Under South Carolina Law............................................................................................. 13

    B.   Plaintiffs Lack Standing to Assert Claims Under Arkansas, New York, and Other Consumer Protection Statutes Because Their Claims Are Too Remote. ............................................................................................................... 14

    C.   Plaintiffs' New York Consumer Protection Claims Must Be Dismissed Because Plaintiffs Do Not Allege "Consumer-Oriented" Conduct .................... 15

    D.   The Merchant Classes' Claims Under Missouri Law Must Be Dismissed Because Merchant Plaintiffs Do Not Allege Purchases Made for Personal Use ...................................................................................................................... 16

    E.   Plaintiffs Fail to Plead Fraud or Deceitful Conduct as Required in Arkansas, California, the District of Columbia, Florida, Missouri, and New York ...................................................................................................................... 16

    F.   Arkansas Consumer Protection Law Does Not Permit Price-Fixing Claims........ 18

III.   Plaintiffs' Unjust Enrichment Claims Should Be Dismissed........................................... 19

    A.   Plaintiffs Cannot Bring Unjust Enrichment Claims Where State Antitrust or Consumer Protection Claims Fail.................................................................... 19

    B.   The Unjust Enrichment Claims Fail Due to Deficiencies Under State Law......... 19

IV.   Plaintiffs' Claims Pre-Dating March 15, 2009 Are Barred by the Statute of Limitations Because Plaintiffs Fail to Adequately Plead Fraudulent Concealment ........ 22

    A.   Plaintiffs Fail to Plead Facts Showing that They Lacked Actual or Constructive Knowledge...................................................................................... 23

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

**TABLE OF CONTENTS**
**(continued)**

Page

B.   Plaintiffs' Allegations Regarding the Secrecy of Defendants' Alleged Conduct Are Insufficient as a Matter of Law..............................................................24

C.   Allegations of Pretextual Communications Fail to Toll the Limitations Period .............................................................................................................25

V.   The Court Should Strike Plaintiffs' Class Allegations Because Plaintiffs and Their Counsel Do Not Satisfy the Adequacy Requirement of Rule 23 ......................................27

A.   The Court May Strike Defective Class Allegations at the Pleading Stage ...........27

B.   The Named Plaintiffs and Their Counsel Do Not Satisfy the Adequacy Requirements Under Rule 23(a)(4)......................................................................27

CONCLUSION .............................................................................................................30

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

# TABLE OF AUTHORITIES

Page

**CASES**

*389 Orange St. Partners v. Arnold,*
179 F.3d 656 (9th Cir. 1999)..................................................................................23

*In re Actimmune Mktg. Litig.,*
No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010).....................16

*In re Aftermarket Filters Antitrust Litig.,*
No.08-C-4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ...................................17

*In re Aftermarket Filters Antitrust Litig.,*
No. 08-C-4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ...................................21

*Am. Safety Ins. Serv., Inc. v. Griggs,*
959 So. 2d 322 (Fla. Dist. Ct. App. 2007) .......................................................20, 21

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)...............................................................................................28

*Ang v. Bimbo Bakeries USA, Inc.,*
No. 13–cv–01196–WHO, 2013 WL 5407039 (N.D.Cal. Sept. 25, 2013) ..............22

*In re Apple Inc. Sec. Litig.,*
No. 5:06-CV-05208-JF HRL, 2011 WL 1877988 (N.D. Cal. May 17, 2011)........30

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983) ........................................................................................ *passim*

*Atl. Bell Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................6, 9, 11, 26

*In re Auto. Parts Antitrust Litig.,*
-- F. Supp. 2d --, No. 12-MD-02311, 2014 WL 2993742 (E.D. Mich. July 3,
2014) .........................................................................................4, 14, 16, 19, 29

*In re Auto. Parts Antitrust Litig.,*
No. 12-MD-02311, 2014 WL 29999269 (E.D. Mich. Jul. 3, 2014) ........................19

*In re Auto. Parts Antitrust Litig.,*
Nos. 2:12-cv-00502, 2:12-cv-00503, 2014 WL 4793848.......................................20

*In re Auto. Refinishing Paint Antitrust Litig.,*
515 F. Supp. 2d 544 (E.D. Pa. 2007) ...............................................................15, 17

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

# TABLE OF CONTENTS
### (continued)

Page

CASES

*Baas v. Dollar Tree Stores, Inc.*,
No. C 07-03108 JSW, 2008 WL 906496 (N.D. Cal. Apr. 1, 2008).........................30

*Bennett v. Visa U.S.A. Inc.*,
198 S.W.3d 747 (Tenn. Ct. App. 2006) .................................................................21

*Bodie-Rickett & Assocs. v. Mars, Inc.*,
957 F.2d 287 (6th Cir. 1992)................................................................................11

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*,
916 F. Supp. 2d 357 (W.D.N.Y. 2013) .................................................................22

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
858 F.2d 499 (9th Cir. 1988)...........................................................................23, 24

*Cruz v. NYNEX Info. Res.*,
263 A.D.2d 285 (N.Y. App. Div. 2000)................................................................16

*Davenport v. Charter Commc'ns, LLC*,
-- F. Supp. 2d --, No. 4:12CV00007 AGF, 2014 WL 3818377 (E.D. Mo. Aug.
4, 2014) .................................................................................................................13

*De Giovanni v. Jani-King Intern., Inc.*,
262 F.R.D. 71 (D. Mass. 2009) ............................................................................19

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*,
678 S.E.2d 430 (S.C. 2009)..................................................................................13

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011)........................................................18, 19, 20

*Dodd-Owens v. Kyphon, Inc.*,
No. C06-3988 JF (HRL), 2007 WL 3010560 (N.D. Cal. Oct. 12, 2007) ...............28

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................9, 10, 11, 12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...........................................................14, 15

*In re Egg Products Antitrust Litigation*,
851 F. Supp. 2d 867 (E.D. Pa. 2012) ...................................................................17

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iv-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

# TABLE OF CONTENTS
### (continued)

Page

**CASES**

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)...................................................................27

*Fenerjian v. Nongshim Co.*,
  No. 13-CV-04115-WHO, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014)...............................22

*Fernandes v. Havkin*,
  731 F. Supp. 2d 103 (D. Mass. 2010) ...........................................................21

*In re Fla. Cement & Concrete Antitrust Litig.*,
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) ........................................................14

*In re Flonase Antitrust Litig.*,
  692 F. Supp. 2d 542 (E.D. Pa. 2010) ..........................................................19

*Gen. Insulation Co. v. Eckman Const.*,
  159 N.H. 601, 992 A.2d 613 (N.H. 2010) .......................................................19

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994)..................................................................26

*Go Computer, Inc. v. Microsoft Corp.*,
  437 F. Supp. 2d 497 (D. Md. 2006), *aff'd* 508 F.3d 170 (4th Cir. 2007) ...............24, 25

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................18

*In re Graphics Processing Units Antitrust Litig.*,
  540 F. Supp. 2d 1085 (N.D. Cal. 2007) ......................................................5, 17

*Gregory v. Preferred Fin. Solutions*,
  No. 5:11-CV-422 MTT, 2013 WL 6632322 (M.D. Ga. Dec. 17, 2013)..................................30

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996)...................................................................25

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).................................................................28

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012).............................................................23, 24

*High v. Davis*,
  584 P.2d 725 (Or. 1978)......................................................................20

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

**TABLE OF CONTENTS**
(continued)

Page

CASES

*Hill v. Roll Int'l. Corp.*,
   128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) .......................................................19, 22

*Hovsepian v. Apple, Inc.*,
   No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)...................27

*Howard v. Turnbull*,
   316 S.W.3d 431 (Mo. Ct. App. 2010).....................................................................20

*Hunters Friend Resort, Inc. v. Branson Tourism Ctr., L.L.C.*,
   No. 09-3114-CCV-S-ODS, 2009 WL 2450281 (W.D. Mo. Aug. 10, 2009) ...........16

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   299 F.R.D. 648 (S.D. Cal. 2014)..............................................................................14

*HyPoint Tech., Inc. v. Hewlett-Packard Co.*,
   949 F.2d 874 (6th Cir. 1992) ....................................................................................19

*Independence Cnty. v. Pfizer, Inc.*,
   534 F. Supp. 2d 882 (E.D. Ark. 2008) .....................................................................14

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   496 F. Supp. 2d 404 (D. Del. 2007).........................................................................20

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)................3

*James River Ins. Co. v. Rapid Funding, LLC*,
   658 F.3d 1207 (10th Cir. 2011)................................................................................13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)...........................................................................17, 26

*Khasin v. Hershey Co.*,
   No. 5:12–CV–01862 EJD, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ...............22

*Lee v. Children's Place Retail Stores, Inc.*,
   No. 14C3258, 2014 WL 5100608 (N.D. Ill. Oct. 8, 2014) ......................................28

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005)......................................................................16

*Lisk v. Lumber One Wood Preserving, LLC*,
   993 F. Supp. 2d 1376 (N.D. Ala. 2014) ...................................................................13

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

**CASES**

4

*Lorenzo v. Qualcomm Inc.*,
5
  603 F. Supp. 2d 1291 (S.D. Cal. 2009) ....................................................................9

6

*Lorix v. Crompton Corp.*,
  736 N.W.2d 619 (Minn. 2007)................................................................................8

7

*Gorbey ex rel. Maddox v. Am. Journal of Obstetrics & Gynecology*,
8
  849 F. Supp. 2d 162 (D. Mass. 2012) ..................................................................15

9

*In re Magnesium Oxide Antitrust Litig.*,
10
  No. CIV. 10-5943 DRD, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ......................17

11

*Martinelli v. Petland, Inc.*,
  No. CV-09-529-PHX-DGCI, 2010 WL 376921 (D. Ariz. Jan. 26, 2010) ..............18

12

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*,
13
  MDL No. 2333, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) ..................................14

14

*In re Microsoft Corp. Antitrust Litig.*,
  401 F. Supp. 2d 461 (D. Md. 2005) ......................................................................21

15

*In re Microsoft Corp. Antitrust Litigation*,
16
  218 F.R.D. 449 (D. Md. 2003)..............................................................................29

17

*Mid Island LP v. Hess. Corp.*,
18
  No. 650911/2013, 2013 WL 6421281 (N.Y. Sup. Ct. Dec. 2, 2013)......................16

19

*Minn-Chem, Inc. v. Agrium Inc.*,
  657 F.3d 650 (7th Cir. 2011), *aff'd Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d
20
  845 (7th Cir. 2012)................................................................................................10

21

*Moreno v. Autozone, Inc.*,
22
  No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007)......................30

23

*Myers-Armstrong v. Actavis Totowa, LLC*,
  382 F. App'x 545 (9th Cir. 2010) ........................................................................22

24

*In re New Motor Vehicles Can. Exp. Antitrust Litig.*,
25
  350 F. Supp. 2d 160 (D. Me. 2004) ...............................................................17, 20

26

*Nigh v. Humphreys Pharmacal, Inc.*,
27
  No. 12CV2714-MMA-DHB, 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013)..........30

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-vii-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

**TABLE OF CONTENTS**
(continued)

Page

**CASES**

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................................28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. 1995) ...................................................................15

*Owen v. Gen. Motors Corp.*,
    533 F.3d 913 (8th Cir. 2008) ..................................................................15

*Paschall's Inc. v. Dozier*,
    407 S.W.2d 150 (Tenn. 1966) .................................................................20

*Pereira v. Regions Bank*,
    752 F.3d 1354 (11th Cir. 2014) ..............................................................21

*Pitts v. Jackson Nat'l. Life Ins. Co.*,
    574 S.E.2d 502 (S.C. Ct. App. 2002) .....................................................21

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    MDL 2109, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) .......................12, 13

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
    828 F.2d 211 (4th Cir. 1987) ..................................................................25

*Pope v. TT of Lake Norman, LLC*,
    505 F. Supp. 2d 309 (W.D.N.C. 2007) ..................................................14

*In re Potash Antitrust Litig.*,
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ...............................10, 12, 13, 21

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
    697 F.3d 1192 (9th Cir. 2012)...................................................................3

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).............................................................27, 28

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978)...................................................................25

*Saavedra v. Eli Lilly & Co.*,
    No. 2:12-cv-9366-SVW-MAN, 2013 WL 3148923 (C.D. Cal. June 13, 2013) .......................18

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................27

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-viii-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

**TABLE OF CONTENTS**
(continued)

Page

CASES

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010) ..................................................................................................13, 14

*Shepard v. DineEquity, Inc.*,
  CIV. A. 08-2416-KHV, 2009 WL 8518288 (D. Kan. Sept. 25, 2009) .....................19

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.*,
  715 F.2d 1079 (6th Cir. 1983) ..................................................................................11

*Sperry v. Crompton Corp.*,
  863 N.E.2d 1012 (N.Y. 2007) ...................................................................................22

*Sperry v. Crompton Corp.*,
  No. 17872/2002, slip op. (N.Y. Sup. Ct. Nov. 20, 2003), *aff'd* 26 A.D.3d 488
  (N.Y. App. Div. 2006) ...............................................................................................15

*Spires v. Hosp. Corp. of Am.*,
  289 F. App'x 269 (10th Cir. 2008) ............................................................................21

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
  42 A.D.3d 301 (N.Y. App. Div. 2007).......................................................................22

*Stalvey v. Am. Bank Holdings, Inc.*,
  No. 4:13-cv-714, 2013 WL 6019320 (D.S.C. Nov. 13, 2013)..............................13, 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  No. 07-md-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ......................18

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ......................................................................................................3

*Stires v. Carnival Corp.*,
  243 F. Supp. 2d 1313 (M.D. Fla. 2002) .....................................................................17

*Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*,
  830 F.2d 1374 (7th Cir. 1987).....................................................................................12

*Teague v. Bayer AG*,
  671 S.E.2d 550 (N.C. Ct. App. 2009) ..........................................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  787 F. Supp. 2d 1036 (N.D. Cal. 2011) ................................................4, 10, 11, 18

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ix-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

# TABLE OF CONTENTS
### (continued)

Page

**CASES**

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................27

*In re Titanium Dioxide Antitrust Litigation*,
No. 10-CV-0318 (D. Md. 2010)...............................................................24

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 82 (D. Conn. 2014) .........................................................14

*Valikhani v. Qualcomm Inc.*,
No. 08CV786 WQH JMA, 2009 WL 539915 (S.D. Cal. Mar. 3, 2009) ................14

*Walker v. USAA Cas. Ins. Co.*,
474 F. Supp. 2d 1168 (E.D. Cal. 2007), *aff'd sub nom. Walker v. Geico Gen.*
*Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009) ..................................................22

*Ward v. W. Cnty. Motor Co.*,
403 S.W.3d 82 (Mo. 2013)......................................................................16

*Weiss v. Polymer Plastics Corp.*,
21 A.D.3d 1095 (N.Y. App. Div. 2005).....................................................15

*West v. Am. Tel. & Tel. Co.*,
311 U.S. 223 (1940)...............................................................................20

*Winters v. Cnty. of Clatsop*,
150 P.3d 1104 (Or. Ct. App. 2007) .........................................................20

*Witherspoon v. v. Philip Morris Inc.*,
964 F. Supp. 455 (D.D.C. 1997) .............................................................17

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971)...............................................................................22

**STATUTES AND RULES**

15 U.S.C. § 15(b) .....................................................................................22

Ark. Code Ann. § 4-75-315(b) ...................................................................18

Fed. R. Civ. P. 9(b) ..................................................................23, 25, 26

Fed. R. Civ. P. § 12(f) ...............................................................................27

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-x-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

# TABLE OF CONTENTS
## (continued)

Page

Fed. R. Civ. P. § 23 ....................................................................................27, 28, 29, 30

Mo. Ann. Stat. § 407.025 .........................................................................................16

N.M. Stat. Ann. § 57-12-10 ......................................................................................15

N.M. Stat. Ann. § 57-1-12(B) ...................................................................................22

S.C. Code Ann. § 39-5-140........................................................................................15

S.C. Code Ann. § 39-5-140(a) ..............................................................................13, 14

S.C. Code 1976, § 39–5–150 ....................................................................................22

**OTHER AUTHORITIES**

William B. Rubenstein, *Newberg on Class Actions* § 3:54 (5th ed.)............................28

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

### INTRODUCTION

Plaintiffs' amended pleading continues to exhibit many of the fundamental defects the Court found dispositive in its September 22, 2014 order granting (with few exceptions) Defendants' motion to dismiss Plaintiffs' First Amended Complaint (the "FAC") ("9/22/14 Order"). Most fundamentally, the Court found that Plaintiffs, indirect purchasers of titanium dioxide ("TiO2"), failed to adequately allege that they suffered an injury that was traceable to the alleged anticompetitive conspiracy among Defendants, who represent a portion of the global manufacturers of TiO2. Plaintiffs sought to bring claims with regard to each and every product containing TiO2 as a chemical component, while offering no allegations to show that they could ever hope to trace alleged overcharges by Defendants through myriad manufacturing and distribution chains down to merchants and end users of the products. Plaintiffs' sparse allegations were insufficient to support constitutional standing and antitrust standing, as well as inadequate to state substantive claims under the many state laws they invoked (including laws of states in which they did not reside).

With their Second Amended Complaint ("SAC"), Plaintiffs attempt to remedy some of the FAC's shortcomings. For example, they narrow the scope of the relevant product market to "Architectural Coatings" and add a handful of allegations related to traceability. But those revisions are to no avail. Even "Architectural Coatings" encompasses thousands of products with very different formulations and concentrations of TiO2. Likewise, Plaintiffs' new causation allegations remain vague, conclusory, and in fact demonstrate that it would be impossible to trace the effect—if any—of Defendants' purported conspiracy down every level of every manufacturing and distribution chain to merchants and consumers. And while they add named Plaintiffs from various states, Plaintiffs fail to correct the deficiencies in their state law claims.

Plaintiffs' amendment does not sufficiently remedy the flaws in the FAC and thus should likewise be dismissed. Plaintiffs fail to adequately allege that they have Article III standing to bring <u>any</u> of their claims, and their allegations demonstrate lack of antitrust standing. In addition, Plaintiffs' consumer protection and unjust enrichment claims suffer from pleading failures under the relevant state laws, independently warranting their dismissal. Moreover, most of Plaintiffs'

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT; Case No. 5:13-CV-01180-BLF

1   claims are time-barred, and Plaintiffs' new allegations fail to adequately plead any fraudulent

2   concealment on Defendants' part that would have tolled the relevant statutes of limitations.

3   Finally, the Court should strike all of Plaintiffs' class allegations because the named Plaintiffs and

4   their counsel impermissibly seek to represent two classes – the "Merchant Class" and the

5   "Consumer Class" – that have inherent and unavoidable conflicts.

6                                **STATEMENT OF ISSUES**

7        1.      Whether Plaintiffs lack Article III standing.

8        2.      Whether Plaintiffs lack antitrust standing to assert their state antitrust claims.

9        3.      Whether Plaintiffs fail to state a claim under the consumer protection laws of the

10  relevant states.

11       4.      Whether Plaintiffs fail to state a claim for unjust enrichment.

12       5.      Whether Plaintiffs' claims are barred in part by the applicable statutes of

13  limitations, and whether they fail to adequately plead fraudulent concealment.

14       6.      Whether Plaintiffs' class allegations should be stricken because of the inherent

15  conflict between the putative Merchant and Consumer Classes.

16                                  **LEGAL ARGUMENT**

17  **I.    PLAINTIFFS LACK CONSTITUTIONAL AND ANTITRUST STANDING TO
         ASSERT THEIR CLAIMS.**

18

19          In order to pursue their claims, Plaintiffs must establish that they have *both* standing

20  pursuant to Article III *and* the "antitrust standing" requisite to assert claims under federal and

21  state antitrust laws.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

22  *Carpenters*, 459 U.S. 519, 537-45 (1983) ("*AGC*").  As this Court has recognized, both aspects of

23  standing are threshold issues that should be resolved at the outset.  *See* 9/22/14 Order at 3-7.

24          The predominant theme of this Court's 9/22/14 Order was that Plaintiffs had failed to

25  adequately allege facts in their FAC establishing any causal connection between their alleged

26  injuries and any purported acts of Defendants, thus dooming their antitrust standing.  *Id.*  In their

27  SAC, Plaintiffs try in vain to remedy that fundamental flaw by adding a handful of factual

28  allegations and by limiting the relevant market (which previously included every single product

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

containing TiO2) to "Architectural Coatings."  However, Plaintiffs' allegations remain so vague and conclusory that the highly attenuated link between their purported injuries and any act of Defendants is insufficient to support *either* Plaintiffs' Article III or antitrust standing.

### A.    Plaintiffs Lack Article III Standing to Assert Any Claim Because They Have Not Alleged an Injury That Is Traceable to Defendants' Alleged Acts.

To demonstrate constitutional standing, a plaintiff must establish: "(1) an injury in fact that is (2) fairly *traceable* to the challenged conduct and (3) has some likelihood of redressability."  *See Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1195-96 (9th Cir. 2012) (emphasis added).  As this Court recognized in ruling on Defendants' first motion to dismiss, if each of these requirements is not present, the action should be dismissed for lack of subject matter jurisdiction.  *See* 9/22/14 Order at 3:18-20 (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109-10 (1998)); *see also In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) (granting motion to dismiss where plaintiffs failed to allege an injury in fact that was fairly traceable to defendants' alleged conduct).  Here, Plaintiffs lack Article III standing because they do not, and cannot, allege an injury that is adequately *traceable* to any allegedly wrongful act of Defendants.

Plaintiffs face an insurmountable obstacle in establishing Article III standing because the nature of the product makes it virtually impossible for them to demonstrate that purported overcharges were passed through various distribution chains from Defendants down to Plaintiffs and the putative Merchant Class and Consumer Class alike.  In any event, they have offered no plausible allegations supporting a conclusion that they sustained an injury in fact that is "fairly traceable" to Defendants' conduct.  In fact, the allegations Plaintiffs do make actually demonstrate that the connection between their purported injuries and the acts of Defendants as alleged in the SAC is far too attenuated to establish Article III standing.

### 1.    TiO2 Is Completely Integrated Into Architectural Coatings and Does Not Remain an Identifiable and Discrete Physical Product.

Plaintiffs cannot establish the requisite causal connection by following the alleged overcharges along a traceable path from Defendants' purported actions down the various distribution chains to Plaintiffs' purchases in significant part because TiO2 itself becomes

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

1  physically untraceable.  As this Court previously found, TiO2 is a "chemical ingredient that does

2  become an indistinguishable part of the finished consumer product.  Thus although Plaintiffs

3  allege that they will be able to trace titanium dioxide manufactured by Defendants through the

4  distribution chain, that allegation is implausible given the breadth of the defined market and the

5  manner in which titanium dioxide is incorporated into finished consumer products."  9/22/14

6  Order at 12:25-13:2.  Nothing about Plaintiffs' amendment remedies that core problem.  One

7  cannot take apart an "Architectural Coating," such as a can of house paint, and separate the TiO2.

8  Nor could one tell how much TiO2 is contained in the product, or who manufactured the TiO2.

9  The chemical becomes completely integrated into the final products such that the threshold

10  traceability questions will be extremely difficult, if not impossible, to answer.

11       Courts have found the extent of physical traceability critical in determining whether an

12  indirect purchaser has standing in an Article III context.  For example, in *In re Automotive Parts*

13  *Antitrust Litigation*, No. 12-md-02311, 2014 WL 2993742 (E.D. Mich. July 3, 2014) ("*Auto.*

14  *Parts*"), the court expressly relied on the fact that the car parts at issue remained distinct and

15  distinguishable components of the end products (automobiles) in determining that indirect

16  purchasers (car dealers and end purchasers) had adequately alleged Article III standing to assert

17  antitrust claims.  As the court ruled, "Fuel Senders are identifiable, discrete physical products that

18  remain essentially unchanged when incorporated into a vehicle.  As a result, Fuel Senders follow

19  a traceable physical chain of distribution from the Defendant to Plaintiffs and the members of the

20  Classes."  *Id.* at *8, *13 (noting that to allege III standing, an indirect purchaser must adequately

21  allege that "some or all of the overcharge was passed on to them through each of the various

22  intermediate levels of the distribution chain").

23       Analogously, courts have heavily emphasized physical traceability of components in

24  determining whether plaintiffs have adequately pleaded the injury and causal connection requisite

25  for antitrust standing.  *See, e.g., TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109,

26  1123 (N.D. Cal. 2008) (relying on plaintiffs' allegations that TFT-LCD panels were "identifiable,

27  discrete physical objects that do not change form or become an indistinguishable part of the TVs,

28  computer monitors, laptops, or other products in which they are contained," and "[t]hus LCD

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

panels follow a traceable physical chain from the defendants to the OEMs to the purchasers of the finished products incorporating LCD panels"); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) ("*GPU II*") (relying on plaintiffs' allegation that GPU "is a separately-invoiced component of a finished computer, and is severable from the computer itself").  Plaintiffs' allegations here do not meet the traceability test because TiO2 becomes a completely integrated, indistinguishable part of Architectural Coatings.

## 2. Plaintiffs' Vague, Conclusory Allegations Further Confirm that Their Purported Injuries Are Not Fairly Traceable Through the Various Distribution Chains.

In response to the Court's 9/22/14 Order, Plaintiffs narrowed the scope of the products covered by their claims, and added some new allegations purporting to address the missing causal link between their alleged injury and Defendants' conduct.  In spite of these efforts, Plaintiffs' allegations regarding the structure of the various TiO2 distribution channels and any purported passing on of overcharges remain dispositively vague and conclusory.  Plaintiffs' "market" of "Architectural Coatings" is vast and ill-defined, encompassing thousands of products with many uses and very different formulations.  Although Plaintiffs have confined their claims to "Architectural Coatings," they do not fully address the issues that troubled the Court previously.

The "Architectural Coatings" umbrella encompasses numerous and varied products applied to interior and exterior walls, roofs, floors and other surfaces, ranging from primers, to sealers, to paints, to deck stains, to roof coatings.[1]  These are produced by numerous manufacturers using countless individual formulations.  The products have applications ranging from residential to commercial and industrial, and from protective to decorative.

Notably, although "Architectural Coatings" would encompass thousands of products and formulations, Plaintiffs cite only a single Material Safety Data Sheet for one product, made by one manufacturer, alleging that "[f]or example, 17 percent (by weight) of Sherwin-Williams's SUPERPAINT® Interior Flat Latex Wall Paint is composed of Titanium Dioxide."  SAC ¶ 170.

---

[1] Plaintiffs do not actually define "Architectural Coatings," but cite an ASTM International definition.  SAC ¶ 1, n.1 (citing http://www.astm.org/DIGITAL_LIBRARY/MNL/ PAGES/ MNL12240M.htm).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

However, there are dozens of Architectural Coatings manufactured by Sherman-Williams alone, with greatly varying concentrations of TiO2.  For example, the Sherman-Williams website incorporated by reference into the SAC also contains a Material Safety Data Sheet for a "Multipurpose Interior/Exterior Latex Primer, Deep Base" that is only 3 percent TiO2 by weight.  *See* http://www.sherwin-williams.com/document/MSDS/en/035777101292/.  Plaintiffs' allegations also highlight that the percentage of *production costs* accounted for by TiO2 costs vary significantly depending on the product.  *See* SAC ¶ 173 ("Raw materials like Titanium Dioxide account for 7 to 13 percent of the cost of Architectural Coating production. . . .").  With so much variation in the formulations, uses, and cost components of Architectural Coatings, it will be impossible to trace any purported effects of overcharges, or to demonstrate how and to what extent such overcharges are passed down the distribution chains.

Not only are those allegations insufficient, but they actually demonstrate that any purported overcharges could not be "fairly traceable."  Plaintiffs themselves acknowledge that the distribution chains at issue could involve at least one, two, or three levels of indirect purchasers.  SAC ¶ 171, n.5.  Yet Plaintiffs offer only the sparsest allegations regarding how costs are passed through to the next entity in the chain of distribution, be it the distributer, retailer, or consumer.[2]

Exacerbating the inadequacies of the allegations about traceability through the *beginning* of the relevant distribution chains, Plaintiffs are silent as to how any overcharge would be passed on from that point to the ultimate consumer, let alone how it could be traced and quantified.  Thus, even if Plaintiffs had set forth allegations sufficient to establish Article III standing for those in the Merchant Class—which they have not—the complete lack of allegations regarding

---

[2] Plaintiffs' conclusory allegation that through regression analysis "it is *possible* to isolate and identify only the impact of an increase in the price of Titanium Dioxide on prices for products containing the chemical even though such products contain a number of other components whose prices may be changing over time" is no substitute for their obligation to plead plausible facts supporting the ability to reliably trace damages.  *See* SAC ¶ 177.  Those are precisely the kinds of unsupported allegations that the Supreme Court has directed courts to ignore.  *See Atl. Bell Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Regression analysis is simply an economic tool, and Plaintiffs have not alleged underlying facts regarding Architectural Coatings demonstrating that regression analysis could be successfully used in this case to trace the purported overcharges through the various distribution chains.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

consumers dooms the putative Consumer Class from the outset.  Plaintiffs have not posited any basis from which the Court could find Article III standing as to consumer Plaintiffs.

Further complicating matters, Plaintiffs acknowledge Defendants' worldwide operations and the existence of other TiO2 producers.  SAC ¶¶ 45-50, 80.  Yet they offer no allegations regarding where the TiO2 in the products they purchased was manufactured and sold, whether it was even manufactured by one of the Defendants, or how one could ever tell.

Even simple examples illustrate the difficulty of tracing any alleged overcharges.  In one possible scenario, a paint manufacturer purchases TiO2, incorporates it into a can of paint, and sells the paint to a distributor.  Then, the paint is sold to a retailer, who in turn sells it to a contractor.  The contractor uses the paint in remodeling a residence.  Not only would Plaintiffs need to account for whether, and to what extent, any purported overcharge was passed through the distribution channels to the contractor, they would have to account for the contract between the contractor and homeowner, and whether and to what extent any overcharge was passed to that individual.  Change any one of these variables by adding a subcontractor or removing the distributor, and then multiply by the large number of manufacturers and "Merchants," the thousands of Architectural Coatings, multitude of end uses, different situations and price sensitivities of end users, and it becomes clear that the task is impossible.

In short, Plaintiffs' allegations regarding the causal connection between their purported injury and any challenged conduct by Defendants are woefully deficient and undermined by the reality of the marketplace.  As a result, the SAC is insufficient to establish Article III standing.

**B.      Plaintiffs Also Fail to Plead Facts Showing They Have Antitrust Standing.**

The insufficiency of Plaintiffs' allegations regarding traceability—and the practical realities that undermine their ability to establish it—also demonstrate that Plaintiffs lack antitrust standing.  Even under the framework of Plaintiffs' new "Architectural Coatings" market, their alleged injuries as indirect purchasers remain too remote and attenuated from Defendants' alleged conduct to constitute a sufficient causal link to establish antitrust standing.

The Supreme Court in *AGC* identified several factors for courts to consider in determining antitrust standing:  (1) the causal connection between the antitrust violation and alleged harm to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1   the plaintiff; (2) the nature of the alleged injury; (3) whether the alleged damages are speculative;

2   and (4) the risk of duplicate recoveries or complex apportionment of damages.  *See AGC*, 459

3   U.S. at 537-45.  As this Court previously found, even though the *AGC* factors arose in the context

4   of federal antitrust claims, it is appropriate to apply them to state antitrust claims, particularly

5   where the state legislature or court has indicated that federal law should be followed in construing

6   the state statute.  9/22/14 Order at 10:7-10.

7          As set forth in Exhibit A, in at least 11 of the jurisdictions at issue, the state legislature or

8   state courts have clearly indicated that federal law applies in construing their repealer statutes.

9   Courts in eight jurisdictions have expressly adopted the *AGC* analysis, while state courts in four

10  others look to federal law to interpret their antitrust statutes.[3]  Federal courts have concluded that

11  courts Kansas, Mississippi, and Tennessee would also look to federal law.  Ex. A.

12         Although Minnesota and North Carolina use a different analysis to assess indirect

13  purchaser standing, even those jurisdictions require plaintiffs who purchase component-based

14  products to plead a sufficient, plausible causal connection between the alleged overcharge on the

15  component and the alleged overcharge paid for the product incorporating the component—an

16  analysis that is indistinct from *AGC*'s causal connection factor.[4]  Thus, it is appropriate to apply

17  the *AGC* factors to both Plaintiffs' federal and state law antitrust claims.  Analysis of these factors

18  confirms that Plaintiffs do not have antitrust standing.

19         **The causal connection between the antitrust violation and alleged harm to the**

20  **plaintiff:**  As set forth above, the "link" between Plaintiffs' alleged injuries and Defendants'

21  alleged antitrust violations remains highly attenuated.  Under *AGC*, the type of "vaguely defined

22         [3] State courts apply the *AGC* factors in determining antitrust standing in Arizona, the
   District of Columbia, Iowa, Michigan, Nebraska, New Mexico, New York, and Wisconsin.  Ex.
23   A.  The states invoked by Plaintiffs that look to federal law when interpreting state antitrust
   statutes are California, Mississippi, New Hampshire, and Oregon.

24         [4] *See Teague v. Bayer AG*, 671 S.E.2d 550, 557-58 (N.C. Ct. App. 2009) (declining to
25   adopt *AGC* analysis, but finding antitrust standing only because plaintiffs alleged that price-fixed
   product was a "significant component part" (80-85%) of a product purchased); *Lorix v. Crompton*
26   *Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) (declining to adopt *AGC* factors, but recognizing that
   there are "prudential limits [to antitrust standing under Minnesota law] informed by
27   foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the
   antitrust law").

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

links" in the chain of causation that Plaintiffs offer here are insufficient to establish the required directness of injury.  *See AGC*, 459 U.S. at 540.

As this Court recognized in ruling on Defendants' first motion to dismiss, indirect purchasers face significant problems with remoteness when asserting claims based on purchases of products for which the allegedly price-fixed product is a mere component.  9/22/14 Order (citing *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1091-92 (N.D. Cal. 2007) ("*DRAM I*")).  The problems presented by traditional component cases are exacerbated here.  Specifically:  (1) Unlike the computer chips in *DRAM I*, which can be physically identified in and discerned from the products in which they are incorporated, TiO2 is an inorganic pigment that is incorporated in products in ways that are not discernible; (2) Plaintiffs' alleged claims encompass thousands of products within Architectural Coatings with vastly different formulations and concentrations of TiO2; (3) Plaintiffs fail to allege any facts establishing that they can demonstrate the causal connection between their purported injury and Defendants' actions by tracing them through the many relevant distribution chains; and (4) Plaintiffs' conclusory allegations that they can trace how and to what extent costs were passed on should be ignored as lacking basis in factual allegations.  *See Twombly,* 550 U.S. at 555.

Thus, Plaintiffs' attempt to narrow the scope of products covered by their claims was without effect.  The fact remains that their "allegations are insufficient given the absence of any facts indicating how the alleged overcharges for titanium dioxide could be traced through the hundreds or perhaps thousands of distribution chains implicated."  *See 9/22/14 Order at 14:1-3.* This complete lack of a traceable causal connection alone precludes standing and requires dismissal of Plaintiffs' antitrust claims.  *See, e.g.*, *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) (dismissing indirect purchaser claims for lack of antitrust standing where plaintiffs' injury would require "trac[ing] through three levels of the supply chain" and "disaggregat[ion] from a multitude of other manufacturing and component factors").

**The nature of the alleged injury:**  Further underscoring Plaintiffs' lack of antitrust standing is that they do not participate in the relevant market—the market for TiO2.  To establish antitrust injury, a plaintiff must participate in the relevant market in which the alleged antitrust

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1    violation took place.  *See AGC*, 459 U.S. at 538-39; *DRAM I*, 516 F. Supp. 2d at 1090.  Here, the

2    SAC suffers from the same flaws that previously persuaded the Court that Plaintiffs did not

3    participate in the TiO2 market, and that their purported injury did not establish antitrust standing.

4         This Court's 9/22/14 Order cited the injury analyses of both *DRAM I* and *Flat Panel* and

5    concluded that the FAC's allegations failed under either framework.  In *DRAM I*, as here,

6    plaintiffs alleged they were retailer and consumer indirect purchasers who purchased DRAM as a

7    component in computers and other electronics.  *DRAM I*, 516 F. Supp. 2d at 1090.  The court

8    determined that these indirect purchasers could not establish antitrust standing because "plaintiffs

9    who are purchasing products in which DRAM is a component, rather than DRAM itself, are

10   participating in a *secondary market that is incidental to the primary price-fixed market* (i.e., the

11   market for DRAM modules themselves)."  *Id.* at 1090-91 (emphasis added) (citations omitted).[5]

12        As in *DRAM I*, Plaintiffs do not allege that they purchased the relevant product, TiO2—

13   only that they purchased Architectural Coatings in which TiO2 is a component.  Moreover,

14   despite Plaintiffs' attempt to limit the relevant product market, "Architectural Coatings" still

15   encompasses thousands of products, formulations and distribution channels, resulting in at best a

16   tangential relationship between Plaintiffs' purchases and the TiO2 market.  As the Court has

17   ruled, "A market that includes such a broad array of products cannot be considered the same

18   market as the allegedly restrained market for titanium dioxide itself."  9/22/14 Order at 12.  Nor

19   can such a broad market be considered "inextricably linked" with the TiO2 product market.  *Id.*

20        The *Flat Panel* analysis leads to the same conclusion.  There, the court held that even if

21   purchasers of products containing TFT-LCD panels were not part of the TFT-LCD market,[6] the

22

23        [5] Other courts similarly have dismissed, for lack of antitrust standing, cases involving
     purchases of products containing allegedly priced-fixed components.  *See, e.g., In re Potash
     Antitrust Litig.*, 667 F. Supp. 2d 907, 915, 939-40 (N.D. Ill. 2009) ("*Potash*") (holding that
24   indirect purchasers who purchased products that allegedly contained potash "failed to show they
     are participants in the relevant market, and, as a result, have not satisfied the antitrust injury
25   requirement"), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium Inc.*, 657
     F.3d 650 (7th Cir. 2011), *aff'd Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).

26        [6] In *Flat Panel*, the court concluded there were issues as to whether the purchasers
27   participated in the LCD panel market based on plaintiffs' allegations that the LCD panel market
     existed exclusively to serve the "LCD Products" market, and that the LCD panels had no utility
     except as components of the LCD Products.  *Id.* at 1123.  This Court has already rejected this
28   (Continued…)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1   nature of the alleged industry nonetheless favored antitrust standing because the LCD panels were

2   "identifiable, discrete physical objects that do not change form or become an indistinguishable

3   part of the . . . products in which they are contained," and thus "follow a traceable physical chain

4   from the defendants to the OEMs to the purchasers of the finished products." *See Flat Panel*, 586

5   F. Supp. 2d at 1123.  Plaintiffs here, however, have no such allegations available to remedy the

6   fact that they are not in the TiO2 market.  As this Court previously recognized, TiO2 "become[s]

7   an indistinguishable part of the finished consumer product" and allegations that it can be traced

8   through the distribution chain are "implausible." *See* 9/22/14 Order at 12-13.  Because Plaintiffs

9   do not allege that they are participants in the TiO2 market and do not plead any facts suggesting

10  that their alleged injuries are inextricably intertwined with those of actual TiO2 market

11  participants, this factor further tilts the scale toward a lack of antitrust standing.

12        **Whether the alleged damages are speculative:**  Plaintiffs' alleged damages are also

13  entirely speculative, even with a slightly-narrowed product market.  Because of the many and

14  varied factors that could have influenced the prices Plaintiffs paid for their end-use products, it

15  would be nearly impossible to establish that any of the Defendants' alleged conduct actually

16  affected those prices.  *DRAM I*, 516 F. Supp. 2d at 1092-93.[7]  That is particularly true because

17  TiO2 is merely one of dozens of components used in creating the products allegedly purchased by

18  Plaintiffs.  Factors such as the distribution of alleged overcharges throughout the distribution

19  chain, the costs of all of other components, and whether those prices were artificially high, would

20  make any assessment of damages due solely to Defendants' conduct, if any, purely speculative.

21  *Id.*; *see also Bodie-Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287, 292 (6th Cir. 1992) ("[I]ndirect

22  injuries may render damages highly speculative or create situations of complexity that would

23  foreclose an equitable determination and apportionment of damages." (quoting *Southaven Land*

24  _____

25  argument in the context of a broadly-defined market where products contained widely-varying
    concentrations of TiO2.  9/22/14 Order, at 12.

26       [7] As set forth above in relation to Plaintiffs' lack of Article III standing, Plaintiffs'
    assertion that through regression analysis it is "possible" to isolate and identify only the impact of

27  an increase in the price of TiO2 on end products is no substitute for their obligation to plead
    plausible facts supporting the ability to reliably trace damages.  *See Twombly*, 550 U.S. at 570.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1 | *Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1087 (6th Cir. 1983))).

2 |   **The risk of duplicative discovery or complex apportionment of damages:** Further

3 | compounding the speculative nature of Plaintiffs' damages is the fact that they would be

4 | extremely difficult to apportion, particularly as between the Merchant and Consumer Classes.

5 | Calculation of damages in indirect purchaser suits is notoriously unwieldy and speculative given

6 | that the alleged overcharges have to be traced through all of the manufacturing, distribution, and

7 | retail channels. *See AGC*, 459 U.S. at 545 n.51 ("[T]he task of disentangling overlapping

8 | damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial

9 | system." (internal quotations and citation omitted)); *DRAM I*, 516 F. Supp. 2d at 1092. Here, in

10 | particular, these calculations would require analysis of a multitude of factors, including different

11 | formulations, different manufacturers, geographic effects, costs of other components, demand

12 | factors for a variety of products purchased by the proposed classes, and the uniformity of the

13 | overcharge at each stage. The complex nature of the damages calculations is entirely inconsistent

14 | with antitrust standing under *AGC*. Plaintiffs offer no factual basis to conclude otherwise.

15 |   Consider the ramifications of Plaintiffs' argument and just how complicated

16 | apportionment of damages would be in this case. How does a middle man distributor change the

17 | apportionment of damages? What if the product is purchased by a contractor (a common

18 | scenario), and payment by the homeowner depends on the unique contract between the contractor

19 | and homeowner (or even between contractor and subcontractor)? Thus, <u>each</u> of the five *AGC*

20 | factors leans strongly toward a finding that Plaintiffs lack antitrust standing.

21 |   **C.**   **Plaintiffs Lack Standing to Pursue Injunctive and Equitable Relief.**

22 |   Plaintiffs' claim for injunctive and equitable relief under the Sherman Act fails for the

23 | same reasons. When analyzing whether Plaintiffs have standing to pursue a claim for injunctive

24 | relief, "the *AGC* analysis remains 'effectively the same'" other than issues of damages. *In re*

25 | *Plasma-Derivative Protein Therapies Antitrust Litig.* ("*Protein Therapies*"), MDL 2109, 2012

26 | WL 39766, at *9 (N.D. Ill. Jan. 9, 2012) (quoting *Sw. Suburban Bd. of Realtors, Inc. v. Beverly*

27 | *Area Planning Ass'n*, 830 F.2d 1374, 1377-78 (7th Cir. 1987)); *Potash*, 667 F. Supp. 2d at 941

28 | ("Consideration of the *AGC* factors leads this Court to find that Indirect Purchaser Plaintiffs do

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

not have antitrust standing to pursue injunctive relief against Defendants."). Since Plaintiffs' claim for injunctive and equitable relief relies on the same allegations as its state antitrust claims and thus suffers the same defects, that claim should be dismissed. *See Protein Therapies*, 2012 WL 39766, at *9; *Potash*, 667 F. Supp. 2d at 941.

## II.    PLAINTIFFS' CONSUMER PROTECTION CLAIMS SHOULD BE DISMISSED.

In addition to Plaintiffs' lack of standing, their state consumer protection claims fail for a number of other reasons.

### A.    Consumer Protection Claims Cannot Be Brought as Class Actions Under South Carolina Law.

South Carolina expressly bars consumer class action claims. S.C. Code Ann. § 39-5-140(a); *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009). Contrary to Plaintiffs' arguments in opposition to Defendants' first motion to dismiss, nothing in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), affects the force of this bar. Under Justice Stevens' controlling approach,[8] "[w]hen a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring). To do so, courts consider whether the limiting provision of state law is "within the text of a state statute that confers a substantive right and applies only to cases brought under the statute." *Lisk v. Lumber One Wood Preserving, LLC*, 993 F. Supp. 2d 1376, 1383-84 (N.D. Ala. 2014). If so, the limiting provision survives.

The South Carolina "prohibitions against class actions [are] ingrained in the very text of the SCUTPA and . . . are substantive portions of South Carolina law." *Stalvey*, 2013 WL 6019320, at *4. This restriction applies only to SCUTPA claims and "is incorporated in the same provision—and in fact in the same sentence—as that which grants the right." *In re Trilegiant*

---

[8] "A majority of the courts considering the impact of [*Shady Grove*] have concluded that Justice Stevens' opinion is controlling in view of the 'narrowest grounds' principle." *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-cv-714, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013); *e.g.*, *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011); *Davenport v. Charter Commc'ns, LLC*, -- F. Supp. 2d --, No. 4:12CV00007 AGF, 2014 WL 3818377, at*6 (E.D. Mo. Aug. 4, 2014) (collecting cases).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

*Corp., Inc.*, 11 F. Supp. 3d 82, 118 (D. Conn. 2014); S.C. Code Ann. § 39-5-140(a). Applying Justice Stevens' approach, courts in South Carolina and elsewhere routinely dismiss South Carolina consumer class claims.[9] This Court should too.

**B.     Plaintiffs Lack Standing to Assert Claims Under Arkansas, New York, and Other Consumer Protection Statutes Because Their Claims Are Too Remote.**

In ruling on Defendants' first motion to dismiss, the Court found that all of the relevant claims under state consumer protection statutes (including Arkansas' and New York's) "fail because, as presently framed, the complaint does not allege facts sufficient to show that the alleged unfair or deceptive price-fixing actually caused Plaintiffs['] injury." 9/22/14 Order at 15 n.11. Even as amended, as explained above in Section I, Plaintiffs' allegations are insufficient for antitrust standing because their alleged injuries are too remote under the *AGC* factors. Arkansas and New York have recognized that the *AGC* factors apply with equal force to antitrust claims that are recast as consumer protection claims. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1142 (N.D. Cal. 2008) (dismissing consumer protection claims under New York law pursuant to *AGC*) ("*DRAM II*"); *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 888-89 (E.D. Ark. 2008) (noting that "Arkansas law recognizes the remoteness doctrine" and finding plaintiffs' injuries too remote). Plaintiffs assert the same injury for their antitrust and consumer protection claims and rely on the same allegations for both; just as the former fail for being too remote, so must the latter.[10]

---

    [9] *E.g.*, *In re Auto. Parts Antitrust Litig.*, -- F. Supp. 2d --, No. 12-MD-02311, 2014 WL 2993742, at *24-25 (E.D. Mich. July 3, 2014); *Stalvey*, 2013 WL 6019320, at *4; *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, MDL No. 2333, 2012 WL 5408563, at *5 & n.3 (D.S.C. Nov. 6, 2012). Even the few courts to have incorrectly found otherwise recognize that, if Justice Stevens' approach is applied, the South Carolina ban would survive *Shady Grove*. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652 (S.D. Cal. 2014).

    [10] States that have not directly applied *AGC* in the consumer-protection context nonetheless impose causation requirements that Plaintiffs do not meet here. *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (dismissing indirect purchaser claim under Florida law for plaintiffs' failure to "adequately allege Defendants' conduct caused them harm"); *Valikhani v. Qualcomm Inc.*, No. 08CV786 WQH JMA, 2009 WL 539915, at *7-8 (S.D. Cal. Mar. 3, 2009) (dismissing indirect purchaser claim under California law on causation grounds, including failure to allege reliance); *Pope v. TT of Lake Norman, LLC*, 505 F. Supp. 2d 309, 313 (W.D.N.C. 2007) (dismissing North Carolina claim for failure to show proximate cause); *see also Gorbey ex rel. Maddox v. Am. Journal of Obstetrics & Gynecology*, (Continued…)

**C.**     **Plaintiffs' New York Consumer Protection Claims Must Be Dismissed Because Plaintiffs Do Not Allege "Consumer-Oriented" Conduct.**

As highlighted in connection with the first motion to dismiss, Plaintiffs' New York consumer protection law claim fails because that statute covers only "consumer-oriented" conduct. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). "[W]hen the alleged deceptive act occurs in a transaction between two companies, even when the result of the deception impacts on a consumer, it is not actionable." *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 552 (E.D. Pa. 2007); *id.* at 553 (finding "alleged illegal agreement between the paint manufacturers, which was directed at prices charged to distributors and then passed along to body shops like Plaintiff, was a transaction between corporations and not consumers"—and thus "clearly not consumer-oriented"); *see also Sperry v. Crompton Corp.*, No. 17872/2002, slip op. at 4 (N.Y. Sup. Ct. Nov. 20, 2003), *aff'd* 26 A.D.3d 488 (N.Y. App. Div. 2006) (attached as Ex. B) (dismissing claim of party that purchased auto tires from a manufacturer based on allegations that rubber-processing companies had fixed chemical prices charged to manufacturers on grounds that the alleged price-fixing "concerned private business transactions between corporations" and the rubber-processing companies "did not have any contact with the plaintiff or the purported class"); *see also Weiss v. Polymer Plastics Corp.*, 21 A.D.3d 1095, 1097 (N.Y. App. Div. 2005). Plaintiffs' allegation that Defendants fixed prices charged to direct purchasers—identical to those dismissed in *Auto. Refinishing* and *Sperry*—fails under New York law because it is not "consumer-oriented."[11]

Further, the Merchant Plaintiffs (and Merchant Class) cannot assert a consumer-protection claim because they are not consumers, and because they allege price-fixing of TiO2, a non-

---

849 F. Supp. 2d 162, 165 (D. Mass. 2012) (causation element necessary under Massachusetts consumer protection law); *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008) (same, for Missouri); S.C. Code Ann. § 39-5-140 (setting forth causation element for South Carolina); N.M. Stat. Ann. § 57-12-10 (same, for New Mexico).

[11] The few courts to allow such claims have not taken into account the on-point decisions of New York courts. For instance, *DRAM II* found it significant that the cases cited in support of dismissal were decided on summary judgment and were not class actions. 536 F. Supp. 2d at 1144. But *Sperry* was a putative class action decided on a motion to dismiss. Ex. B at 1.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

DCACTIVE-29741459.4

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

1   consumer product.  SAC ¶ 59; *Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 290 (N.Y. App. Div.

2   2000) (defining "consumer").  Under these circumstances, New York courts do not permit

3   consumer-protection claims.[12]  *See, e.g.*, *Mid Island LP v. Hess. Corp.*, No. 650911/2013, 2013

4   WL 6421281, at *5 (N.Y. Sup. Ct. Dec. 2, 2013) (dismissing claim of putative class of apartment-

5   building owners against a fuel distributor because the goods in question were "not consumer

6   products [and instead] . . . used to fuel the boilers of large buildings, and [were] procured by

7   businesses," and "never bought for 'personal, family or household purposes'").

8       D.      **The Merchant Classes' Claims Under Missouri Law Must Be Dismissed
                Because Merchant Plaintiffs Do Not Allege Purchases Made for Personal Use.**
9

10      Similarly, Missouri's Merchandising Practices Act ("MMPA") creates a cause of action

11  only for those who purchase goods "primarily for personal, family or household purposes."  Mo.

12  Ann. Stat. § 407.025; *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013).  Recognizing

13  this limitation, this Court and others have dismissed MMPA claims brought by business entities.

14  *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *12 (N.D. Cal. Sept.

15  1, 2010); *see also Auto. Parts*, 2014 WL 2993742, at *24; *Hunters Friend Resort, Inc. v. Branson

16  Tourism Ctr., L.L.C.*, No. 09-3114-CCV-S-ODS, 2009 WL 2450281, at *3 (W.D. Mo. Aug. 10,

17  2009).  Because the Merchant Plaintiffs purchased goods for resale and not personal use, SAC ¶

18  59, their claim under Missouri law must be dismissed with prejudice.

19      E.      **Plaintiffs Fail to Plead Fraud or Deceitful Conduct as Required in Arkansas,
                California, the District of Columbia, Florida, Missouri, and New York.**
20

21      Plaintiffs' consumer protection claims in Arkansas, the District of Columbia, Florida,

22  Missouri, and New York fail because Plaintiffs do not sufficiently allege fraud or deceit.

23  Plaintiffs assert that Defendants "omitted to disclose material facts to Plaintiffs" about their

24  activities, and "actively hid the existence of the GSP from the public."  SAC ¶¶ 243(d), 204,

25

26  ───────────────

27      [12] If any portion of the New York claim is allowed to proceed, Plaintiffs cannot seek "all
    relief available" and must expressly waive their claim to treble damages.  *See Leider v. Ralfe*, 387
    F. Supp. 2d 283, 293 (S.D.N.Y. 2005).

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

205.[13]  But whether judged against the heightened pleading standard required by California, the District of Columbia, and Florida,[14] or basic pleading standards, these allegations are insufficient because Plaintiffs have not alleged any deceptive conduct apart from the purported failure to disclose the conspiracy.[15]  *See, e.g.*, *GPU II*, 540 F. Supp. 2d at 1100-01 (dismissing Arkansas and District of Columbia consumer-protection claims for failure to plead a deceptive practice apart from the anticompetitive conduct itself); *Auto. Refinishing*, 515 F. Supp. 2d at 555 (under New York Law, "mere anticompetitive conduct alone does not constitute deceptive conduct . . . [and thus] the Complaint must allege some additional deception or misrepresentation").[16]

Nor do allegations that Defendants gave false justifications for price increases suffice. *E.g.*, SAC ¶¶ 195-96, 205(e).  In *In re Egg Products Antitrust Litigation*, the plaintiffs alleged the defendants concealed the "the antitrust conspiracy . . . through pretextual explanations for rising egg prices [which] actually caused the Plaintiffs' alleged injury."  851 F. Supp. 2d 867, 908 (E.D. Pa. 2012).  But the court dismissed the New York claim because the alleged price-fixing—not pretextual statements—caused the claimed harm.  *Id.* at 909.  Here, as Plaintiffs' allegations do "not plausibly suggest that the purported pretextual explanations . . . are the actual cause of [their] alleged harm," *id.*, the specificity of the alleged pretextual statements is immaterial.[17]  Linking the

---

[13] *See, e.g.*, *In re Magnesium Oxide Antitrust Litig.*, No. CIV. 10-5943 DRD, 2011 WL 5008090, at *26 (D.N.J. Oct. 20, 2011) (dismissing Florida consumer protection claim where Plaintiffs alleged only that "Defendants deliberately failed to disclose material facts . . . concerning Defendants' unlawful activities and artificially inflated prices").

[14] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying heightened pleading standard to California consumer protection law); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (same, for Florida); *Witherspoon v. v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C. 1997) (same, for the District of Columbia).

[15] *See Auto. Refinishing*, 515 F. Supp. 2d at 555 (dismissing New York consumer protection claims for failure to plead a separate deceptive practice); *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 178, 190-91, 197 (D. Me. 2004) (holding that failure to disclose conspiracy was not false or deceptive act under Arkansas, Missouri, and New York consumer protection law, among others).

[16] The requirement to plead a separate act of deception is necessary: "If failure to disclose participation in a purported antitrust conspiracy were sufficient to state a consumer-protection claim, then *any* Section 1 antitrust case would automatically become a consumer- protection case." *New Motor Vehicles*, 350 F. Supp. 2d at 196 n.22 (internal quotations omitted).

[17] *See In re Aftermarket Filters Antitrust Litig.*, No.08-C-4883, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009) (dismissing New York claim in part for failure to allege that "any plaintiff saw, heard or relied on the [pretextual] statement[s] in making a decision to purchase").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-17-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1  allegedly deceptive act to an ascertainable harm is a fundamental element of consumer protection

2  law.[18] Plaintiffs' failure to do so dooms their claims under statutes requiring fraud or deceit.

3  **F.    Arkansas Consumer Protection Law Does Not Permit Price-Fixing Claims.**

4         Courts in this district have repeatedly dismissed price-fixing allegations raised under

5  Arkansas consumer protection law. *Flat Panel*, 586 F. Supp. 2d at 1125; *In re TFT-LCD (Flat*

6  *Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011); *In re Static Random Access*

7  *Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094289, at *8 (N.D. Cal.

8  Dec. 8, 2010); *see In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-

9  30 (N.D. Cal. 2007). Neither the Arkansas Supreme Court nor any Arkansas intermediate court

10 has ever permitted a price-fixing claim under Arkansas consumer protection law.[19] Nor is there

11 any reason to employ an expansive reading of the statute. The ADTPA prohibits

12 "unconscionable" and "deceptive" acts; it does not prohibit "unfair competition"—which is

13 "significantly broader" language that might encompass price-fixing. *See In re Digital Music*

14 *Antitrust Litig.*, 812 F. Supp. 2d 390, 410 (S.D.N.Y. 2011) ("*Digital Music*"). Moreover,

15 Arkansas already provides a specific remedy under antitrust law for indirect purchasers seeking

16 monetary damages: suit by the state Attorney General. *See* Ark. Code Ann. § 4-75-315(b).

17 Plaintiffs, in bringing a private civil action for price-fixing, seek to use state consumer-protection

18 law to accomplish what state antitrust law forbids. Courts that have allowed indirect purchasers

19 to end-run these restrictions have not adequately considered Arkansas' statutory framework and

20 the policy choices of its legislature.

21

22

23

24         [18] *See Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW-MAN, 2013 WL 3148923, at
   *4 n.7 (C.D. Cal. June 13, 2013) (noting causation requirements under California, New York, and
25 Missouri consumer protection law, among others); *Martinelli v. Petland, Inc.*, No. CV-09-529-
   PHX-DGCI, 2010 WL 376921, at *9 (D. Ariz. Jan. 26, 2010) (same for Florida, among others).

26         [19] This district—years after the issuance of the single unpublished trial court opinion
   Plaintiffs previously cited (Opp. 16, ECF No. 76)—correctly concluded that there was insufficient
27 support to indicate that the Arkansas Supreme Court would permit price-fixing claims. *Flat
   Panel*, 787 F. Supp. 2d at 1042.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

## III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

### A.   Plaintiffs Cannot Bring Unjust Enrichment Claims Where State Antitrust or Consumer Protection Claims Fail.

The failure of Plaintiffs' antitrust and consumer protection claims dooms their unjust enrichment claims as well—in both the jurisdictions where unjust enrichment is only a theory of recovery[20] and those where it is an independent cause of action.  In the former, unjust enrichment fails for the same reasons the underlying claims do.  *E.g.*, *Digital Music*, 812 F. Supp. 2d at 413 (dismissing "parasitic" unjust enrichment claims premised on dismissed claims).  In the latter, allowing unjust enrichment claims based on the same underlying conduct as failed consumer protection or antitrust claims "would undermine state legislative policies and an entire body of substantive law."  *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 542, 542 n.13 (E.D. Pa. 2010); *see also Digital Music*, 812 F. Supp. at 412 (same).  A state's antitrust and consumer protection laws—and their limits—reflect its public policy choices.  *HyPoint Tech., Inc. v. Hewlett-Packard Co.*, 949 F.2d 874, 877 (6th Cir. 1992).  Plaintiffs who cannot satisfy their provisions may not circumvent them by bringing unjust enrichment claims.

### B.   The Unjust Enrichment Claims Fail Due to Deficiencies Under State Law.

While unjust enrichment claims vary in the 21 jurisdictions under which Plaintiffs bring their claims, there are several common elements that Plaintiffs do not—and cannot—allege.[21]

---

[20] *E.g., Hill v. Roll Int'l. Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *Gen. Insulation Co. v. Eckman Const.*, 159 N.H. 601, 611, 992 A.2d 613, 621 (N.H. 2010) ("unjust enrichment generally does not form an independent basis for a cause of action"); *Shepard v. DineEquity, Inc.*, CIV. A. 08-2416-KHV, 2009 WL 8518288, at *11 n.14 (D. Kan. Sept. 25, 2009) ("[U]njust enrichment is not an independent cause of action" in Kansas law); *De Giovanni v. Jani-King Intern., Inc.*, 262 F.R.D. 71, 84 (D. Mass. 2009) (unjust enrichment a theory of recovery, not a cause of action in Massachusetts law).

[21] The recent opinion in *In re Automotive Parts Antitrust Litigation* acknowledges that "the particular elements of unjust enrichment vary from jurisdiction to jurisdiction."  Nos. 12-md-02311, 2014 WL 2999269, at *26 (E.D. Mich. Jul. 3, 2014).  Nevertheless, the court denied dismissal of certain indirect purchasers' unjust enrichment claims because the state case law submitted to the court addressed differently situated parties; namely, cases between contracting parties.  But the court cites no authority for its selective application of the state law elements for unjust enrichment.  Defendants are unaware of authority that instructs federal courts to alter the application of state law—ignoring carefully considered limits built into that state law—merely because the claims at hand arise in the context of an indirect purchasers' price fixing case.  It is (Continued…)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-19-

*First*, the claims fail in the 18 jurisdictions[22] that reject unjust enrichment claims by any plaintiff who received the product he expected at the price he agreed to pay, that is, received the "benefit of the bargain." *E.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 210 (D. Me. 2004); *Digital Music*, 812 F. Supp. 2d at 411.  This exclusion applies even when plaintiff entered the bargain with a third party rather than defendant.[23]  As the Complaint makes clear, Plaintiffs received products containing TiO2, at prices they agreed to pay, and do not allege they sought to rescind the purchases or did not receive the benefit of their bargains.  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 421 (D. Del. 2007) (rejecting unjust enrichment claims by indirect purchasers who "paid the purchase price for … and received their computers[,]" and neither "sought to rescind their purchases" nor "alleged that they did not receive the benefit of their bargain").

*Second*, Plaintiffs' claims fail in the eight jurisdictions[24] where plaintiffs cannot recover for unjust enrichment if defendant provided any consideration for the benefits it received.  *E.g.*, *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966) (If defendant "has given any consideration to any person for the [benefit], it would not be unjust for him to retain the benefit without paying the furnisher.")  While the court in *In re Automotive Parts Antitrust Litigation*, -- F. Supp. 3d --, Nos. 12-md-02311, 2014 WL 4793848, *20 (E.D. Mich. Sept. 25, 2014), rejected similar arguments because the defendants there cited case law arising in the context of contractor-

---

not the province of the federal courts to narrow or expand underlying state law.  *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("it is the duty of [federal courts] in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts").

[22] Arkansas, Arizona, California, District of Columbia, Florida, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, Oregon, and South Carolina.  *See* Ex. C.

[23] *E.g., Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007); *Howard v. Turnbull*, 316 S.W.3d 431, 438 (Mo. Ct. App. 2010); *High v. Davis*, 584 P.2d 725, 736 (Or. 1978) (en banc); *Winters v. Cnty. of Clatsop*, 150 P.3d 1104, 1108 (Or. Ct. App. 2007).

[24] Arizona, Florida, Kansas, Massachusetts, Missouri, New Hampshire, Tennessee, and Wisconsin.  *See* Ex. C.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-20-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

subcontractor relationships, these principles apply equally in all commercial contexts.[25] Plaintiffs' allegations—that Defendants' TiO2 products made their way into downstream products purchased by Plaintiffs—preclude the possibility that Defendants did not provide consideration and thus defeat their unjust enrichment claims in these jurisdictions.

*Third*, the claims fail in the four jurisdictions[26] where a plaintiff must *directly* confer a benefit upon a defendant to sustain an unjust enrichment claim. *E.g.*, *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 273 (10th Cir. 2008) ("[N]othing in Kansas law . . . supports an indirect unjust enrichment claim[.]"). Being "the ultimate end user[]" does not suffice.[27]

*Fourth*, these claims fail in the five jurisdictions[28] that require the absence of a remedy at law. *E.g.*, *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (Massachusetts consumer protection claim is an adequate remedy at law precluding unjust enrichment). Plaintiffs have not pled absence of a legal remedy; indeed, they purport to bring several legal claims based on the same underlying conduct as the unjust enrichment claims. The "mere availability" of these claims at law—whether or not they survive—bars unjust enrichment claims. *See, e.g.*, *id.*

*Finally*, the Complaint fails to state claims for unjust enrichment under South Carolina, California, and New York law. The South Carolina claim fails because the Defendants do not owe any duty to the Plaintiffs. *Pitts v. Jackson Nat'l. Life Ins. Co.*, 574 S.E.2d 502, 511-12 (S.C. Ct. App. 2002) (recognizing no unjust enrichment claims under South Carolina law unless defendant owes plaintiff a legal duty); *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461,

---

[25] *See, e.g., Pereira v. Regions Bank*, 752 F.3d 1354, 1358 n.6 (11th Cir. 2014) (finding that a bank's alleged illegal fee for check cashing was not unjust enrichment as the bank provided a service to the plaintiff); *Am. Safety Ins.*, 959 So. 2d at 331-32 (rejecting unjust enrichment claim where the defendant lender had given adequate consideration for the benefit conferred to a third party developer); *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 757 (Tenn. Ct. App. 2006) (rejecting consumers' unjust enrichment claims because credit card company defendants "paid consideration to the merchants for any benefits received indirectly from the plaintiffs").

[26] Florida, Kansas, Michigan, and North Carolina. *See* Ex. D.

[27] *In re Aftermarket Filters Antitrust Litig.*, No. 08-C-4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) (dismissing indirect purchaser unjust enrichment claims based on direct benefit requirement in Kansas, Michigan, North Carolina laws); *see also Potash Antitrust Litig.*, 667 F. Supp. 2d at 948 (same, for Florida, Kansas, and Michigan).

[28] Arizona, Florida, Massachusetts, Minnesota, and Tennessee. *See* Ex. D.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

465 (D. Md. 2005) (same).  The California claim fails because California does not recognize a

cause of action for unjust enrichment.  While some cases have suggested the existence of such a

cause of action, *e.g.*, *Khasin v. Hershey Co.*, No. 5:12–CV–01862 EJD, 2012 WL 5471153, at *9

(N.D. Cal. Nov. 9, 2012), "the more persuasive approach is that 'restitution based on unjust

enrichment/quasi contract' does not state an independent cause of action that can stand on its

own," *Ang v. Bimbo Bakeries USA, Inc.*, No. 13–cv–01196–WHO, 2013 WL 5407039, at *11

(N.D.Cal. Sept. 25, 2013)—as was recently affirmed by the California Court of Appeals, the

Ninth Circuit, and various federal district courts.[29]  And Plaintiffs' unjust enrichment claims are

simply too attenuated under New York law.  *See Sperry v. Crompton Corp.*, 863 N.E.2d 1012,

1018 (N.Y. 2007) ("the connection between the purchaser of tires and the producers of chemicals

used in the rubber-making process is simply too attenuated to support such a claim").[30]

## IV.   PLAINTIFFS' CLAIMS PRE-DATING MARCH 15, 2009 ARE BARRED BY THE STATUTE OF LIMITATIONS BECAUSE PLAINTIFFS FAIL TO ADEQUATELY PLEAD FRAUDULENT CONCEALMENT.

Plaintiffs' Clayton Act claims and the majority of their claims under state laws are subject

to a four-year statute of limitations period, and the remaining state law claims are subject to

limitations periods ranging from three to six years.  *See* 15 U.S.C. § 15(b); Ex. D (setting forth the

limitations period for each of Plaintiffs' state law claims).[31]  In an attempt to circumvent the

---

[29] *Hill*, 128 Cal. Rptr. 3d 109 at118; *see also Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009).

[30] *See also Fenerjian v. Nongshim Co.*, No. 13-CV-04115-WHO, 2014 WL 5685562, at *22-23 (N.D. Cal. Nov. 4, 2014) (dismissing New York unjust enrichment claim based on the attenuated relationship between the indirect purchaser plaintiffs and the defendants); *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 367 (W.D.N.Y. 2013) ("A relationship is too attenuated where a plaintiff is an indirect purchaser of an item as part of a larger product. …"); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 304 (N.Y. App. Div. 2007) (holding that the relationship between indirect purchasers of food additives and manufacturers of the food additives was too attenuated for an unjust enrichment claim).

[31] An antitrust cause of action accrues and the statute of limitations begins to run when the defendant commits an act that injures a plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971).  The accrual of causes of action follow this approach in all asserted jurisdictions' statutes, except in New Mexico and South Carolina which start the limitations period when the plaintiff discovered, or should have discovered, the cause of action. N.M. STAT. § 57-1-12(B); S.C. CODE 1976, § 39–5–150.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-22-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1    limitations defense Defendants previously raised, Plaintiffs reassert that fraudulent concealment

2    tolled the limitation period.  But as in the FAC, Plaintiffs' current allegations fall far short.

3         Fraudulent concealment requires adequate pleading of facts sufficient to show "that [the

4    defendants] affirmatively misled it, and that [the plaintiffs] had neither actual nor constructive

5    knowledge of the facts giving rise to [their] claim despite [their] diligence in trying to uncover

6    those facts."  *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).  In

7    other words, Plaintiffs must plead both (1) "that the defendant used affirmative fraudulent means

8    to keep the plaintiff unaware of his cause of action"[32] and (2) that plaintiff lacked "actual or

9    constructive knowledge of the facts giving rise to the claim."  *Hexcel Corp. v. Ineos Polymers,*

10   *Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  Plaintiffs alleging fraudulent concealment must also

11   comply with the requirements of Rule 9(b) and state "the circumstances constituting fraud . . .

12   with particularity."  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999)

13   (internal citations omitted); *see also Conmar*, 858 F.2d at 502 ("Conclusory statements are not

14   enough.  [Plaintiff] must plead with particularity the circumstances of the concealment and the

15   facts supporting its due diligence").

16        This Court was "not satisfied" with Plaintiffs' fraudulent concealment allegations in the

17   FAC.  *See* Jul. 10, 2014 Hearing Tr. at 44:23-45:2.  Their meager additional allegations in the

18   SAC fail to show *either* that they lacked actual or constructive knowledge of the acts giving rise

19   to their claim, *or* that Defendants took affirmative steps to conceal their purported conspiracy.

20   Thus, to the extent that Plaintiffs' claims predate the relevant limitation periods, they must be

21   dismissed and the damages class limited to each relevant limitations period.

   A.    **Plaintiffs Fail to Plead Facts Showing that They Lacked Actual or
          Constructive Knowledge.**

24        The SAC fails to plead facts sufficient to demonstrate that Plaintiffs lacked "actual or

25   constructive knowledge of the facts giving rise to the claim."  *Hexcel*, 681 F.3d at 1060.  Instead,

---

[32] All of the relevant states that recognize the tolling of limitations periods by fraudulent concealment similarly require affirmative fraudulent acts of concealment.  *See* Ex. D (setting forth the elements of fraudulent concealment in the relevant states).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-23-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1  Plaintiffs discard their prior allegation that the limitations period began running in July 2010

2  when direct purchasers publicly announced that they were passing along Defendants' price

3  increases to their customers, and instead contend that they did not know, and could not have

4  discovered, their injury prior to August 28, 2012, when a class of TiO2 direct purchasers was

5  certified in *In re Titanium Dioxide Antitrust Litigation*, No. 10-CV-0318 (D. Md. 2010) (the

6  "Direct Purchaser Litigation").  Plaintiffs reason that this class action opinion was the first time

7  "judicial legitimacy" was "conferred" upon the claims.  *Id.* ¶¶ 183-188.  A plaintiff cannot wait

8  until its claims have "judicial legitimacy" conferred upon them to start the limitations clock.

9  Otherwise, the limitations period would never be triggered on any unasserted claims.  *See also Go*

10 *Computer, Inc. v. Microsoft Corp.*, 437 F. Supp. 2d 497, 501 (D. Md. 2006), *aff'd* 508 F.3d 170

11 (4th Cir. 2007)  ("A plaintiff cannot simply wait until others have investigated a defendant's

12 conduct and then choose to bring suit relying on the fraudulent concealment doctrine.")  Further,

13 Plaintiffs ignore the fact that the Direct Purchaser Action was filed in April 2010 and that the

14 Direct Purchasers themselves plead that they discovered the claims against defendants in mid-

15 2008 when alleged "unprecedented pricing behavior" led to their investigation of the industry.

16 *See* Class Action Complaint (Dkt. #1), in Direct Purchaser Action ¶ 105.

17         Moreover, if Plaintiffs had suffered eight years of rising prices due to alleged overcharges

18 for TiO2, as they claim, it strains credulity to suggest that they lacked at least constructive

19 knowledge that TiO2 price increases were being passed along to them.  *See, e.g.*, SAC ¶ 16.  At

20 the very least, a reasonable reseller would inquire as to the reasons for rising prices far earlier in

21 the period.  *See Hexcel*, 681 F.3d at 1060 ("The plaintiff is deemed to have had constructive

22 knowledge if it had enough information to warrant an investigation which, if reasonably diligent,

23 would have led to the discovery of the fraud." (citation and internal quotation omitted)).

24         **B.     Plaintiffs' Allegations Regarding the Secrecy of Defendants' Alleged Conduct
                    Are Insufficient as a Matter of Law.**

25         As an initial matter, the Ninth Circuit (and other courts) have expressly rejected the notion

26 that the allegedly "self-concealing" nature of antitrust conspiracies frees Plaintiffs from alleging

27 affirmative fraudulent acts of concealment.  *Conmar*, 858 F.2d at 505 (emphasis added); *see also*

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-24-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

Ex D.  Plaintiffs thus attempt to allege additional facts in support of their assertion that the

Defendants fraudulently concealed their alleged price fixing agreements by conducting certain

meetings and communications in secret.  SAC ¶¶ 193-195.  However, the alleged meetings and

communications were "secret" only because they were conducted with the privacy typical of

routine, legitimate business interactions.  Similarly, although Plaintiffs allege that the existence of

the GSP was kept confidential, *id.* ¶ 204, the non-disclosure of this statistical information does

not suggest a cover-up of illegal activity, but simply the routine protection of proprietary data.

And Plaintiffs' allegations that Jim Fisher did not save email or handwritten notes, *id.* ¶ 205(c),

merely suggest a routine practice relating to document retention, not affirmative fraudulent

concealment.  These alleged acts of non-disclosure, in the absence of any affirmative duty to

disclose (*e.g.*, arising out of a fiduciary duty), cannot support a fraudulent concealment claim.

*See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).

### C.    Allegations of Pretextual Communications Fail to Toll the Limitations Period.

As in the FAC, the SAC cites a few public statements allegedly made by Defendants that

Plaintiffs claimed were "false, pretextual and/or misleading and operated to conceal the

conspiracy."  SAC ¶ 196.  They allege that Defendants made pretextual statements regarding the

need for price increases that misled Plaintiffs into believing that price increases were based on

economic factors, rather than the result of anticompetitive conduct.  *Id.* ¶¶ 198-206.

First of all, Plaintiffs' allegations erroneously assume that a statement constitutes

fraudulent concealment if it does not reveal the alleged antitrust conspiracy:

> It can hardly be imagined that illegal activities would ever be so
> gratuitously revealed.  "Fraudulent concealment" implies conduct
> more affirmatively directed at deflecting litigation than that alleged
> here . . . .

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987).

*See also Go Computer,* 437 F. Supp. 2d at 501 (refusing to find alleged misrepresentations by Bill

Gates about Microsoft not committing antitrust violations to constitute fraudulent concealment);

*Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996) ("A failure to own up [to wrongdoing] does

not constitute active concealment.").  Instead, to satisfy Rule 9(b), Plaintiffs "must set forth what

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-25-

DCACTIVE-29741459.4

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

1  is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42

2  F.3d 1541, 1547-48 (9th Cir. 1994) (*en banc*), *superseded by statute on other grounds as stated in*

3  *SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).  Even as amended, Plaintiffs' few factual

4  allegations fall far short of what *Twombly* and *Iqbal* require.

5        The fundamental failing of Plaintiffs' original falsity allegations is that they simply do not

6  match up with the content of the alleged statements.  For example, Plaintiffs allege that in early

7  2002, a Huntsman representative claimed that "recent pricing has been insufficient to justify

8  investments in major new capacity, which will be needed by 2003 to 2004, leading to a tight

9  market at that time."  SAC ¶ 197.  Plaintiffs allege that this statement was deliberately false

10 because some capacity was shut down in the 2003 to 2004 period.  *Id.*  But on its face, the early

11 2002 statement is not a falsehood, but rather a *prediction* about the future capacity needs.

12       Similarly, Plaintiffs newly allege that DuPont stated in a Customer Communication Plan

13 that "global demand" was expected to increase, while an internal e-mail stated that the market

14 was well supplied, and demand "very weak in the U.S."  *Id.* ¶ 205(g).  Again, there is no

15 inconsistency between a statement that *U.S.* demand is *currently* weak and a statement that *global*

16 demand is expect to increase *in the future*.  Likewise, the allegation that Millennium's Cianfichi

17 told customers in a 2004 article that (unspecified) inventories were low, while telling his staff at

18 some other *unstated* time that inventory is too high in *North America*, does not establish an

19 inconsistency, let alone fraudulent concealment.  *Id.* ¶ 205(g).  Plaintiffs are grasping at straws.

20       Other allegations fall far short of Rule 9(b)'s particularity requirements.  For example,

21 Plaintiffs allege a "'strategy' of providing pretextual explanations for price increases, telling

22 customers that supply was 'tight' (despite the existence of secret 'unused' or excess capacity) in

23 order to 'demand a good price.'"  SAC ¶ 205(f).  Plaintiffs also allege that "published production

24 capacities" were inaccurate based on a statement by Jim Fisher.  These allegations do not identify

25 the "who, what, when, where, and how of the misconduct charged" as required under Rule 9(b)

26 *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

27       Plaintiffs' allegations, even if assumed to be true, simply do not demonstrate the falsity of

28 the statements and thus do not toll the limitations period.  Plaintiffs' fraudulent concealment

CROWELL & MORING LLP
ATTORNEYS AT LAW

-26-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1    allegations should be disregarded, and their claims limited to the appropriate statutory periods.

2    **V.    THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS
          BECAUSE PLAINTIFFS AND THEIR COUNSEL DO NOT SATISFY THE
3         ADEQUACY REQUIREMENT OF RULE 23.**

4         Plaintiffs' SAC alleges two putative classes at different levels of the Architectural

5    Coatings distribution chain, but alleges a single injury that, if the classes are successful at trial,

6    they must share. A larger recovery for one class would mean a smaller recovery for the other.

7    Plaintiffs' counsel purports to represent both of these classes notwithstanding inherent conflicting

8    interests (one that the SAC expressly concedes, SAC ¶ 67). And because each class will have an

9    interest in establishing the size and strength of its claim in discovery (including the Consumer

10   Class likely taking discovery of the Merchant Class), the SAC in this form cannot go forward to

11   discovery. Thus, the Court should strike the class allegations in paragraphs 58-69 of the SAC.

12        **A.    The Court May Strike Defective Class Allegations at the Pleading Stage.**

13        The Court has the authority under Federal Rules 12(f) and 23(c) to strike class allegations

14   prior to discovery where, as here, "the complaint demonstrates that a class action cannot be

15   maintained" on the facts alleged. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal.

16   2010); *accord Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D.

17   Cal. Dec. 17, 2009); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking

18   plaintiffs' class allegations and noting the court's power to strike class allegations at the pleading

19   stage "to avoid the expenditure of time and money") (internal quotations omitted).

20        **B.    The Named Plaintiffs and Their Counsel Do Not Satisfy the Adequacy
          Requirements Under Rule 23(a)(4).**
21

22        A class action may only be maintained if "the representative parties will fairly and

23   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A "critical purpose of the

24   adequacy inquiry" under this rule is "uncovering conflicts of interest between the named parties

25   and the class they seek to represent." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir.

26   2009). To demonstrate adequacy of representation, there must be "an absence of antagonism

27   between the representatives and absentees," *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985

28   (9th Cir. 2011), and a class representative must "possess the same interest" as the class members

CROWELL
& MORING LLP
ATTORNEYS AT LAW                -27-         DEFENDANTS' MOTION TO DISMISS
                                             PLAINTIFFS' SECOND AMENDED COMPLAINT;
                                             CASE NOS. 5:13-CV-01180-BLF
DCACTIVE-29741459.4

1   she seeks to represent. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal

2   quotations omitted). Where such conflict or antagonism exists, striking the class allegations is

3   appropriate. *E.g.*, *Dodd-Owens v. Kyphon, Inc.*, No. C06-3988 JF (HRL), 2007 WL 3010560, at

4   *3-4 (N.D. Cal. Oct. 12, 2007); *Lee v. Children's Place Retail Stores, Inc.*, No. 14C3258, 2014

5   WL 5100608, at *3 (N.D. Ill. Oct. 8, 2014).

6          Rule 23's adequacy requirement applies to *both* the class representatives, *and* their

7   counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (adequacy depends in

8   part on whether "the named plaintiffs *and their counsel* have any conflicts of interest with other

9   class members" (emphasis added)); William B. Rubenstein, *Newberg on Class Actions* § 3:54

10   (5th ed.). Class counsel has a fiduciary duty to all class members, which "does not permit even

11   the appearance of divided loyalties." *Rodriguez*, 563 F.3d at 968 (internal quotations omitted).

12          Where there is a potential conflict among class members with competing interests, Rule

13   23 requires "structural assurance[s] of fair and adequate representation for the diverse groups and

14   individuals affected." *Amchem*, 521 U.S. at 627. Such assurances may include "division into

15   homogeneous subclasses" coupled with "*separate representation to eliminate conflicting interests*

16   *of counsel*." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (emphasis added).

17          Such assurances are completely lacking here. The same counsel purport to represent both

18   the putative Consumer and Merchant Classes, each of which has interests that are antagonistic to

19   one another. The SAC alleges that the Plaintiffs will seek a single recovery of the alleged TiO2

20   overcharge. SAC ¶ 66. For the putative Consumer Class to demonstrate injury and damages, its

21   class representatives must prove that members of the Merchant Class passed on all or most of the

22   alleged overcharge to the members of the Consumer Class. By contrast, the Merchant Class's

23   interest is to demonstrate that it absorbed all or most of the overcharges by *not* passing them on to

24   the Consumer Class. These positions are diametrically opposed.[33]

25          [33] Indeed, as discussed in Section I *supra*, the SAC is devoid of any specific allegations
    that the Merchant Class members passed on any of the alleged overcharge to the Consumer Class
26   members, and instead asserts vaguely that the overcharges "passed through each level of
    distribution." *E.g.*, SAC ¶ 167. The absence of such specific pass-on allegations is not only fatal
27   to the Consumer Class's ability to demonstrate under antitrust standing, but it also demonstrates
    that the Merchant Class Plaintiffs have no interest in making such allegations.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-28-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1    A similar conflict precluded a finding of adequacy in *In re Microsoft Corp. Antitrust*

2    *Litigation*, 218 F.R.D. 449, 452 (D. Md. 2003), where the court considered whether plaintiffs'

3    counsel could adequately protect the interests of both an end-user class and a class of original

4    equipment manufacturers ("OEMs") that sold to those end users.  Given that there could only be a

5    single recovery between the two classes, the court held that "[t]his dual scenario places plaintiff's

6    counsel in a position of irreconcilable conflict because they seek to represent . . . an end-user

7    class and they seek to represent here a class of OEMs and other persons who sold to the end-

8    users." *Id.*  "In light of this conflict, the 'adequacy' prong of the Rule 23 test clearly cannot be

9    met." *Id.*  The same concerns exist here.  What the Consumer Class has to prove by way of pass-

10   on overcharges, the Merchant Class has to disprove, and their respective interests cannot be

11   adequately protected when the same counsel represents them both.

12   Indeed, Plaintiffs' counsel themselves have argued that similar conflicts between indirect

13   purchaser classes require appointment of separate counsel when they sought to be appointed

14   interim lead counsel in *Auto. Parts*, a case Plaintiffs' counsel repeatedly referenced in support of

15   their motion to be appointed Interim Lead Counsel here.  Pls' Mot. to Appoint Interim Lead

16   Counsel, Oct. 22, 2013, ECF No. 49.  There, Plaintiffs' counsel sought to be appointed interim

17   lead counsel of an automobile dealer class, which was a subset of indirect purchasers who

18   purchased automobiles from the manufacturers and resold those automobiles to the end

19   consumers (the "End-Payors").  In support of their petition, Plaintiffs' counsel argued that

20   "[s]eparate leadership is necessary" precisely because of the "significant conflicts between these

21   two groups of indirect purchasers, *especially as to how much of the illegal overcharges were*

22   *passed on from the automobile dealers to the End-Payors*."  Mem. In Supp. of Mot., *In re Auto.*

23   *Parts Antitrust Litig.*, No. 12-md-2311 (E.D. Mich.), Feb. 27, 2012, ECF No. 6, at 4-5 (emphasis

24   added); *see also id.* at 7-10.  There is no reason that argument should not apply here.

25   In fact, the SAC expressly acknowledges the conflict, stating: "At or before class

26   certification Plaintiffs' counsel will either seek an order from the Court appointing separate

27   counsel for the Merchant and Consumer Classes or otherwise obviate any possible conflict

28   between the two levels of the indirect purchasers."  SAC ¶ 67.  But a promise to "obviate" the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-29-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

1   conflict at some unspecified point in the future cannot satisfy Rule 23(a)'s adequacy requirement,

2   which is designed to ensure adequate representation *throughout the course of the litigation. Cf.*

3   *Nigh v. Humphreys Pharmacal, Inc.*, No. 12CV2714-MMA-DHB, 2013 WL 5995382, at *4 (S.D.

4   Cal. Oct. 23, 2013) (finding that "both Plaintiff and Class Counsel have fairly and adequately

5   represented the Class throughout this litigation"); *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-

6   05208-JF HRL, 2011 WL 1877988, at *2 (N.D. Cal. May 17, 2011) (noting that adequacy met

7   where representatives and counsel "protected the interests of the class throughout the litigation").

8        This irreconcilable conflict cannot be waived.  That the named Plaintiffs are apparently

9   willing to waive this conflict on behalf of absent putative class members only confirms their

10   inability to "fairly and adequately protect the interests of the class."[34] Fed. R. Civ. P. 23(a)(4); *cf.*

11   *Gregory v. Preferred Fin. Solutions*, No. 5:11-CV-422 MTT, 2013 WL 6632322, at *10 (M.D.

12   Ga. Dec. 17, 2013) ("An attempt to waive the recovery of damages without waiver authority

13   granted by the unnamed class members creates a conflict of interest between the representatives

14   and the remaining members of the class.").  Accordingly, because Plaintiffs and their counsel fail

15   to satisfy Rule 23's adequacy requirement, the class allegations must be stricken.

### CONCLUSION

16

17        For each of the foregoing reasons, Plaintiffs' Second Amended Class Action Complaint

18   should be dismissed in its entirety, and any requests for amendment should be denied as futile.

19   Dated: November 17, 2014                    CROWELL & MORING LLP

20                                                          */s/ Shari Ross Lahlou*

21                                                          Shari Ross Lahlou
22                                                          Beatrice B. Nguyen
                                                           Attorneys for Defendant
23                                                     E. I. DU PONT DE NEMOURS AND COMPANY

24

25   _____

26   [34] "Even if this conflict of interest could be waived, Plaintiffs' counsel would need to
     obtain waivers from every class member, which, as a practical matter, they cannot do from the
     absent class members."  *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2008 WL
27   906496, at *4 (N.D. Cal. Apr. 1, 2008); *accord Moreno v. Autozone, Inc.*, No. C05-04432 MJJ,
     2007 WL 4287517, at *7 (N.D. Cal. Dec. 6, 2007).

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DCACTIVE-29741459.4

1

2    Dated: November 17, 2014                 VINSON & ELKINS LLP

3                                        /s/ James Arthur Reeder, Jr.

4                                         James Arthur Reeder, Jr.
5                                          Erica L. Krennerich
                                         Attorneys for Defendant
6                                    HUNTSMAN INTERNATIONAL, LLC

7

8    Dated: November 17, 2014                   LOCKE LORD LLP

9                                        /s/ Paul Edward Coggins

10
                                          Paul Edward Coggins
11                                      Kelly Rothermel Vickers
                                         Attorneys for Defendant
12                                     KRONOS WORLDWIDE, INC.

13

14   Dated: November 17, 2014              ARNOLD AND PORTER LLP

15                                        /s/ James L. Cooper

16                                          James L. Cooper
                                            Ryan Z. Watts
17                                           Noah L. Browne
                                         Attorneys for Defendant
18                             CRISTAL USA INC., FORMERLY KNOWN AS
                               MILLENNIUM INORGANIC CHEMICALS INC.
19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP                         -31-         DEFENDANTS' MOTION TO DISMISS
ATTORNEYS AT LAW                                 PLAINTIFFS' SECOND AMENDED COMPLAINT;
                                                    CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: November 17, 2014

CROWELL & MORING LLP

*/s/ Shari Ross Lahlou*

Beatrice B. Nguyen
Shari Ross Lahlou
Attorneys for Defendant
E. I. DU PONT DE NEMOURS AND COMPANY

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-32-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT;
CASE NOS. 5:13-CV-01180-BLF

DCACTIVE-29741459.4