1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, California 95126
3   Telephone:      (408) 369-0800
    Facsimile:      (408) 369-0752
4   pgore@prattattorneys.com
5
    Attorney for Plaintiffs and the Putative Class
6
7   (Additional counsel listed on signature page)

8                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
9                          SAN JOSE DIVISION

10  LOS GATOS MERCANTILE, INC. d/b/a        No. 5:13-cv-01180-BLF
11  LOS GATOS ACE HARDWARE, et al.,
                                            **PLAINTIFFS' MEMORANDUM IN**
12  Plaintiffs,                             **OPPOSITION TO DEFENDANT**
                                            **TITANIUM DIOXIDE COMPANY**
13                                          **LIMITED d/b/a CRISTAL'S MOTION**
                                            **TO DISMISS THE SECOND AMENDED**
14  v.                                      **CLASS ACTION COMPLAINT**

15  E.I.  DUPONT  DE  NEMOURS  AND          Date:        February 5, 2015
    COMPANY, et al.,                        Time:        9:00 a.m.
16                                          Courtroom:   Courtroom 3, 5th Floor
    Defendants.                             Judge:       Hon. Beth Labson Freeman
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

    A.    Plaintiffs Effected Service of Process on Cristal ..................................................... 2

    B.    Plaintiffs' Allegations Against Cristal and Millennium ........................................... 2

    C.    Cristal Maintains a Substantial, Direct, and Continuous Presence in
        Maryland ................................................................................................................... 3

        1.    Cristal fully integrated Millennium's business and operations ................... 3

        2.    Multiple Cristal employees worked in Millennium's Maryland
            office. ............................................................................................................ 4

        3.    Cristal's operational headquarters are in Maryland. ................................... 5

        4.    Cristal's executives routinely met with customers in the United
            States and approved Millennium's price increases and business
            expenses. ...................................................................................................... 7

        5.    Cristal controls of Millennium's production facilities. .............................. 9

III.  ARGUMENT ...................................................................................................................... 10

    A.    Plaintiffs Perfected Service on Cristal in Saudi Arabia by Mail ......................... 10

        1.    Non-Mail Service of a Saudi Arabian Corporation Is
            Practically Impossible. ............................................................................... 10

        2.    Service of a Saudi Arabian Corporation Via Mail Is Proper. ................... 11

    B.    Plaintiffs Perfected Service on Cristal through Service on Millennium ............... 13

        1.    Plaintiffs' Allegations Demonstrate an Alter-Ego and/or
            Agency Relationship. ................................................................................. 15

        2.    Additional Evidence Supports an Alter-Ego and/or Agency
            Relationship. ............................................................................................... 17

        3.    The Livingston Declaration Fails to Undermine Plaintiffs'
            Allegations. ................................................................................................. 19

    C.    The Court Can Exercise Personal Jurisdiction over Cristal for the
        Actions of its Alter Ego and/or Agent Millennium Directed toward
        Maryland. ................................................................................................................. 20

1.    Plaintiffs Have Made A Prima Facie Showing of Personal Jurisdiction Over Cristal ........................................................................ 20

2.    Cristal has sufficient contacts with the United States and Maryland. ............................................................................................ 20

D.    Plaintiffs Alternatively Request Limited Jurisdictional Discovery of Cristal's Control over Millennium. ....................................................... 25

IV.    CONCLUSION ................................................................................................. 25

**TABLE OF AUTHORITIES**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ........ 20, 21

*ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711 (C.D. Cal. 1996) .......... 18, 20

*Akzona Inc. v. E.I. Du Pont De Nemours & Co.* 607 F. Supp. 227 (D. Del. 1984). .............. 17

*Am. Football League v. Nat'l Football League*, 27 F.R.D. 264 (D. Md. 1961) ................... 10

*AT&T v. Compagnie Bruxelles Lambert,* 94 F.3d 586 (9th Cir.1996) ................................. 22

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000) .............. 21, 23

*Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972 (C.D. Cal. 2013) ...................................... 17

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) *rev'd sub nom. Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ...................................... 14

*Benak v. Alliance Capital Mgmt. L.P.,* 435 F.3d 396 (3d Cir. 2006) ...................................... 3

*Blades v. Ill. Central R. Co.*, 2003 WL 1193662 (E.D. La. Mar. 12, 2003) ......................... 13

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) ............. 21, 22

*Bui v. Golden Biotechnology Corp.*, No. 13-cv-04939, 2014 WL 4072112 (N.D. Cal. Aug. 14, 2014) ...................................................................................................... 15, 19, 20

*Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013 (N.D. Cal. 2005) ................................................................................................................................... 23

*CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958 (C.D. Cal. 2011) ............................................................................................................................. 21, 22

*Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977) ..................... 20

*Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008) .................................... 13, 15

*Doe v. Unocal Corp.,* 248 F.3d 915 (9th Cir.2001) ........................................... 14, 15, 17, 24

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ...................................................... 22

*Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-cv-9641, 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) .......................................................................................................... 11, 12

*Fairfield Line, Inc. v. Pedigree, Inc.*, No. 88-cv-100, 1988 WL 156712 (S.D. Iowa Oct. 18, 1988) ...................................................................................................................... 14

*Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071 (C.D. Cal. 2013) ............................ 13, 17

*Fleetwood v. B.C.E., Inc.*, No. 2003-cv-2125, 2004 WL 903754 (D. Md. Apr. 28, 2004) ....................................................................................................................................... 17

*Gates Learjet Corp. v. Jensen,* 743 F.2d 1325 (9th Cir.1984)................................. 23

*Gibble v. Car–Lene Research, Inc.*, 67 Cal. App. 4th 295 (1998)......................... 13

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (*en banc*) ...................... 10

*Go–Video, Inc. v. Akai Electric*, 885 F.2d 1406 (9th Cir.1989) ............................ 21

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790 (D. Md. 2011) ....................................................................................................................... 13

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ...................................................................................................................... 25

*Heise v. Olympus Optical Co.*, 111 F.R.D. 1 (D. Ind. 1986) ................................ 14

*Hickory Travel Systems, Inc. v. TUI AG* 213 F.R.D. 547 (N.D. Cal. 2003) ......................... 16

*Hollow v. Hollow,* 747 N.Y.S.2d 704 (N.Y. Sup. Ct. 2002)................................... 12

*I.A.M. Nat'l Pension Fund, Benefit Plan A v. Wakefield Indus., Inc.*, 699 F.2d 1254 (D.C. Cir. 1983) ........................................................................................... 13

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100 (S.D. Cal. 2011) ................................................................................................................ 14, 18

*In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2010 WL 2484411 (S.D.N.Y. June 17, 2010) ................................................................................. 11, 12

*In re W. States Wholesale Natural Gas Antitrust Litig.*, No. 2:03-cv-01431, 2007 WL 4284759 (D. Nev. Nov. 28, 2007) ................................................................ 21, 25

*Juniper Networks, Inc. v. Bahattab*, No. 07-cv-1771, 2008 WL 250584 (D.D.C. Jan. 30, 2008) ...................................................................................................... 12

*Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95 (S.D. Fla. 1985).................... 14

*Lisson v. ING GROEP N.V.*, 262 Fed. Appx. 567 (5th Cir. 2007) ......................... 13

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir.2010)........................ 20

*MCI Communications Corp. v. AT&T,* No. 79-cv-1182, 1983 WL 1881 (D.D.C. Oct. 4, 1983) ......................................................................................................... 15

*Menken v. Emm*, 503 F.3d 1050 (9th Cir.2007)..................................................... 22

*Modesto City Sch. v. Riso Kagaku Corp.*, 157 F. Supp. 2d 1128 (E.D. Cal. 2001)............ 24

*Mylan Laboratories v. Akzo, N.V.* 2 F.3d 56 (4th Cir. 1993)........................... 16, 18

*Nachman v. Regenocyte Worldwide, Inc.*, No. 13-cv-00319, 2014 WL 537646 (D. Nev. Feb. 5, 2014)............................................................................................. 24

*Orion Tire Corp. v. Gen. Tire, Inc.*, No. 92-cv-2391, 1992 WL 295224 (C.D. Cal. Aug. 17, 1992) ................................................................................................................... 17

*Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952) ............................................ 23, 24

*Pimal Prop., Inc. v. Capital Ins. Grp., Inc.*, No. 11-cv-02323, 2012 WL 608392 (D. Ariz. Feb. 27, 2012) ........................................................................................................ 24

*Potts v. Dyncorp Intern., LLC*, No. 3:06-cv-124, 2007 WL 899040 (M.D. Ala. Mar. 23, 2007) .................................................................................................................... 13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)............................ 3

*Rheumatology Nurses Soc'y, Inc. v. Phoenix Grp. Holdings, LLC*, No. 008-cv1675, 2009 WL 249233 (D. Md. Jan. 8, 2009) ................................................................... 17

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ................................. 12

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).................... 21, 22

*Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, No. 13-cv-2700, 2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ............................. 14

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)............................ 19

*Stillman v. Camden Marine Corp.*, No. 02-cv-2474, 2004 WL 212947 (D. Md. Feb. 2, 2004) ...................................................................................................................... 17

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890 (N.D. Cal. 2009)........................................................................................................................... 18

*Tinicum Props. Assocs. Ltd. v. Garnett*, No. 92-cv-0860, 1992 WL 99590 (E.D. Pa. Apr. 29, 1992) ...................................................................................................... 11, 12

*United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052 (N.D. Cal. 2012) ..................... 14

*United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55 (D.D.C. 2004) ....................... 15

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)........................................................................................................................ 21

**Statutes**

15 U.S.C. § 22 ....................................................................................................................... 20

Cal. Civ. P. Code. § 416.10(b) ............................................................................................. 13

**Other Authorities**

Australian Administrative Law Branch, Service of Documents Abroad – Saudi Arabia...................................................................................................................................... 11

John D. Shipman, *Taking Terrorism to Court*, 86 N.C. L. Rev. 526 (2008)........................ 11

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 20

Fed. R. Civ. P. 4 ............................................................................................... 10, 11, 13

Fed. R. Evid. 201 ........................................................................................................... 3

Md. Rules 2-124(d) ...................................................................................................... 13

1

## I. INTRODUCTION

2

Defendant The National Titanium Dioxide Company Limited's ("Cristal") is a global

3

organization with offices, employees, and manufacturing facilities located throughout the

4

world.[1] Plaintiffs allege that Cristal, Defendant Millennium Inorganic Chemicals, Inc.

5

("Millennium"), and the other defendants and co-conspirators engaged in a long-running

6

conspiracy to fix prices, rig bids, and allocate the market and customers for Titanium Dioxide.

7

Second Amended Class Action Complaint (SAC) ¶¶ 2-5 (Dkt. 117 Oct. 31, 2014). Defendant

8

Cristal is a privately held Saudi Arabian Corporation with its principal place of business in

9

Jeddah, Saudi Arabia that manufactured and sold Titanium Dioxide to purchasers in the United

10

States and elsewhere, directly or through predecessors, affiliates, and/or subsidiaries, including

11

its wholly owned subsidiary Millennium. *Id.* ¶ 48, 50. Together, Cristal and Millennium form

12

the world's second largest Titanium Dioxide producer, with combined annual sales of

13

approximately $1.6 billion. *Id.* ¶ 50.

14

Plaintiffs properly served Cristal through its agent and alter ego Millennium in

15

November and via FedEx on December 14, 2014. Cristal's motion to dismiss and declaration

16

omit the mountains of evidence demonstrating both Cristal's significant contacts with Maryland

17

and the United States as well as the control it exerts over Millennium. Cristal maintains a

18

substantial, direct, and continuous presence in Maryland that is sufficient to establish this

19

Court's personal jurisdiction over the international business operation. The well-pleaded facts

20

and additional facts set forth below demonstrate that Millennium is the agent and/or alter ego of

21

Cristal. Should the Court disagree, Plaintiffs move for leave to conduct jurisdictional discovery

22

_____

[1] ████████████████████████████████████████████████████

23

████████████████████████████████████████████████████

24

*See* Ex. 1, Deposition of Samuel R. Alexander ("Alexander Dep.") at 21:16-21 (May 31, 2012).

25

█████████████████████████████████████ *Id.* 46:25-47:2, Ex. 2,
Deposition of Mark Stoll ("Stoll Dep.") at 14:1-7 (May 13, 2012).

26

███████████████████████████████████████████████████

27

█████████████████ *Id.* 22:4-9.

28

1  into the relationship between Cristal and Millennium.

2  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

3  This motion has two sets of facts.  The first are the procedural facts relating to service of

4  process, and the second are substantive facts relating to Cristal's contacts with the United States

5  and its relationship with Millennium.

6  **A.    Plaintiffs Effected Service of Process on Cristal**

7  Plaintiffs initially served Cristal through its agent and alter ego, Millennium. *See*

8  Affidavit of Service (Dkt. 119). While Plaintiffs contend that this manner of service was

9  effective, Plaintiffs also requested that the Court issue another summons directed to Cristal's

10  headquarters in Saudi Arabia (Dkt. No. 132). The Court issued the requested on summons on

11  the same day (Dkt. No. 133). Plaintiffs then mailed the summons along with a copy of the SAC

12  and various other documents to Cristal's headquarters via FedEx. Declaration of Service ¶ 2

13  (Dkt. 134). Jackie Garcia, clerk to Judge Beth Labson Freeman, witnessed the mailing. *Id.*

14  Plaintiffs received confirmation of the package's delivery to Cristal's headquarters from FedEx

15  on December 14, 2014. *Id.* ¶ 3.

16  **B.    Plaintiffs' Allegations Against Cristal and Millennium**

17  At all relevant times, Cristal maintained substantial, direct, and continuous contacts with

18  Maryland and the United States. In addition, Millennium has acted as the Cristal's agent and/or

19  alter ego in the United States. SAC ¶ 50. Cristal has exerted considerable control over the

20  activities and operations of Millennium such that the two entities are essentially one. *Id.*

21      Facts demonstrating the substantial control that Cristal has exercised over
22      Millennium include, but are not limited to: (1) Cristal's direct and controlling
       ownership interest in Millennium, (2) Millennium's role as the primary U.S.
23      importer and distributor of Cristal's products, (3) Cristal's exercise of control over
       Millennium's marketing, purchasing, pricing, management, and/or operating
24      policies, (4) Cristal's role in approving Millennium's significant business
       decisions, and (5) the overlapping functions and operations of Cristal and
       Millennium.

25  *Id.* "According to Cristal's website, Cristal and Millennium share the same Maryland

26  operational headquarters, commercial offices, research center, and plant, as well as two shared

27  plants in Ohio." *Id.* The Complaint alleges that Cristal knew, or should have known, that its

28

conduct through Millennium in Maryland would have an impact in the United States. *Id.* "Based on this relationship, Cristal could not do business in the United States absent its wholly owned subsidiary Millennium." *Id.*

### C. Cristal Maintains a Substantial, Direct, and Continuous Presence in Maryland

#### 1. Cristal fully integrated Millennium's business and operations.

After acquiring Millennium in 2007, Cristal immediately began integrating Millennium's business and operations into its own, subsuming Millennium's corporate identity into its own. Jamal Nahas, Cristal's president since 2001, stated in Cristal's corporate magazine:

> "[A]fter the acquisition of [Millennium], the company realised the importance of having a single Cristal Global face to our stakeholders (including our customers and suppliers) as soon as possible, and creating this was a top priority." Consequently the company began what Nahas calls "an integration journey over the last 12 months . . . . Our objective was to create a truly fully-integrated global organisation, not one which would be partially integrated or bolted together."

Ex. B, *Cristal Globe* at 17 (Dec. 2008).[2]

> That metaphorical journey began with several physical ones, as the top 50 leaders from throughout the company visited the Kingdom for a workshop . . . to develop "the vision, mission, values and strategic intent for the combined organization . . . . Those attending the workshop returned to their home offices and plants to explain such nuts-and-bolts matters as sharing technology and purchasing practices across the expanded company, as well as the broader message about strategy and philosophy.

*Id.* In another edition of the *Cristal Globe*, Mr. Nahas confirmed that "Cristal Global will be fully integrated by the end of 2009 when it will have a truly global functionally integrated budget." Ex. C, *Cristal Globe* at 8 (Jan.-Mar. 2010).

Early versions of the home page of Cristal's current website state,

Cristal Global and Millennium Inorganic Chemicals have combined to become

---

[2] Plaintiffs request, pursuant to Rule 201, that this Court take judicial notice of certain reports news articles, press releases, and public filings regarding Cristal. *See* Declaration of Katherine Van Dyck, Exhibits A through N. Judicial notice of this content is appropriate because it is "not subject to reasonable dispute," and it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). Courts routinely take judicial notice of such publicly available documents. *See, e.g., Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (taking judicial notice of newspaper articles); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

the world's second largest producer of titanium dioxide and a leading producer of titanium chemicals. Now with nine manufacturing plants in six countries and more than 3,700 employees, Cristal is positioned perfectly to deliver the product diversity, R&D, innovation and customer support that you and our global customer base demands.

Ex. D, Cristal Global Website (June 10, 2008).  Early versions of the "About Us" section of Cristal's website state, "In May 2007, Cristal and Millennium Inorganic Chemicals combined their diverse manufacturing platforms to become one unified producer . . . . Cristal Global now directs the operation of nine manufacturing plants on five continents, with locations in Ashtabula, Ohio [and] Baltimore, Maryland."   Ex. E, Cristal Global Website (June 6, 2008). Press reports about Cristal's acquisition of Millennium note that "Cristal says it intends to license the Millennium name for use with the acquired assets." Ex. F, "Saudi Arabian Firm to Buy Lyondell's TiO2 Business," *Chemical Week* (Mar. 7, 2007).

Ex. 1, Alexander Dep. at 75:18-76:2.

**2.     *Multiple Cristal employees worked in Millennium's Maryland office.***

Ex. 1, Alexander Dep. at 18:19-24.

*Id*. 21:10-15, 26:10-11; Ex. A, Second Supplemental Declaration of John E. Hall ("Hall Dec.") ¶ 13 (identifying Mr. Nahas as the president of Cristal employee).[3]

Ex. 1, Alexander Dep. at 26:11-17; 34:18-22.

[3] *See also* Ex. 3, Deposition of James D. Clover ("Clover Dep.") at 49:15-17 (May 16, 2012). *Id*. 29:21-30:14.

*Id*. 43:25-44:17; 44:24-45:1; 52:3-5.

*Id*. 57:18-58:25, 60:1-24.

1

*Id.* 34:18-35:8.

2

*Id.*

3

34:11-35:8, 36:3-6.                                                              *Id.*

4

39:9-40:13.

5

*Id.* 34:14-18, 35:21-36:2, 46:21-47:2, 48:7-

6

17.

7

Cristal and Millennium also share a number of other executives and employees:

8

•

*See* Ex. 1, Alexander Dep. at 56:15-57:14;

9

74:6-17.

10

•

11

*See* Ex. A, Hall Decl. ¶¶ 8-9; Ex. 1, Alexander

12

Dep. at 58:2-11; Ex. 2, Stoll Dep. at 16:19-21; *see also.* Ex. 3, Clover Dep. at. 53:5-11.

13

•                                                                                Ex. 4,

14

Deposition of Richard Rowe ("Rowe Dep.") at  147:11-23 (July 11, 2012). *See* Ex. 1, Alexander Dep.at 53:10-24; Ex. 3, Clover Dep. at 64:24-66:22.

15

•

16

*Id.*

71:25-72:14.

17

•                                                                                *See* Ex.

18

3, Clover Dep. at 59:13-61:4.

19

Ex. 2, Stoll Dep. at 15:18-24; 17:14-16.

20

•

21

22

Ex. B, Cristal Globe at 6; Ex. A, Hall Dec. ¶¶ 8, 13.

23

**3.     *Cristal's operational headquarters are in Maryland.***

24

Ex. 1,

25

Alexander Dep. at 76:24-77:10

26

[4]

27

*See* Ex. A, Hall Dec. ¶ 14.

Ex. 2, Stoll Dep. at 11:9-14.

28

1

2

3         *Id.* 62:8-21.                                      *Id.*

4

5

6                    *Id.* 63:14-23, 68:10-15; *see also* Ex. 4, Rowe Dep. at 130:7-11.

7

8

9          Ex. 1, Alexander Dep. at 70:3-11; Ex. 5, Deposition of Jerry Bassett at 84:5-24;

10 89:14-17 (May 22, 212).

11

12                 Ex. 4, Rowe Dep. at 130:19-132:16.[5]

13                                            *Id.*

14

15               *Id.* 137:21-138:17; Ex. A, Hall Dec. ¶ 13.

16

17

18 Ex. 1, Alexander Dep. at 27:11-16; Ex. 4, Rowe Dep. at 133:18-134:14.

19              Ex. 4, Rowe Dep. at 133:3-17; 135:13-136:18.

20

21                 Ex. 2, Stoll Dep. at 20:8-18.

22                        Ex. 1, Alexander Dep. at

23 83:19-85:16.

24              *Id.* 85:24-86:13; Ex. 2, Stoll Dep. at 21:3-7; 40:1-6.

25

26 [5]                                           *See* Ex. 6,

27 MIC0000697-98                               ) (July 25, 2010).

28



[REDACTED] Ex. 2, Stoll Dep. at 39:4-25.

**4.     *Cristal's executives routinely met with customers in the United States and approved Millennium's price increases and business expenses.***

Cristal exerts significant control over Millennium's operations, meeting with customers and approving pricing decisions, contracts, and various business expenses. When Cristal increases prices for its Titanium Dioxide products sold both in the United States and elsewhere, it issues its press releases with a dateline reading, "HUNT VALLEY, MD and JEDDAH, SAUDI ARABIA," and lists "Amy N. Drusano, Manager – Communications . . .Contact Number: +1.410.229.8062" as the contact for inquiries. *See* Exhibits G through L.  A number of the price increase press releases issued immediately after Cristal's 2007 acquisition of Millennium included the following statement: "Cristal" and Millennium . . . combine to form the world's second-largest producer of titanium dioxide and a leading producer of titanium chemicals. Cristal and [Millennium] operate nine manufacturing plants in six countries and employ more than 3,700 people worldwide. Exhibits G through J

[REDACTED] Ex. 1, Alexander Dep. at 62:22-25; 64:18-24); Ex. 3, Clover Dep. at 49:18-50:15; 61:5-62:19. [REDACTED]

Ex. 1, Alexander Dep. at 63:1-13. [REDACTED]

*Id.* 63:24-64:16. As Alexander noted, [REDACTED]

*Id.* 65:8-11.

Mr. Nahas and Dr. Talal also approved price increases for Titanium Dioxide, activity

1

*Id.* 34:18-35:8.

2

*Id.*

3

34:11-35:8, 36:3-6.                                                                *Id.*

4

39:9-40:13.

5

*Id.* 34:14-18, 35:21-36:2, 46:21-47:2, 48:7-

6

17.

7

Cristal and Millennium also share a number of other executives and employees:

8
9

- See Ex. 1, Alexander Dep. at 56:15-57:14; 74:6-17.

10
11
12

- *See* Ex. A, Hall Decl. ¶¶ 8-9; Ex. 1, Alexander Dep. at 58:2-11; Ex. 2, Stoll Dep. at 16:19-21; *see also*. Ex. 3, Clover Dep. at. 53:5-11.

13
14
15

- Ex. 4, Deposition of Richard Rowe ("Rowe Dep.") at 147:11-23 (July 11, 2012). *See* Ex. 1, Alexander Dep.at 53:10-24; Ex. 3, Clover Dep. at 64:24-66:22.

16

- *Id.* 71:25-72:14.

17
18
19

- *See* Ex. 3, Clover Dep. at 59:13-61:4. Ex. 2, Stoll Dep. at 15:18-24; 17:14-16.

20
21
22

- Ex. B, Cristal Globe at 6; Ex. A, Hall Dec. ¶¶ 8, 13.

23

    **3.    Cristal's operational headquarters are in Maryland.**

24

Ex. 1, Alexander Dep. at 76:24-77:10 (

25

---

26

[4] Although they work in Hunt Valley, Maryland, they do not report to Millennium's President Sam Livingston. *See* Ex. A, Hall Dec. ¶ 14.

27

Ex. 2, Stoll Dep. at 11:9-14.

28

1 ████████████████████████████████ Alexander Dep. at 79:14-80:23. Richard Rowe

2 confirmed that Dr. Talal and Mr. Nahas approve all of Millennium's major business matters:

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 

Ex. 4, Rowe Dep. at 140:6-16. ██████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

████████████████████ Ex. 16, MIC01366421; Ex. 17, MIC0011274; Ex. 18, MIC00234948;

12 Ex. 19, MIC05196180; Ex. 20, MIC02089061-62. ██████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

████████ Ex. 21, Packet of Expense Approvals.

15 

**5.      *Cristal controls of Millennium's production facilities.***

16       Cristal regards Millennium's plants and operations as its own. The *Cristal Globe* notes

17 that the "Ashtabula Complex in the American state of Ohio is Cristal's largest titanium dioxide

18 facility, with its two plants accounting for 30 per cent of its overall production." Ex. B, *Cristal*

19 *Globe* at 8. The January-March 2010 issue of the *Cristal Globe* included an article stating that

20 "[a]mong the principal assets of [Millennium] which became part of Cristal Global in 2007 . . .

21 is the world-class Ashtabula titanium dioxide complex in the American state of Ohio." Ex. C,

22 *Cristal Globe* at 9. It further described the plant as "Cristal's largest TiO2 facility, accounting

23 for 30 per cent of the group's total production." *Id.* "The acquisition of Millennium Inorganic

24 Chemicals (MIC) by Cristal meant for the first time since 2000 that one of the top five

25 producers was not US-owned, and for the first time substantial American-domiciled production

26 was foreign-owned." *Id.* at 5. Cristal has also identified the A Schulman Corporation, an

27 

28

1   American plastics supplier, as "one of Cristal Global's major customers." Ex. B, *Cristal Globe*

2   at 10.

3         Cristal's top-down integration strategy also allows it to exert considerable control over

4   Millennium's compliance with standard manufacturing and safety policies. For example, Cristal

5   developed and implemented a system of "best practices at all Cristal Global sites" for

6   manufacturing process, which included a system for a "statistical monitoring technique

7   throughout production processes" that was developed and implemented by a long-time Saudi

8   executive named Ehab Al-Fara. *Id*. at 38.

9   **III.    ARGUMENT**

10        **A.    Plaintiffs Perfected Service on Cristal in Saudi Arabia by Mail**

11            ***1.    Non-Mail Service of a Saudi Arabian Corporation Is Practically Impossible.***

12        A corporation may be served in the United States (1) in the manner prescribed by Rule

13  4(e)(1) for serving an individual or (2) by delivering a copy of the summons and complaint to

14  any officer or agent authorized by appointment or by law to receive service of process. FED. R.

15  CIV. P. 4(h). Proper service must "bring home to the defendant notice of the filing of the action;

16  service should be made upon a representative so integrated with the organization that he will

17  know what to do with the papers." *Am. Football League v. Nat'l Football League*, 27 F.R.D.

18  264, 269 (D. Md. 1961); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 474-75 (4th Cir.

19  2007) (*en banc*) (determining that corporate defendant had constructive notice of lawsuit

20  because its properly served affiliate represented by the same lawyers had notice). A foreign

21  corporation may be served "at a place not within any judicial district of the United States, in any

22  manner prescribed by Rule 4(f) for serving an individual, except personal delivery under

23  (f)(2)(C)(i)." FED. R. CIV. P. 4(h)(2). Foreign corporations generally can be served (1) by any

24  internationally agreed means of service that is reasonably calculated to give notice, (2) in the

25  manner prescribed by foreign law for action in that nation's courts, (3) pursuant to a letter

26  rogatory, (4) by mail, or (5) by any other means not prohibited by international agreement

27

28

pursuant to court order.[7] FED. R. CIV. P. 4(f)(1)-(3).

The first three methods of service are impossible in Saudi Arabia, which is not a signatory to the 1965 Hague Convention on the Service of Documents Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. *See Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-cv-9641, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005) ("[T]he Court is not aware of any international agreement that speaks to service of process in Saudi Arabia."); *Tinicum Props. Assocs. Ltd. v. Garnett*, No. 92-cv-0860, 1992 WL 99590, at *1 (E.D. Pa. Apr. 29, 1992) (describing unsuccessful attempts to have the United States Embassy and the defendant's Saudi Arabian employer assist in service of a defendant residing in Saudi Arabia); John D. Shipman, *Taking Terrorism to Court*, 86 N.C. L. REV. 526, 548 (2008) ("Saudi Arabia's legal system—premised on a complex morass of Islamic law—provides very little guidance in[] efforts to serve process within the Kingdom."). Therefore, the only practicable methods of service in Saudi Arabia are by mail or "by any other means." FED. R. CIV. P. 4(f)(2)(C)(ii), 4(f)(3).

## 2.   *Service of a Saudi Arabian Corporation Via Mail Is Proper.*

Rule 4(f) allows for service of a foreign defendant "by other means not prohibited by international agreement." FED. R. CIV. P. 4(f)(3). It "is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an

---

[7] Personal service by a process server is not a recognized means of serving a foreign corporation. FED. R. CIV. P. 4(f)(2)(C)(i). Even if personal service were acceptable under U.S. law, it is unclear whether such service is permissible under Saudi Arabian law. *See* Australian Administrative Law Branch, Service of Documents Abroad – Saudi Arabia, *available at* http://www.ag.gov.au/www/agd/agd.nsf/Page/Internationalcivilprocedure_ServiceofDocuments Abroad_SaudiArabia ("""[T]he position in Saudi Arabia relating to service by private agent is not known. Accordingly, private agent should not be used."""). Moreover, courts regularly find that personal service in Saudi Arabia is both impracticable and physically dangerous to the process server. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2010 WL 2484411, *26 (S.D.N.Y. June 17, 2010) ("Plaintiffs advised that the process server hired to serve some of the defendants was apparently murdered during his attempts to complete service of process for one of the instant lawsuits."); *Ehrenfeld*, 2005 WL 696769, at *2 (discussing declaration from process server that it is "extremely difficult to identify someone who would be willing to attempt personal service on Defendant in Saudi Arabia").

international defendant." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Thus, courts have authorized several alternative methods of service, including service by publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, delivery to the defendant's United States subsidiary, telex, and e-mail. *Id.* at 1016 (collecting cases). In addressing Saudi Arabian defendants, courts have found that service by alternate means was appropriate where service could not otherwise be affected. *See e.g., Ehrenfeld*, 2005 WL 696769, at *2 (finding service by regular mail to be appropriate); *Tinicum Props. Assocs.*, 1992 WL 99590, at *1.[8] Notably, the 2007 Cristal-Millennium acquisition agreement, which is governed by New York law, includes a provision stating that Cristal "agrees that service of process upon it may be effected by mailing a copy thereof by registered or certified mail (or any other substantially similar form of mail) to it at its address" in Saudi Arabia. Ex. M, Sale and Purchase Agreement at Section 11.8.

Cristal agreed to be served via mail in the 2007 Cristal-Millennium acquisition agreement, Plaintiffs served Cristal by mail at its Saudi Arabian headquarters, and Cristal acknowledged actual or constructive notice by responding to the SAC with a motion to dismiss. *See Ehrenfeld*, 2005 WL 696769, at *2 (permitting service under nearly identical circumstances); *Tinicum Props. Assocs. Ltd.*, 1992 WL 99590, at *2-*3 (same); *Hollow*, 747 N.Y.S.2d at 705 (same); *In re Terrorist Attacks*, 2010 WL 2484411, at *27 (same); Ex. M, Sale and Purchase Agreement at Section 11.8.[9] Service on Cristal under Rule 4(f)(3) was therefore

---

[8] Courts have also permitted service via other alternate methods on Saudi Arabian parties under Rule 4(f)(3). *Juniper Networks, Inc. v. Bahattab*, No. 07-cv-1771, 2008 WL 250584, at *1 (D.D.C. Jan. 30, 2008) (permitting service via email on Saudi Arabian individual named in patent infringement suit after service via FedEx and personal service were unsuccessful); *Hollow v. Hollow,* 747 N.Y.S.2d 704, 705 (N.Y. Sup. Ct. 2002) (permitting service directed to the defendant's last known e-mail address).

[9] If the Court determines that Plaintiffs' allegations are insufficient to survive Cristal's motion, Plaintiffs respectfully request leave to serve Cristal via an alternative method of service such as delivery to the defendant's attorney, e-mail, or publication. *See Rio Props.*, 284 F.3d at 1016.

proper.[10]

## B. Plaintiffs Perfected Service on Cristal through Service on Millennium

Rule 4(e)(1) provides that a defendant "may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). "California law provides that service of process may be effected on a corporation by, among other means, delivering a copy of the summons and the complaint to "a general manager" of the corporation." *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1074 (C.D. Cal. 2013) (citing CAL. CIV. P. CODE. § 416.10(b)). This "'include[s] [ ] any agent of the corporation "of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made"''" and can include a corporation's subsidiary. *Id.* (quoting *Gibble v. Car–Lene Research, Inc.*, 67 Cal. App. 4th 295, 313 (1998)). Maryland allows for service on a corporation through "the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process." MD. RULES 2-124(d). Federal courts have also consistently recognized that a subsidiary may be a parent corporation's agent at law for service of process where the subsidiary is the agent or alter ego of the parent.[11]

---

[10] The court in the direct purchaser case "assume[d], but d[id] not hold," that this manner of service was effective, finding that the directs "essentially complied with Rule 4(f)(2)(C)(ii) which prescribes service via mail to foreign corporations." *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 795-96 (D. Md. 2011).

[11] *See, e.g.*, *Lisson v. ING GROEP N.V.*, 262 Fed. Appx. 567, 570 (5th Cir. 2007) (holding that service would have been proper if the served American entity was determined to be a domestic subsidiary and remanding for further findings of fact); *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Wakefield Indus., Inc.*, 699 F.2d 1254, 1259 (D.C. Cir. 1983) ("While the relationship of parent and subsidiary alone would not suffice . . . where the two corporations are not really separate entities, service on the parent will reach a foreign subsidiary."); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 515-16 (D.N.J. 2008) (collecting cases); *Potts v. Dyncorp Intern., LLC*, No. 3:06-cv-124, 2007 WL 899040, *1 (M.D. Ala. Mar. 23, 2007) (concluding that service on a parent corporation is sufficient to reach a foreign subsidiary when an alter ego or instrumentality situation is present); *Blades v. Ill. Central R. Co.*, 2003 WL 1193662, at *2 (E.D. La. Mar. 12, 2003) ("[W]here the subsidiary is the agent or alter ego of the parent, service upon

"The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." "[C]ourts have permitted the imputation of contracts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself."

*Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, No. 13-cv-2700, 2014 WL 5847440, at \*8 (S.D. Cal. Nov. 12, 2014) (quoting *Unocal*, 248 F.3d at 928). "An agency relationship, like an alter ego relationship, 'is typified by parental control of the subsidiary's internal affairs or daily operations.'" *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1115 (S.D. Cal. 2011) ("*Hydroxycut*") (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001)). "[T]he alter-ego test is met when "(1) that there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in injustice." *United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1066 (N.D. Cal. 2012) (quoting *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011) *rev'd sub nom. Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)).[12] "As to the first prong, a plaintiff must show that the parent company exercises such high degree of control that the subsidiary is

---

the subsidiary can be effective against the parent."); *Fairfield Line, Inc. v. Pedigree, Inc.*, No. 88-cv-100, 1988 WL 156712, 2 (S.D. Iowa Oct. 18, 1988) (finding service proper because the parent-subsidiary relationship made it more than reasonably certain that the American subsidiary would turn over the process served on it to its foreign parent); *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95, 101 (S.D. Fla. 1985) (service upon the subsidiary provides service on the foreign parent where that parent exercises control of the subsidiary); *Heise v. Olympus Optical Co.*, 111 F.R.D. 1, 6 (D. Ind. 1986) (service of an American subsidiary's president was proper service upon the foreign parent).

[12] *Daimler AG v. Bauman* is inapplicable here. 134 S. Ct. 746 (2014). First, the jurisdictional issue was decided only after the plaintiff was permitted jurisdictional discovery. *Id.* at 751. Second, there was a notable "absence of any California connection to the atrocities, perpetrators, or victims described in the complaint." *Id.* Instead, the foreign plaintiffs sought to hold a foreign company vicariously liable for the foreign conduct of a foreign subsidiary. *Id.* at 752. Third, the foreign plaintiffs had to establish sufficient contacts between the foreign defendants and California, while in this case the contacts can be with the United States as a whole.

reduced to 'mere instrumentality.'" *Bui v. Golden Biotechnology Corp.*, No. 13-cv-04939, 2014 WL 4072112, at *3 (N.D. Cal. Aug. 14, 2014) (quoting *Unocal Corp.*, 248 F.3d at 926).

> [T]he court looks to the totality of the relationship between the parent and its subsidiaries. Factors courts have considered include whether the parent has the capacity to influence the subsidiary's major business decisions, whether the parent and subsidiary have the same officers and directors, whether the parent and subsidiary maintain separate books and accounts, whether an integrated sales system exists between the parent and subsidiary, and whether the parent and subsidiary present a common marketing image.

*United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 61-62 (D.D.C. 2004) (citing *MCI Communications Corp. v. AT&T,* No. 79-cv-1182, 1983 WL 1881, at *7 (D.D.C. Oct. 4, 1983)). "[W]here a parent corporation uses its subsidiary "as a marketing conduit" and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied." *Unocal Corp.*, 248 F.3d at 926 (citation omitted).

### 1.   Plaintiffs' Allegations Demonstrate an Alter-Ego and/or Agency Relationship.

Applying an alter ego test similar to the Ninth Circuit's, *Dewey v. Volkswagen AG* analyzed whether an American subsidiary was the alter ego and agent of its foreign parent. 558 F. Supp. 2d at 515-516. The court found that (1) the foreign parent owned 100 percent of the subsidiary's stock, (2) the subsidiary was the sole authorized U.S. importer and distributor of the foreign parent's products, (3) the foreign parent held the power to appoint the subsidiary's president and CEO, and (4) the foreign parent substantially controlled the subsidiary. *Id.* at 513. Based on this relationship, the foreign parent could not do business in the United States absent its wholly owned subsidiary. *Id.* at 514. Thus, the Court found that "the subsidiary [wa]s doing business in the forum that would otherwise have to be done in the forum by the parent" and was its agent. *Id.*

Plaintiffs here, like in *Dewey*, allege (1) that Millennium is a wholly owned U.S. subsidiary of Cristal, (2) that Millennium is "the primary U.S. importer and distributor of Cristal's products," (3) that Cristal plays a direct role in approving Millennium's significant business decisions, and (4) that Cristal has exerted considerable control over Millennium's activities and operations. SAC ¶ 50. Plaintiffs also offer evidence showing that Cristal and

Millennium share the same operational headquarters, commercial offices, and research center in Maryland; two plants in Ohio; and a headquarters, manufacturing facility, and research center for international titanium powder in Illinois. *Id*.; *see also supra* Section II.C. Cristal, in short, "could not do business in the United States absent its wholly owned subsidiary Millennium." *Id.*

Cristal repeatedly attempts to reduce the agency test to mere corporate formalities such as whether the companies maintain separate books or separate accounting procedures, claiming that courts have found such separateness "dispositive." The cases that Cristal cites, however, looked beyond mere corporate formalities and instead look for *any* indicia of control. In *Mylan Laboratories v. Akzo, N.V.*, the court did not rely upon the presence or absence of separate corporate formalities but instead based its holding on the absence of any indicia of control. The foreign parent had no ownership interest in the U.S. subsidiary; was "rigidly separated" from the U.S. subsidiary; did not exert any control over the marketing, purchasing, pricing, management, or operating policies of the U.S. subsidiary; and had its own manufacturing facilities, personnel, and managing executives. 2 F.3d 56, 62 (4th Cir. 1993) (emphasis added). It maintained no offices, telephone listings, mailing address, or bank accounts in Maryland and did "no business" in the United States. *Id.* at 63. In *Hickory Travel Systems, Inc. v. TUI AG*, the plaintiffs failed to "show[] that management structures [we]re interchangeable and [] made only admittedly speculative claims, without any evidentiary support, that TUI AG is involved in the day-to-day management of its subsidiaries." 213 F.R.D. 547, 554 (N.D. Cal. 2003). And in *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, issued before the current version of Rule 4 came into effect, the plaintiffs did not allege (1) that the subsidiary acted as the primary U.S. importer and distributor of the parent's products; (2) that the parent played a direct role in approving the subsidiary's significant business decisions; (3) that the parent exerted considerable control over the subsidiaries' activities and operations; or (4) that the entities shared headquarters, commercial offices, research centers, a manufacturing facility, and a plant

in the jurisdiction.[13] 607 F. Supp. 227, 237-40 (D. Del. 1984).

Plaintiffs demonstrate many indicia of control. Cristal has a direct role in approving Millennium's significant business decisions and exerts considerable control over Millennium's activities and operations. SAC ¶ 50; *see also supra* Section II.C. It has shared headquarters, commercial offices, research centers, a manufacturing facility, and a plant in the United States. SAC ¶ 50; *see also supra* Section II.C. Plaintiffs offer detailed documentary and testimonial evidence that Cristal has significant involvement in Millennium's business, approving Titanium Dioxide price increases and other business decisions, meeting with customers ████████████ ████████████████ stationing high ranking executives at Millennium's offices in Maryland, and sharing other resources ████████████████████ *See supra* Section II.C. Moreover, as in *Falco v. Nissan N. Am. Inc.*, Millennium was the "primary U.S. importer and distributor of Cristal's products." *Compare* SAC ¶ 50 *and* 987 F. Supp. 2d at 1077. Since Millennium is the alter ego and agent of Cristal, Plaintiffs properly served Cristal by serving Millennium's registered agent.

### 2. *Additional Evidence Supports an Alter-Ego and/or Agency Relationship.*

Plaintiffs present abundant facts in this brief demonstrating that Cristal exerts "considerable control" over Millennium and its business decisions and that the two companies

---

[13] Cases cited by Cristal are readily distinguishable. *Contra Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) ("Plaintiffs present no evidence that Total is involved in the day-to-day operations of its sub-subsidiaries."); *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 984-85 (C.D. Cal. 2013) ("Plaintiff cites no contradictory evidence; he appears simply to assume the entities are indistinguishable based on the similarity of their names, and on this basis to argue that in combination, they operate as an agent for VTB Bank."); *Orion Tire Corp. v. Gen. Tire, Inc.*, No. 92-cv-2391, 1992 WL 295224, at *1 (C.D. Cal. Aug. 17, 1992) ("no allegation that Continental AG completely dominates General" and no evidence of contacts with forum); *Rheumatology Nurses Soc'y, Inc. v. Phoenix Grp. Holdings, LLC*, No. 008-cv1675, 2009 WL 249233, at *3 (D. Md. Jan. 8, 2009) (CEO only visited Maryland three times and communicated with subsidiary regarding one grant application); *Fleetwood v. B.C.E., Inc.*, No. 2003-cv-2125, 2004 WL 903754, at *5 (D. Md. Apr. 28, 2004) (plaintiff offered no evidence contradicting affidavit of defendant); *Stillman v. Camden Marine Corp.*, No. 02-cv-2474, 2004 WL 212947, at *2 (D. Md. Feb. 2, 2004) (applying stricter Maryland standard and finding management of some financial transactions and use of brands insufficient).

are fully integrated with one another and operate as essentially one entity. *See Mylan*, 2 F.3d at 61. Since 2007, Cristal has integrated Millennium's business and operations into its own and imposed a unified corporate identify. *See supra* Section II.C.1. Cristal now controls a wide range of Millennium's business decisions, including exercising control over Millennium's sales, marketing, and Titanium Dioxide pricing activities. *See supra* Section II.C.4. Plaintiffs also present facts showing overlapping functions and operations of Cristal and Millennium that are indicative of Cristal's substantial control over its Maryland-based subsidiary. *See supra* Section II.C. These supporting facts show a significant "level of interdependence" between Cristal and Millennium. *Mylan*, 2 F.3d at 61. Where, as here, the operations of a parent and its subsidiary are sufficiently integrated, piercing of the corporate veil between a parent and its subsidiary is justified. *See Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 901 (N.D. Cal. 2009) (finding issues of fact as to alleged agency relationship in light of evidence that "NTC expressed a desire that NTC USA undertake certain pricing and sales on NTC's behalf, whether NTC USA agreed to do so, and whether NTC had sufficient control over pricing and sales of NTC USA," including e-mails from the parent's executives directing pricing).

The facts similarly show that Cristal's top-down strategy of integration allows it to exert considerable control over Millennium's compliance with standardized manufacturing and safety policies. *See supra* Section II.C.5; *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 718 (C.D. Cal. 1996) (finding unity of interest where parent made various business decisions for the subsidiary). In addition, there are facts indicating overlap between Cristal and Millennium's executive management. *See supra* Section II.C.2-4. There is also evidence suggesting that Cristal exercises control over global hiring practices, another factor favoring piercing the corporate veil in this case. *See supra* Section II.C.; *Hydroxycut*, 810 F. Supp. 2d at 1120-21 (piercing the corporate veil for jurisdictional purposes upon showing that foreign parent exercised control over its subsidiary business decisions and met with its subsidiaries clients).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.     The Livingston Declaration Fails to Undermine Plaintiffs' Allegations.

Cristal submits a two-page declaration that it claims establishes Cristal and Millennium's separateness. *See* Declaration of Samuel H. Livingston ("Livingston Dec.") (Dkt. No. 124-1). Mr. Livingston's averments focus on mere corporate formalities rather than actual indicia of control. He asserts that Millennium has its own articles of incorporation and by-laws; its own corporate records, bank accounts, payroll, and financial plans; pays federal, state and local taxes on its own behalf; and funds its own utility bills, debts, and other expenses. *Id.* ¶¶ 4, 6, 7. Even assuming these allegations are true, the presence or absence of such corporate formalities is not a dispositive factor in the agency test. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (2000) (recognizing that an agency relationship exists "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, *notwithstanding the maintenance of separate corporate formalities*") (emphasis added). Second, Cristal's allegation that Millennium "owns its own manufacturing plants" is directly contradicted by the fact that Cristal, not Millennium, claims ownership of "Millennium's" manufacturing plants in Baltimore, Maryland; Ashtabula, Ohio; and Ottawa, Illinois. *Compare*   Livingston Dec. ¶ 6 *with supra* Section II.C.5. Third, it is irrelevant whether Cristal has its own employees. *See* Livingston Dec. ¶ 8. Instead, the issue is whether Cristal exercises direct or indirect control over those employees through formal or informal means. *See, e.g.*, *Bui*, 2014 WL 4072112, at *3 (discussing the degree of control a parent must assert over its subsidiary to pierce the corporate veil); *supra* Section II.C (demonstrating Cristal's control over Millennium). Fourth, the assertion that Millennium "is not authorized to accept service of process on behalf of Cristal" is a legal conclusion that Mr. Livingston is not authorized to make. Millennium can and did accept service for the properly executed summons issued by the Clerk of the Court. *See* Affidavit of Service (Dkt. 119). In short, none of the assertions in Mr. Livingston's declaration negate Plaintiffs' showing that Millennium is the alter ego and/or agent of Cristal, and Plaintiffs properly served Cristal by

serving Millennium.

**C.**   **The Court Can Exercise Personal Jurisdiction over Cristal for the Actions of its Alter Ego and/or Agent Millennium Directed toward Maryland.**

           **1.**   ***Plaintiffs Have Made A Prima Facie Showing of Personal Jurisdiction Over Cristal.***

      When courts decide Rule 12(b)(2) motions without an evidentiary hearing, "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In determining whether a plaintiff has sufficiently made that showing, "a district court shall accept as true uncontroverted allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." *Bui v. Golden Biotechnology Corp.*, No. 5:13-cv-04939, 2014 WL 4072112, at *2 (N.D. Cal. Aug. 14, 2014) (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir.2010)). "[A] court may consider declarations and discovery materials. *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996) (citing *Data Disc*, 557 F.2d at 1289 n. 5). For the reasons set forth below, Plaintiffs have made a sufficient showing and have satisfied their burden under this pleading standard. At the very least, Plaintiffs' allegations are enough to warrant limited jurisdictional discovery regarding Cristal's relationship with its Maryland subsidiary.

           **2.**   ***Cristal has sufficient contacts with the United States and Maryland.***

      The Clayton Act authorizes worldwide service of process on antitrust defendants. 15 U.S.C. § 22.[14] "A statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004). "'[W]hen a statute authorizes nationwide service of process, national contacts analysis is appropriate. In such cases, "due process demands [a showing of

---

[14] "[T]he special venue provision of Section 12 is supplemented by the general venue provisions of § 1391 for federal antitrust plaintiffs." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004). In either event, "under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue in that court." *Id.* at 1179-80.

minimum contacts with the United States] with respect to foreign defendants before a court can assert personal jurisdiction."'" *Id*. at 1180 (quoting *Go–Video, Inc. v. Akai Electric*, 885 F.2d 1406, 1416 (9th Cir.1989)) (alteration in original). "[T]he inquiry to determine 'minimum contacts' is thus 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'" *Id*. (finding that Central District of California had jurisdiction, pursuant to Section 12 of the Clayton Act, over Virginia Corporation).

### a.   This Court has specific jurisdiction over Cristal.

The Ninth Circuit looks at three factors to determine whether a defendant has sufficient minimum contacts to establish specific jurisdiction:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). "While all three requirements must be met, this court has stated that in its consideration of the first two prongs, '[a] strong showing on one axis will permit a lesser showing on the other.'" *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d at 742 (quoting *Yahoo! Inc.*, 433 F.3d at 1210 (en banc)).

To satisfy the first factor, "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 968 (C.D. Cal. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). An "intentional act" is "'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *Id*. at 969 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004)). The evidence presented above highlights numerous intentional

acts, including the review and approval of pricing decisions, contracts, and other business decisions; the oversight of production facilities; and trips to the United States by Cristal's president to meet with customers ███████████████████████ *See supra* Section II.C.

The second element "'is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."'" *CYBERsitter, LLC*, 805 F. Supp. 2d at 970 (quoting *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir.2007)). And the "harm" element "'is satisfied when defendant's intentional act has "foreseeable effects" in the forum.'" *Id.* at 973 (quoting *Brayton*, 606 F.3d at 1131). Cristal's review and approval of Millennium's price increases falls squarely within this definition. The corporate parent undoubtedly knew that ████████████████ and other customers were American paint manufacturers and that its price increases would affect the price of those clients' products purchased by Plaintiffs. In fact, Plaintiffs expressly allege that market analysts, Sherwin-Williams, and Defendant Kronos made public statements about the manufacturer passing on its increased Titanium Dioxide costs to consumers such as Plaintiffs. SAC ¶¶ 173-74.

"'[P]urposeful availment is satisfied even by a defendant whose only "contact" with the forum state is the "purposeful direction" of a *foreign* act having *effect* in the forum state.'" *CYBERsitter, LLC* , 805 F. Supp. 2d at 970 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). First, Cristal does not proffer any evidence contravening Plaintiffs' allegations that it sells Titanium Dioxide indirectly in the United States to Plaintiffs – an allegation that the Court must take as true insofar as it remains uncontroverted by the defendant's affidavit. SAC ¶ 48; *Schwarzenegger*, 374 F.3d at 800 (providing that "uncontroverted allegations in the complaint must be taken as true") (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)). Second, Plaintiffs' claims arise directly from, as evidenced in Section II.C, *supra*, Cristal's approval of Titanium Dioxide price increases by Millennium, this Court's exercise of specific jurisdiction over the defendant

1   is more than reasonable. However, this conduct is not the only basis for this Court's exercise of

2   personal jurisdiction over Cristal.

3                    This Court has general jurisdiction over Cristal.

4        "For general jurisdiction to exist over a defendant, the defendant must engage in

5   'substantial' or 'continuous and systematic' contacts that approximate physical presence in the

6   forum state."^b. *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1016 (N.D.

7   Cal. 2005). "Factors to be taken into consideration are whether the defendant makes sales,

8   solicits or engages in business in the state, serves the state's markets, designates an agent for

9   service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086. "A

10  court, however, should 'focus upon the "economic reality" of [a defendant's] activities rather

11  than a mechanical checklist.'" *Coremetrics, Inc.*, 370 F. Supp. 2d at 1017 (quoting *Gates*

12  *Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir.1984)).

13       Plaintiffs have presented evidence that Cristal assigned corporate officers to the

14  Millennium office in Maryland; reviewed and approved Titanium Dioxide pricing decisions,

15  contracts, and other business decisions; ███████████████████ maintained

16  operational headquarters in Maryland; and aimed to fully integrates its business with that of

17  Millennium. *See supra* Section II.C.

18  ████████████████████████████████████████████   *See*

19  *supra* Section II.C.3. ██████████████████████

20  ████████  *See supra* Section II.C.4. Finally, Cristal and Millennium shared a number of

21  executives. *See supra* Section II.C.2.

22       This evidence is remarkably similar to that presented in the landmark Supreme Court

23  case *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952). In *Perkins*, a Philippine

24  company's mining operations were halted during World War II, and the company's president

25  returned to the United States. *Id*. at 447.

26       There he maintained an office in which he . . . did many things on behalf of the
         company. He kept there office files of the company. He carried on there [*sic*]

27       correspondence relating to the business of the company and to its employees . . . .

28

1
2

> Several directors' meetings were held at his office or home in Clermont County. From that office he supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines.

3

*Id.* at 447-48. Based on these facts, the Supreme Court found that "he carried on in Ohio a

4

continuous and systematic supervision of the necessarily limited wartime activities of the

5

company." So too should this Court find Cristal's significant contacts with Maryland and the

6

United States sufficient to exercise general jurisdiction over the defendant.

7

> c. Millennium's contacts with the United States may be imputed to Cristal.

8

"[A] subsidiary's contacts may be imputed to the parent where the subsidiary is the

9

parent's alter ego or general agent." *Modesto City Sch. v. Riso Kagaku Corp.*, 157 F. Supp. 2d

10

1128, 1132 (E.D. Cal. 2001) (citing *Doe v. Unocal*, 248 F.3d 915, 925 (9th Cir.2001)).

11

Applying the alter ego and agency tests set forth above, it is clear that Plaintiffs have made a

12

sufficient *prima facie* showing of personal jurisdiction over Cristal. *See, supra*, Section II.C.

13

Plaintiffs' allegations and the supporting facts show "share 'such unity of interest and

14

ownership' that the companies' separateness no longer exists and 'failure to disregard [their

15

separate identities] would result in fraud or injustice.'" *Nachman v. Regenocyte Worldwide,*

16

*Inc.*, No. 13-cv-00319, 2014 WL 537646, at *4 (D. Nev. Feb. 5, 2014) (quoting *Unocal Corp.*,

17

248 F.3d at 926). The Court may therefore pierce the corporate veil and impute Millennium's

18

contacts to Cristal for jurisdictional purposes. *See id.* (imputing contacts where, among other

19

things, employees and officers shared the same offices and conducted business at the same

20

address); *Pimal Prop., Inc. v. Capital Ins. Grp., Inc.*, No. 11-cv-02323, 2012 WL 608392, at *5

21

(D. Ariz. Feb. 27, 2012) (finding control where, among other things, the plaintiff alleged that

22

the parent substantially controls the operations and finances of the subsidiary).

23

Plaintiffs have alleged Millennium's role as the primary U.S. importer and distributor of

24

Cristal's products. Cristal merely claims these allegations are "conclusory" and insufficient to

25

pass muster under *Twombly*. But the evidence described in Section II.C is anything but

26

conclusory. As neither the Livingston Affidavit nor Cristal's brief offers any contravening

27

evidence, nor has Cristal itself submitted any affidavits offering contrary proof, the Court

28

should presume the truth of this allegation of Cristal's control over Millennium and impute Millennium's contacts to Cristal.

### D. Plaintiffs Alternatively Request Limited Jurisdictional Discovery of Cristal's Control over Millennium.

Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (finding district court abused discretion in denying jurisdictional discovery in light of evidence that parent and subsidiary shared officers, employees, and offices and that parent directed certain activity of the subsidiary). Plaintiffs here "dispute pertinent facts bearing on the question of jurisdiction" and Cristal's control over Millennium. *In re W. States Wholesale Natural Gas Antitrust Litig.*, No. 2:03-cv-01431, 2007 WL 4284759, at *9 (D. Nev. Nov. 28, 2007). Given these allegations, Plaintiffs should not be forced to accept the Livingston Declaration at face value. *See id.* (allowing for jurisdictional discovery where the plaintiff "alleged the parent company Defendants wholly controlled and dominated their subsidiaries, both in their business in Colorado generally and specifically with respect to the alleged price fixing conspiracy . . . [and that] the parent company Defendants set strategic policies regarding natural gas reporting which their affiliates implemented at an operational level"). Should the Court determine that Plaintiff's allegations are insufficient to survive Cristal's motion to dismiss, Plaintiffs respectfully request that any dismissal be without prejudice and that Plaintiffs be granted limited jurisdictional discovery of the relationship between Cristal and Millennium.

## IV. CONCLUSION

The allegations in Plaintiffs' SAC combined with the evidence set forth herein demonstrate that (1) Cristal was properly served via FedEx and through Millennium, (2) Cristal has substantial, direct, and continuous contacts with the United States, and (3) Millennium is an alter ego and agent of Cristal. Accordingly, Plaintiffs respectfully request that this Court deny Cristal's motion to dismiss. In the alternative, Plaintiffs request an opportunity to conduct jurisdictional discovery as to the issues raised herein.

1   Dated: December 22, 2014                    Respectfully submitted,

2

3                                               PRATT & ASSOCIATES

4                                               */s/ Ben F. Pierce Gore*
                                                Ben F. Pierce Gore (SBN 128515)
5                                               1871 The Alameda, Suite 425
                                                San Jose, California 95126
6                                               Telephone:   (408) 369-0800
                                                Facsimile:   (408) 369-0752
7                                               pgore@prattattorneys.com

8
                                                *Liaison Counsel for Plaintiffs and the*
9                                               *Putative Classes*

10
    Don Barrett (admitted *pro hac vice*)       CUNEO GILBERT & LADUCA LLP
11  BARRETT LAW GROUP, P.A.                     Jonathan W. Cuneo (admitted *pro hac vice*)
    P.O. Box 927                                Joel Davidow (*pro hac vice* to be filed)
12  404 Court Square                            Katherine Van Dyck (admitted *pro hac vice*)
    Lexington, MS 39095                         507 C Street, N.E.
13  Telephone: (662) 834-2488                   Washington, DC 20002
14  dbarrett@barrettlawgroup.com                Telephone:    (202) 789-3960
                                                Facsimile:    (202) 789-1813
15                                              jonc@cuneolaw.com
                                                joel@cuneolaw.com
16                                              kvandyck@cuneolaw.com

17
    Charles F. Barrett  (admitted *pro hac vice*)   Benjamin D. Elga (*pro hac vice* to be filed)
18  CHARLES BARRETT, P.C.                       CUNEO GILBERT & LADUCA, LLP
    6518 Highway 100, Suite 210                 16 Court Street, Suite 1012
19  Nashville, TN 37205                         Brooklyn, NY 11241
    Telephone:   (615) 515-3393                 Telephone: (202) 789-3960
20  Facsimile:    (615) 515-3395                belga@cuneolaw.com
    Email: charles@cfbfirm.com
21

22            *Interim Co-Lead Counsel for Plaintiffs and the Putative Classes*

23  Thomas P. Thrash (admitted *pro hac vice*)  Dewitt Lovelace
24  Marcus N. Bozeman                           LOVELACE & ASSOCIATES, P.A.
    THRASH LAW FIRM, P.A.                       12870 US Hwy 98 West, Ste. 200
25  1101 Garland Street                         Miramar Beach, FL 32550
    Little Rock, AR 72201                       Telephone: (850) 837-6020
26  Telephone: (501) 374-1058                   dml@lovelacelaw.com
    tomthrash@sbcglobal.net
27  bozemanmarcus@sbcglobal.net

28
    OPPOSITION TO CRISTAL MOTION TO DISMISS
    CASE NO. 13-cv-01180-BLF                                        Page 26 of 27

1

2   Shawn M. Raiter                          Phillip Duncan
    LARSON • KING, LLP                       Richard Quintus
3   2800 Wells Fargo Place                   DUNCAN FIRM, P.A.
    30 East Seventh Street                   900 S. Shackleford, Suite 725
4   St. Paul, MN 55101                       Little Rock, AR 72211
    Telephone: (651) 312-6500                Telephone: (501) 228-7600
5   sraiter@larsonking.com                   phillip@duncanfirm.com
                                             richard@duncanfirm.com
6   Gerard V. Mantese
7   MANTESE HONIGMAN ROSSMAN &
    WILLIAMSON, P.C.
8   1361 E. Big Beaver Road
    Troy, Michigan 48083
9   Telephone:    (248) 457-9200
    Facsimile:    (248) 457-9201
10  gmantese@manteselaw.com

11                    *Attorneys for Plaintiffs and the Putative Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28