**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JAN HARRISON, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>E. I. DUPONT DE NEMOURS AND COMPANY, et al.,<br><br>  Defendants. | Case No. 13-cv-01180-BLF<br><br>**ORDER DENYING RULE 12(b)(1) MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART RULE 12(b)(6) MOTION TO DISMISS; AND DIRECTING DEFENDANTS TO ANSWER THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>[Re: ECF 167] |

In this indirect purchaser class action, Plaintiffs allege that Defendants conspired to and did fix the price of titanium dioxide sold in the United States in violation of federal and state antitrust laws, state consumer protection laws, and state common laws. Defendants move to dismiss Plaintiffs' Third Amended Class Action Complaint ("TAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of Article III standing and failure to state a claim, respectively.

For the reasons discussed below, Defendants' Rule 12(b)(1) motion is DENIED; their Rule 12(b)(6) motion is GRANTED IN PART without leave to amend and DENIED IN PART; and Defendants are directed to answer the TAC.

**I.  BACKGROUND**

The facts giving rise to this action have been set forth at length in prior orders and need not be repeated here except as relevant to the pending motions. Plaintiffs are nineteen individuals, residing in nineteen different states,[1] who purchased "Architectural Paint" for personal use. TAC ¶¶ 16-34, ECF 164. Architectural Paint is one of many categories of products containing titanium

---

[1] For ease of reference, the District of Columbia is referred to as a "state" herein.

dioxide, "the world's most widely used pigment for whiteness, brightness, and masking of colors." TAC ¶ 57. "There are no viable white pigment competitive substitutes for Titanium Dioxide in consumer products." TAC ¶ 59. Plaintiffs allege that Defendants E. I. DuPont De Nemours and Company, Huntsman International, L.L.C., Kronos Worldwide, Inc., and Millennium Inorganic Chemicals, Inc., along with their non-party co-conspirators, are the dominant suppliers of titanium dioxide in the United States. TAC ¶ 2. According to Plaintiffs, Defendants conspired to and did "manipulate, fix, raise, maintain, and stabilize prices at which Titanium Dioxide is sold in the United States." TAC ¶ 3. Plaintiffs allege that the artificially inflated prices of titanium dioxide were passed through to end-user consumers of products containing titanium dioxide, with the result that Plaintiffs paid higher prices for Architectural Paint than they would have paid in a competitive marketplace absent Defendants' price-fixing. TAC ¶ 5.

Plaintiffs bring this lawsuit individually and on behalf of consumers who purchased Architectural Paint in the United States during the alleged Class Period from January 1, 2002 "through such time as the anticompetitive effects of the Defendants' conduct ceased." The TAC asserts four claims: (1) violation of state antitrust statutes; (2) violation of state consumer protection statutes; (3) unjust enrichment; and (4) injunctive and equitable relief under § 1 of the Sherman Act, 15 U.S.C. § 1.

## II.   RULE 12(b)(1) MOTION

### A.   Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) raises a challenge to the Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Article III . . . gives the federal courts jurisdiction over only cases and controversies." *Public Lands for the People, Inc. v. United States Dep't of Agric.*, 697 F.3d 1192, 1195 (9th Cir. 2012) (internal quotation marks and citation omitted). "The oft-cited *Lujan v. Defenders of Wildlife* case states the three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability." *Id.* at 1195-96 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If these requirements are not satisfied, the action should be dismissed for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 109-10 (1998).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court also may consider affidavits containing further particularized allegations of fact supportive of Article III standing. *Id.* at 1067. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 1068 (internal quotation marks, citation, and brackets omitted). "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim." *Id.* "This is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Id.* (internal quotation marks and citation omitted). But "the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Id.* (internal quotation marks, citation, and brackets omitted).

**B.     Discussion**

Defendants seek dismissal of the TAC based upon Plaintiffs' asserted failure to satisfy the second of the *Lujan* factors, that Plaintiff's injury is "fairly traceable to the challenged conduct" of Defendants. *Public Lands*, 697 F.3d at 1195. The Court granted Defendants' prior motion to dismiss the Second Amended Complaint ("SAC") for lack of Article III standing on this precise ground. *See* Order dated August 11, 2015 ("Prior Order"), ECF 158. In the SAC, Plaintiffs asserted that Defendants fixed the price of titanium dioxide sold in the United States at artificially high levels; as a result, manufacturers of products in the "Architectural Coatings" market paid unfairly high prices for titanium dioxide; and those overcharges were passed through each level of

distribution to a Merchant Class and ultimately to a Consumer Class. While it found adequate Plaintiffs' allegations of conspiracy and price-fixing, the Court found inadequate Plaintiffs' conclusory assertion that the overcharges to manufacturers of Architectural Coatings were passed through to Plaintiffs and the classes they sought to represent. *See* Prior Order at 23. The Court held that assertion to be "without any factual support given the breadth of the defined market and the variation in the amount of titanium dioxide found in the expansive category of Architectural Coating products." *Id.* Noting that Plaintiffs had provided specifics regarding only a single paint product, the Court observed that, taken literally, Plaintiffs' definition of Architectural Coatings would encompass products containing only trace amounts of titanium dioxide. *Id.* Thus while observing that Plaintiffs might be able to establish Article III standing with respect to a more limited market – for example, the market for architectural paint – the Court concluded that Plaintiffs had failed to do so with respect to the market for Architectural Coatings. *Id.* at 25.

The Court also expressed concerns regarding Plaintiffs' intent to represent classes at different levels of the distribution chain, in particular, a Merchant Class and a Consumer Class. Prior Order at 24, ECF 158. While it did not rely upon that potential conflict in concluding that Plaintiffs had failed to allege facts showing Article III standing, the Court did question Plaintiffs' ability to quantify overcharges paid by the Merchant Class versus overcharges paid by the Consumer Class. *Id.* The Court expressed "grave reservations about Plaintiffs' ability to get any class certified in this action, let alone two separate classes that would be adverse to each other." *Id.*

Plaintiffs have cured those pleading defects in their TAC. Importantly, they have limited the relevant market to "Architectural Paint" as suggested by the Court in its prior order. *See* TAC at ¶ 1, ECF 164. Moreover, the TAC identifies the specific brand and product name of each paint purchased by each Plaintiff and, in some cases, discloses what percent of the paint constitutes titanium dioxide. TAC ¶¶ 16-34. Plaintiffs also have abandoned their damages claims on behalf of the Merchant Class and now seek to recover overcharges only on behalf of a consumer class of persons who purchased Architectural Paint for personal use and not for resale. *See* TAC ¶ 47. The narrowing of the market and the elimination of the Merchant Class simplifies Plaintiffs' task

of tracing considerably.

Plaintiffs also allege the following facts relevant to tracing: titanium dioxide is the costliest component of Architectural Paint, representing fifty percent of the cost of "flat coatings" and thirty-three percent of the cost of "high gloss coatings"; as a result, Architectural Paint manufacturers cannot absorb fluctuations in the cost of titanium dioxide, and an increase in the price of titanium dioxide causes an increase in the price of Architectural Paint; the Architectural Paint market has many characteristics that economic theory indicates will lead to a near one hundred percent pass-through rate of cost increases; and this theory is confirmed by articles and manufacturers' statements published between 2010 and 2012 stating that recent increases in paint prices were due to increases in the cost of titanium dioxide. TAC ¶¶ 159-162. Plaintiffs include in the TAC a graph comparing the price of titanium dioxide and the price of Architectural Paint and Coatings, and for the most part an increase in one is mirrored by an increase in the other. *See* TAC ¶ 158.

The Court concludes that these allegations satisfy the traceability requirement for Article III standing. It finds unpersuasive Defendants' contentions that the Architectural Paint market actually is no narrower than the Architectural Coatings market previously alleged, and that even if the market has been narrowed somewhat, it is still too broad for tracing to be possible or practical. While Defendants are correct that the definition of Architectural Paint provided in the TAC could be read to include products besides paint, *see* TAC ¶ 1 n.1, *these* Plaintiffs have alleged facts showing that they purchased *paint* containing significant quantities of titanium dioxide. The relevant question is whether the requisite case or controversy has been established between the named plaintiffs and the defendants, not between unidentified putative class members and the defendants. *See Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). Thus the fact that unnamed class members theoretically might assert claims based upon products other than paint is not fatal to Plaintiffs' Article III allegations.

Defendants argue that Plaintiffs' traceability allegations are insufficient because their graph shows that for some time periods, the increase in the price of titanium dioxide was not mirrored by an increase in the price of Architectural Paint and Coatings. Defendants also argue

that Plaintiffs' allegations regarding the methods by which they will prove pass-through of the overcharges are too vague to support Article III standing. The Court concludes that these arguments more appropriately should be raised in the context of class certification or summary judgment. Plaintiffs are not required to *prove* their tracing case at the pleading stage or to satisfy *Iqbal* and *Twombly* standards in order to establish Article III standing. *See Maya*, 658 F.3d at 1068. To the contrary, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* The Court concludes that Plaintiffs have alleged that they suffered an injury – payment of inflated prices for Architectural Paint – and have alleged facts giving rise to a reasonable inference that their injury is traceable to Defendants' alleged price-fixing conspiracy. The Court leaves for another day whether Plaintiffs' evidence and experts will be sufficient to establish the truth of their allegations.

Accordingly, Defendants' Rule 12(b)(1) motion to dismiss for lack of Article III standing is DENIED.

### III. RULE 12(b)(6) MOTION

#### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the

6

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Discussion

Defendants contend that Plaintiffs have failed to allege facts sufficient to state a claim under federal antitrust law or the antitrust laws of Iowa, Nebraska, New Mexico, or New York. Defendants also contend that all of Plaintiffs' claims pre-dating the applicable limitations periods are time-barred because Plaintiffs have not alleged facts sufficient to show delayed accrual or tolling of the limitations periods. Finally, Defendants contend that Plaintiffs have failed to state a claim for which relief may be granted under New York's General Business Law § 349.

#### 1. Antitrust Claims

Defendants assert that Plaintiffs' antitrust claims under federal law and the laws of Iowa, Nebraska, New Mexico, and New York are subject to dismissal for lack of antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters ("AGC")*, 459 U.S. 519 (1983). *AGC* sets forth factors that may be used by courts to determine "whether the plaintiff is a proper party to bring a private antitrust action," that is, whether the plaintiff has antitrust standing. *Id.* at 535 n.31. "Under *AGC*, courts consider (1) the nature of plaintiffs' injuries and whether plaintiffs were participants in the relevant markets; (2) the directness of the alleged injury; (3) the speculative nature of the alleged harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) (citing *AGC*, 459 U.S. at 536-39).

In its Prior Order addressing the SAC, the Court held that the *AGC* factors apply to Plaintiffs' claims under the Sherman Act § 1 and under the antitrust laws of Iowa, Nebraska, New Mexico, and New York.[2] Prior Order at 27, 34, ECF 158. The Court further held that the *AGC* factors were not satisfied as to those claims. *Id.* at 30, 36. Defendants argue that Plaintiffs have not cured those pleading deficiencies.

---

[2] With respect to Plaintiffs' Sherman Act § 1 claim, the Court determined that only the first three *AGC* factors apply, as the fourth and fifth factors address damages, which are not available under § 1. *See* Prior Order at 27.

#### a. First Factor

The first *AGC* factor examines the nature of the plaintiffs' injuries and whether the plaintiffs were participants in the relevant market. The Court discussed the pleading requirements for this factor at length in its prior order addressing Plaintiffs' SAC, concluding that the factor is satisfied if the plaintiffs participated in either the identical market as the price-fixed good or in a market that is "inextricably linked" to that market, for example, a market for products that incorporate the price-fixed good as a significant component. *See* Prior Order at 27-28, ECF 158. The Court also concluded that the market for a chemical compound may be inextricably linked to the market for goods incorporating that compound. *Id.* at 28. While it "acknowledge[d] that demonstrating the existence of an inextricably linked market might be easier when tracing a distinct, physical component through the chain of distribution, the Court perceive[d] no reason why titanium dioxide could not be traced based upon an ingredient list and formula for each product at issue in the context of a sufficiently narrowly defined market." *Id.* at 28-29. The Court determined, however, that the Architectural Coatings market alleged in the SAC was "simply too vast and ill-defined to be considered inextricably linked to the market for titanium dioxide." *Id.* at 29.

Plaintiffs have cured that deficiency in the TAC by narrowing the market to Architectural Paint and adding specific allegations linking that market to the market for titanium dioxide. As discussed above, the TAC alleges facts establishing or giving rise to reasonable inferences that Plaintiffs bought Architectural Paint containing significant amounts of titanium dioxide, TAC ¶¶ 16-34; titanium dioxide represents one-third to one-half of the cost of manufacturing Architectural Paint, TAC ¶ 159; and increases in the price of titanium dioxide result in increases in the price of Architectural Paint, TAC ¶¶ 158, 162-164. These allegations are sufficient to satisfy the first *AGC* factor for pleading purposes.

#### b. Second and Third Factors

Defendants argue, and this Court previously has noted, that analysis of the second and third AGC factors – the directness of the alleged injury and the speculative nature of the alleged harm –largely overlaps with the Article III analysis. *See* Defs.' Mot. at 13, ECF 167; Prior Order

8

at 29, ECF 158. When addressing these factors in the context of Defendants' motion to dismiss the SAC, the Court concluded that "because Plaintiffs' alleged market of Architectural Coatings is so vast and ill-defined, and because Plaintiffs do not allege what specific products within that market they purchased, Plaintiffs have not alleged facts showing that the Architectural Coatings market plausibly can be considered to be inextricably linked to the titanium dioxide market, or giving rise to a plausible inference that the alleged overcharges caused by Defendants' anticompetitive conduct were passed down the distribution chains to Plaintiffs." Prior Order at 35.

As discussed above, Plaintiffs now allege a narrower market of Architectural Paint; what specific paint products they purchased; and facts giving rise to a reasonable inference that the titanium dioxide market is inextricably linked with the Architectural Paint market such that an increase in the price of the former results in an increase in the price of the latter. *See* TAC ¶¶ 16-34, 158-164. Those allegations, in combination with Plaintiffs' allegations regarding Defendants' alleged price-fixing conspiracy and the pass-through of overcharges for titanium dioxide to consumer end-users, are sufficient to give rise to a reasonable inference that Defendants' conduct caused Plaintiffs actual harm in the form of higher prices for Architectural Paint. Thus the TAC satisfies the second and third *AGC* factors for pleading purposes.

### c. Fourth and Fifth Factors

The fourth and fifth *AGC* factors address risk of duplicative recovery and complexity in apportioning damages, respectively. When analyzing the SAC, the Court determined that these factors weighed against finding antitrust standing based upon "the risk of duplicate recovery and complexity of apportionment between indirect purchasers at different levels in the same distribution chains." Prior Order at 35, ECF 158. Plaintiffs have addressed that concern in the TAC by eliminating their damages claims on behalf of the Merchant Class and seeking to recover overcharges only on behalf of a consumer class of persons who purchased Architectural Paint for personal use and not for resale. *See* TAC ¶ 47.

Defendants argue that these factors nonetheless weigh against antitrust standing because "[c]alculation of damages in indirect purchaser suits is notoriously unwieldy and speculative given that the alleged overcharges have to be traced through all of the manufacturing, distribution, and

retail channels." Defs.' Mot. at 13, ECF 167. The concerns raised by Defendants are present in every indirect purchaser case. Other courts have found concerns regarding apportioning damages and accounting for duplicative recoveries insufficient to bar indirect purchaser cases when the other *AGC* factors have been satisfied. *See, e.g., In re Graphics Processing Units Antitrust Ltig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007). This Court likewise concludes that, given the sufficiency of Plaintiffs' allegations regarding the asserted price-fixing conspiracy and the pass-through of overcharges for titanium dioxide down the distribution chains to Plaintiffs, potential difficulties in calculating and apportioning damages do not constitute adequate reasons to bar Plaintiffs' state law indirect purchaser antitrust claims.

### d. Conclusion

For the reasons discussed above, Defendants' motion to dismiss Plaintiffs' federal and state law antitrust claims for lack of antitrust standing is DENIED.

### 2. Statute of Limitations

Defendants seek dismissal of all claims arising from conduct occurring outside the four-year limitations period applicable to Plaintiffs' federal claim and the three, four, and six year limitations periods applicable to Plaintiffs' state law claims.[3] This action was filed on March 15, 2013. *See* Compl., ECF 1. Plaintiffs seek relief for all persons who purchased Architectural Paint dating back to January 1, 2002. TAC ¶ 7. Thus, Defendants argue, Plaintiffs must allege facts showing delayed accrual or tolling in order to sue based on events pre-dating March 15, 2007 (for claims subject to a six-year limitations period), March 15, 2009 (for claims subject to a four-year limitations period), or March 15, 2010 (for claims subject to a three-year limitations period). Defendants assert that Plaintiffs have failed to meet that burden.

At the hearing, the Court clarified that Defendants do not actually seek dismissal of any named Plaintiff or any claim based upon statute of limitations – instead, they seek to trim away the earlier years of the asserted Class Period. The TAC alleges that each named Plaintiff purchased

---

[3] The relevant statutes of limitations are set forth in Exhibit A to Defendants' motion to dismiss. *See* Defs.' Mot. Exh. A, ECF 167-1.

10

1   Architectural Paint, but it does not allege the dates of any of those purchases.  For all the Court
2   knows, each named Plaintiff purchased products within the applicable limitations period.  "[I]n
3   ruling on a motion to dismiss a class action complaint prior to class certification, courts generally
4   consider only the claims of the named plaintiff."  *Cheng v. BMW of North America, LLC*, No. CV
5   12-09262 GAF (SHx), 2013 WL 3940815, at *4 (C.D. Cal. Jul. 26, 2013); *see also Rutherford v.*
6   *FIA Card Services, N.A.*, No. CV 11-04433 DDP (MANx), 2012 WL 5830081, at *4 (C.D. Cal.
7   Nov. 16, 2012) (where no class has been certified, court looks only to the allegations of the named
8   plaintiff to determine if statute of limitations bars claim); *Barth v. Firestone Tire and Rubber Co.*,
9   673 F. Supp. 1466, 1476 (N.D. Cal. 1987) ("[C]ourts also generally consider only the claims of a
10  named plaintiff in ruling on a motion to dismiss a class action complaint prior to class
11  certification.").  Because it is not clear from the face of the TAC that any of the named Plaintiffs'
12  claims are time-barred, Defendants' motion to dismiss on statute of limitations grounds must be
13  denied.
14      Defendants point out that the Court previously dismissed Plaintiffs' claims on statute of
15  limitations grounds.  *See* Prior Order at 55.  At that time, the allegations of the SAC focused on
16  the claims of the class as a whole, failed to allege a sufficiently narrow market, and was devoid of
17  specific allegations regarding the products purchased by the named Plaintiffs.  Perhaps for those
18  reasons, both the parties' briefing and the Court's Prior Order addressed the statute of limitations
19  issue as it would apply to the claims of the class as a whole rather than to the individual claims of
20  the named Plaintiffs.  The Court concluded that Plaintiffs had alleged facts that might be sufficient
21  to plead tolling of the applicable limitations periods based upon fraudulent concealment, but it
22  found "wholly implausible" Plaintiffs' allegation that they first discovered the facts giving rise to
23  their claims on August 28, 2012.  *Id.* at 54-55.  The Court granted Defendants' motion to dismiss
24  on statute of limitations grounds, and stated expressly that leave to amend was granted so that
25  Plaintiffs could allege a different discovery date.  *Id.* at 55.
26      Plaintiffs instead chose to allege the same August 28, 2012 discovery date in their TAC.
27  However, they also amended their pleading to allege for the first time what specific products each
28  named Plaintiff purchased within a sufficiently narrow market.  The Court concludes that under

11

the authorities cited above, those allegations must be evaluated to determine whether they disclose on their face that the *named Plaintiffs'* claims are time-barred. As discussed above, that answer to that inquiry is no.

The Court's ruling is without prejudice to Defendants' assertion of a statute of limitations bar at class certification, summary judgment, or other appropriate stage of the litigation. The Court's view regarding the implausibility of the August 28, 2012 discovery date has not changed. However, the Court concludes that at this stage of the proceedings – a motion to dismiss prior to class certification – and based upon the current pleading, it would be inappropriate to render a final determination regarding the applicability of the relevant limitations periods to the claims of the class as a whole.

Accordingly, Defendants' motion to dismiss claims or portions of claims as time-barred is DENIED.

### 3. New York's General Business Law § 349

Finally, Defendants request dismissal of Plaintiffs' claim under New York's General Business Law § 349, a consumer protection law prohibiting "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). In its Prior Order addressing the SAC, the Court concluded that Plaintiffs had failed to allege a "deceptive" act or practice as required under the statute. The Court reasoned that under Plaintiffs' theory of the case, "it is the price-fixing that is alleged to have caused Plaintiffs' injury – the payment of supracompetitive prices – not the misrepresentations Defendants made to cover their tracks." Prior Order at 43, ECF 158. Defendants point out that Plaintiffs have not made any substantive amendments to their allegations under § 349 and request dismissal of the § 349 claim on that basis. Plaintiffs do not oppose Defendants' motion with respect to § 349, stating that they retained the claim in the TAC only to preserve their appellate rights. *See* Pls.' Opp. at vi n. 1, ECF 168.

Accordingly, Defendants' motion to dismiss Plaintiffs' claim under New York's General Business Law § 349 is GRANTED WITHOUT LEAVE TO AMEND.

## IV. ORDER

(1) Defendants' Rule 12(b)(1) motion to dismiss for lack of Article III standing is DENIED;

(2) Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim is GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' claim under New York's General Business Law § 349 and otherwise DENIED; and

(3) Defendants shall answer the TAC.

Dated: June 13, 2016

_____
BETH LABSON FREEMAN
United States District Judge