1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, California 95126
3  Telephone:    (408) 369-0800
   Facsimile:    (408) 369-0752
4  pgore@prattattorneys.com
5
   Attorney for Plaintiffs and the Putative Class
6
7  (Additional counsel listed on signature page)

8
                    **UNITED STATES DISTRICT COURT**
9
                   **NORTHERN DISTRICT OF CALIFORNIA**
10
                          **SAN JOSE DIVISION**

11 JAN HARRISON; LEE RANALLI;              Case No. 5:13-cv-01180-BLF
   MORGAN TANNER; SPENCER
12 HATHAWAY; TODD TURLEY; DEBBIE           **PLAINTIFFS' NOTICE OF MOTION**
   HALE; KELI ANNO; JOHN ZULLO;            **AND MOTION FOR PRELIMINARY**
13 CHRISTOPHER KUON-TSEN LEE; JIM          **APPROVAL OF CLASS ACTION**
   BUCKINGHAM; TANDA SAXTON; JOHN          **SETTLEMENT, CERTIFICATION OF**
14 WOZNIAK; JEROME SHERMAN;                **SETTLEMENT CLASS, APPOINTMENT**
   BEVERLY JENKINS; DAVID PETERSEN;        **OF CLASS REPRESENTATIVES AND**
15 TOM STEVER; BRIAN BAWOL;                **CLASS COUNSEL AND APPROVAL OF**
   RANSOME FOOSE; and, STACY               **FORM AND MANNER OF GIVING**
16 FRANKLIN.                               **NOTICE TO CLASS MEMBERS**
17
18    Plaintiffs,                          Date:   November 2, 2017
                                           Time:   9:00 a.m.
19 v.                                      Dept:   Courtroom 3, 5th Floor
                                           Judge:  Honorable Beth Labson Freeman
20
   E.I. DUPONT DE NEMOURS AND
21 COMPANY; HUNTSMAN
   INTERNATIONAL, LLC; KRONOS
22 WORLDWIDE, INC.; and, MILLENNIUM
   INORGANIC CHEMICALS, INC.;
23
24    Defendants.
25
26
27
28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 2, 2017 at 9:00 a.m. or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman, of the United States District Court of the Northern District of California, located at Courtroom 3, 5th Floor, of this Court at 280 South 1st Street, San Jose, California 95113, Plaintiffs will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for an order:

1.      Preliminarily approving a proposed class action settlement with Defendants E. I. du Pont de Nemours and Company ("DuPont"), Millennium Inorganic Chemicals, n/k/a Cristal USA, Inc. ("Cristal USA"), Kronos Worldwide, Inc. ("Kronos"), and Huntsman International LLC ("Huntsman") (together, the "Defendants");

2.      Certifying the settlement classes;

3.      Appointing Barrett Law Group and Cuneo Gilbert & LaDuca, LLP as Class Counsel; and

4.      Approving the manner and form of Notice and proposed Distribution Plan to class members.

This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement with Defendants, the following memorandum of points and authorities, the Settlement Agreement filed herewith, the pleadings and papers on file in this action, and such other matters as the Court may consider.

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     LITIGATION HISTORY .................................................................................. 3

III.    SETTLEMENT NEGOTIATION BACKGROUND ........................................ 4

IV.     SUMMARY OF KEY SETTLEMENT TERMS ............................................. 4

        A.      THE PROPOSED SETTLEMENT CLASS ......................................... 4

        B.      THE SETTLEMENT CONSIDERATION............................................ 5

        C.      RELEASE OF CLAIMS...................................................................... 5

        D.      NOTICE OF THE SETTLEMENT ..................................................... 5

        E.      DISTRIBUTION PLAN ...................................................................... 7

V.      ARGUMENT.................................................................................................... 8

        A.      THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
                APPROVED ........................................................................................ 8

        1.      The Settlement Is the Result of Non-Collusive, Informed, Arm's Length
                Negotiations ...................................................................................... 9

        2.      The Settlement Does Not Suffer from Any Obvious Deficiencies................... 11

        3.      The Settlement Does Not Provide Preferential Treatment for Segments of the
                Class or the Class Representatives.................................................................. 11

                        a.      Eligible Class Members Will Recover Their Fair Share of the
                                Settlement ..................................................................... 12

                        b.      The Service Awards for Class Representatives Reflect the
                                Work They Undertook on Behalf of the Class................................ 12

        4.      The Settlement Falls Within the Range of Possible Approval ........................ 13

        B.      THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 AND
                SHOULD BE CERTIFIED.................................................................. 14

        1.      Rule 23(a): Numerosity Is Met ...................................................... 15

        2.      Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class .......... 16

        3.      Rule 23(a): Named Plaintiffs' Claims Are Typical of the Claims of the Class............... 17

4. Rule 23(a): Plaintiffs Will Fairly and Adequately Represent the Interests of the Class ........................................................................................... 18

5. The Requirements of Rule 23(b)(3) Are Met ............................................... 19

    a.    Common Questions of Fact or Law Predominate ....................... 19

    b.    The Class Action Mechanism Is Superior to Any Other Method of Adjudication ............................................................. 20

6. The Requirements of Rule 23(b)(2) Are Met ............................................... 21

C.    THE COURT SHOULD REAFFIRM THE APPOINTMENT OF CLASS COUNSEL ........................................................................................ 22

D.    THE PROPOSED CLASS NOTICE AND PLAN FOR DISSEMINATION MEETS THE STRICTURES OF RULE 23 ...................... 22

E.    PROPOSED SCHEDULE FOR FINAL APPROVAL AND DISSEMINATION OF NOTICE ....................................................... 25

VI.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013)................................16

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................14

*Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806, 2016 WL 4157355 (N. D. Cal. Apr. 25, 2016) ................................9

*Brown v. Wal-Mart Stores, Inc.*, No. 09-cv-03339, 2012 WL 3672957 (N.D. Cal. Aug. 24, 2012) ................................16

*Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009)................................21

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)................................23

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ................................8

*Costelo v. Chertoff*, 258 F.R.D. 600 (C.D. Cal. 2009)................................17

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................17, 18

*Evans v. Linden Research, Inc.*, No. 11-01078, 2012 WL 5877579 (N.D. Cal. Nov. 20, 2012) ................................15

*Fraley v. Facebook, Inc.*, No. 11-1726, 2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ................................9, 13

*Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ................................12

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................15, 17, 18, 20

*Hartman v. United Bank Card Inc.*, No. C 11-1753, 2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ................................15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ................................16

*In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)................................13, 15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ........................................................................16

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .......................13, 23

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005).........................15, 19

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).....................8, 9, 13

*In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .........................12

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 3648478 (N.D. Cal. July 7, 2016).............................................................................................................12

*Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012)....................................................................23

*Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997) ..............................................................................................................................9

*Marilley v. Bonham*, No. C-11-02418, 2012 WL 851182 (N.D. Cal. Mar. 13, 2012)...........15

*McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) ...............................................................................................24

*Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-cv-04062 (N.D. Cal. 2016) ................13

*Nobles v. MBNA Corp.*, No. C 06-3723, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ........................................................................................................................................9

*Officers for Justice v. San Fran. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..............9

*Pulaski & Middleman, LLC v. Google, Inc.*, No. 12-16752, 802 F.3d 979 (9th Cir. 2015) ............................................................................................................................20

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .........................................9, 23

*Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000)...............................................16

*Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2015 WL 4498571 (N.D. Cal. July 23, 2015) .............................................................................................................................8, 9

*Staton v. Boeing Co.*, 327 F. 3D 938 (9th Cir. 2003) ...............................................................8

*Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010)............................................17

*Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 152 F. Supp. 3d 234 (D. Del. 2016) ........................................................................................................................................2

*White v. NCAA*, No. CV-0999, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006).....................17

*Yokoyama v. Midland National Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010).......................20

*Zepeda v. PayPal, Inc.*, No. C 10-2500, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015)
...................................................................................................................................passim

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ......................................................8

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................passim

....

1

## I.      INTRODUCTION

Plaintiffs, who represent a putative class of indirect purchasers of Architectural Paint containing titanium dioxide ("TiO2") seek preliminary approval under Rule 23 of the Federal Rules of Civil Procedure of a Settlement Agreement (attached hereto as **Exhibit A**) that provides for payment to resolve the damages claims and provides for voluntary injunctive relief to settle the injunctive claim.  Pursuant to the agreement, Defendants will collectively pay **$3,500,000**, which (after deduction of fees and expenses) will be disbursed to purchasers of Architectural Paint residing in the Damages States (defined below) and purchasers of Architectural Paint from sellers in the Damages States, for personal use and not for resale containing, in some form TiO2. In addition to financial consideration, the settlement requires that Defendants, for a period of 24 months from the date of the final judicial approval of the settlement, will continue not to engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of TiO2.

The class has not been certified, and discovery is not closed.  Thus, the proposed settlement requires certification by this Court of the proposed settlement classes.

The agreement is the result of years of litigation and arm's length negotiations between the parties.  Plaintiffs' counsel have conducted an investigation into the facts and laws regarding this matter and have concluded that resolving the claims against Defendants, according to the terms set forth below, is fair, adequate, reasonable, and in the best interests of Plaintiffs and the proposed classes.  Indeed, Plaintiffs' counsel, who have litigated numerous antitrust and other class action matters, believe this settlement is a positive result.  As this Court well knows, antitrust matters brought by indirect purchasers pursuant to an array of state laws present substantial challenges beyond the core liability question.  This case in particular has been the result of three rounds of Motions to Dismiss, and both Plaintiffs and Defendants have devoted significant resources to vigorously litigating these preliminary issues.  Further, after this case

was filed, similar allegations and the corresponding evidence were found insufficient as a matter of law to support a finding of conspiracy in a direct-purchaser opt-out case brought by Valspar Corporation. *See Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 152 F. Supp. 3d 234 (D. Del. 2016), appeal pending (No. 16-1345). Thus, the monetary and injunctive relief components of the settlement are major benefits to the class and the public, and the likelihood of near-term payout is significant.

Plaintiffs have proposed a comprehensive notice program designed by experienced notice administrator, Digital Settlements Group ("DSG").   Because class members purchased Architectural Paint at various retail outlets, the identity and contact information for class members is not known by the parties.  Accordingly, Plaintiffs propose a robust notice program through DSG, using both print publications and Internet publication using Internet properties, which include targeted website and portal advertisements.  DSG has experience in identifying and notifying potential class members through a comprehensive notice program similar to the proposed notice plan here.  The Internet advertisements and banner links will be advertised through the largest websites to reach the Internet population through, for example, Yahoo, Google, and Facebook.  In addition, DSG will establish a settlement website and telephone number.  The advertisements and banner links will allow for direct access to both the short- and long-form notices, the claim form, and other relevant documents.  *See* Ex. C, Long-Form Notice; Ex. D, Short-Form Notice; Ex. E, Claim Form.  The notice advertisements will be designed to get the class members' attention and "be written in clear, concise, easily understood language." DSG predicts that approximately 70 percent of the class members will receive notice.[1]

Distribution of funds to the class will be handled by DSG, which will oversee and execute the distribution of funds to qualified class members as ordered by the Court.

---

[1] See Ex. B, Declaration of Mark Schey ("Schey Dec."), Settlement Claims Administrator with DSG, at ¶ 24.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 13-cv-01180 (BLF)                                                        2

Accordingly, Plaintiffs respectfully request an order: (1) preliminarily approving the proposed class action settlement with Defendants; (2) certifying the settlement classes; (3) appointing Barrett Law Group and Cuneo Gilbert & LaDuca, LLP as Class Counsel; and (4) approving the manner and form of notice and proposed plan of allocation to class members.

## II.   LITIGATION HISTORY

Plaintiffs filed this action on March 15, 2013, based largely on allegations in a direct purchaser class action brought in 2010 in the United States District Court for the District of Maryland against the same Defendants. *See Haley Paint Co. v. E.I. DuPont de Nemours & Co., et al.*, Case No. 1:10-cv-00318-RDB (D. Md.) (filed Feb. 9, 2010).[2]  Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint, which was granted in part with leave to amend on September 22, 2014.  [Dkt. 105]  Plaintiffs subsequently filed two more amended complaints, each followed by a Motion to Dismiss by Defendants.  On June 13, 2016, the Court granted in part and denied in part Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint and ordered Defendants to answer.  [Dkt. 180].  Each Defendant filed its answer on July 27, 2016.

Plaintiffs' Counsel, Don Barrett of Barrett Law Group and Jonathan Cuneo of Cuneo Gilbert & LaDuca, LLP, were appointed Interim Co-Lead Counsel on October 18, 2013.  [Dkt. 61].  Ben F. Pierce Gore was appointed Liaison Counsel at the same time.  *Id.*

Defendants have produced millions of pages of discovery to Plaintiffs and most of the over 120 deposition transcripts from the prior matters.[3]  In addition, Plaintiffs had access to the expert reports and transactional data produced in the Direct Purchaser Litigation.  While the parties did not engage in discovery specific to this case, the parties are uniquely situated to assess this matter because of the extensive discovery in the Direct Purchaser Litigation, all of which

---

[2] Hereinafter referred to as the "Direct Purchaser Litigation."

[3] All deposition transcripts from the Direct Purchaser Litigation were provided to Plaintiffs, but the depositions transcripts from the direct purchaser opt-out litigation had not yet been provided to Plaintiffs when settlement discussions began.

has been produced to Plaintiffs here.  Defendants have been litigating similar allegations for over seven years.

**III.      SETTLEMENT NEGOTIATION BACKGROUND**

The parties have been involved in settlement negotiations for more than a year.  The parties' extensive negotiations have occurred in person and through telephonic sessions. The negotiations have been at arm's length at all times.

**IV.      SUMMARY OF KEY SETTLEMENT TERMS**

**A.      The Proposed Settlement Class**

The proposed class includes the following two subclasses:

"Damages Settlement Class" means all purchasers who either (i) purchased Architectural Paint from a seller in a Damages State[4] or (ii) who reside in a Damages State and purchased Architectural Paint in the United States, provided that in either case the Architectural Paint purchased was for personal use and not for resale containing, in some form, Titanium Dioxide manufactured by one or more of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof from January 1, 2002 until the date notice of this settlement is first distributed to the Damages Settlement Class, who do not timely opt out.

Ex. A, Settlement Agreement at ¶ 7.

"Injunctive Relief Settlement Class" means all purchasers in the United States of Architectural Paint for personal use and not for resale containing, in some form, Titanium Dioxide manufactured by one or more of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof from January 1, 2002 until the date notice of this settlement is first distributed to the Injunctive Relief Settlement Class.

*Id*. at ¶ 11.

---

[4] "Damages States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**B.      The Settlement Consideration**

The Settlement Agreement provides for Defendants to pay $3,500,000 and includes a nationwide injunction requiring Defendants, for a period of 24 months from the date of the final judicial approval of the settlement, to continue not to engage in conduct that constitutes a per se violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of TiO2.  The payout to individual plaintiffs will be based on a $0.76-per-gallon of paint calculation.

**C.      Release of Claims**

Once the Settlement Agreement is final and effective, the named plaintiffs and settlement class members who have not opted out will release all federal, state, and local law claims of any jurisdiction in the United States against Defendants for damages arising out of or relating in any way to any act or omission of Defendants or their member institutions that is alleged or could have been alleged in this litigation.  The released claims do not include (1) any claims made by direct purchasers of TiO2 as to such direct purchasers; (2) claims involving any negligence, personal injury, breach of contract; bailment; failure to deliver lost, damaged, or delayed goods; product defect; breach of warranty; securities; or any comparable claims relating to TiO2; or (3) damages claims asserted by or on behalf of citizens of states outside the Damages States arising out of purchases of Architectural Paint by purchasers outside of the Damages Settlement Class.

**D.      Notice of the Settlement**

Plaintiffs submit a proposed notice and plan for the dissemination of notice in writing, published via print in magazines, on the Internet, and through social media, the form of which has been agreed upon by Plaintiffs and Defendants.  Following a competitive bidding process, Plaintiffs have selected DSG, an experienced notice and settlement administrator, to act as the notice and settlement administrator here.  As set forth in more detail below and in the declaration

of Mark Schey, the notice administrator, notice shall be delivered via a robust publication plan through the Internet and on social media.[5]

Due to the retail nature of the Architectural Coatings sold to class members, the identity and contact information for class members is not known or easy to ascertain. Accordingly, Plaintiffs propose a robust notice program through DSG using both print publications and Internet publications using Internet properties, which include targeted website and portal advertisements. DSG has experience in identifying and notifying potential class members through a comprehensive notice program similar to the proposed notice plan here.

The notice via print publication is designed to provide notice to potential class members who have demonstrated an interest in products similar to Architectural Coatings. In addition to review of raw data, DSG also conducted extensive marketing analysis to ensure the publication notice is directed toward homeowners and consumers interested in "DIY" home maintenance. To that end, DSG proposes print publication of the short-form notice in <u>Martha Stewart Living</u> and <u>This Old House</u>. The print publication plan is designed to effectively supplement the Internet notice portion of the plan and will reach an estimated 11 million homeowners in the United States.

The Internet notice portion of the plan is designed to target the largest number of potential class members in a cost-effective manner, given that the parties cannot provide direct notice to purchasers of Architectural Coatings. DSG recommends advertisements and banner links, which will be advertised through the largest Internet websites to reach the Internet population through sites such as Yahoo, Google, and Facebook, which will notify consumers of the class action and direct them to the settlement website to participate. The "Yahoo Advertising Network," for example, reaches 79 percent of the Internet population. The notice plan will deliver an estimated 23.5 million impressions using behavioral targeting against Home & Garden, Home Remodeling,

---

[5] *See* Ex. B, Schey Dec., at ¶ 12.

and Home Improvement and Repair segments. The Yahoo, Google, and Facebook advertisements will use a form of behavioral and transactional targeting to identify additional potential class members. For example, if a user visits Google to search for "interior paint," an ad for the settlement will be prominently displayed.

The banner links will provide instant access to the short- and long-form notices, claim form, and other pertinent documents. *See* Ex. C, Long-Form Notice; Ex. D, Short-Form Notice; Ex. E, Claim Form. The notice advertisements will be designed to get the class member's attention and "be written in clear, concise, easily understood language."

DSG will track every single "impression" of the ad to ensure the maximum number of impressions and breadth of the campaign.[6] The overall campaign duration will be 30 days. DSG predicts that its notice plan will reach at least 70 percent of the 29 million adult Internet users who fall into the targeted groups.

In addition, DSG will set up a settlement website and telephone number. The advertisements and banner links will allow for direct access to the short- and long-form notices, the claim form, and other relevant documents. *See* Ex. C, Long-Form Notice; Ex. D, Short-Form Notice; Ex. E, Claim Form.

**E.    Distribution Plan**

Distribution of funds to the class will be handled by DSG, which will oversee and execute the distribution of funds to qualified class members as ordered by the Court. Within 20 days of the Court's entry of the Preliminary Approval Order and Certification of Settlement Classes Order, Defendants will wire or cause to be wired 100 percent of the settlement funds ($3,500,000.00) into an account established by an escrow agent.

Plaintiffs and Defendants agree that the allocation of the Settlement Fund to the Damages Settlement Class by the Settlement Class Administrator shall be subject to the following terms:

---

[6] An impression is when an "Internet ad is shown or loaded on a website." *See* Ex. B, Schey Dec. at ¶ 22.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 13-cv-01180 (BLF)                                                                              7

(i) a reimbursement of $0.76 per gallon of paint for all claims (subject to (iii), (iv), and (v) below); (ii) permitting Damages Settlement Class Members to make claims against the Settlement Fund without proof of purchase for up to 10 gallons of paint; (iii) requiring claims made against the Settlement Fund for 11 or more gallons of paint to provide proof of purchase, provided, however, that no claim shall exceed 2,000 gallons of paint; (iv) in the event that monies remain as residue in the Settlement Fund following the completion of all distribution efforts approved by the District Court, all remaining funds shall be distributed to the Damages Settlement Class Members who made claims against the Settlement Fund on a pro rata basis; and (v) in the event that Damages Settlement Class Members make claims in excess of the Settlement Fund, the payment of such claims will be reduced on a pro rata basis, resulting in a reimbursement of less than $0.76 per gallon of paint.

## V.   ARGUMENT

### A.  The Proposed Settlement Should Be Preliminarily Approved

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims.  Approval of a settlement requires multiple steps, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the class and objections to be filed, after which there is (iii) a motion for final approval and fairness hearing.[7]  Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement but rather determines whether it falls within the "range of possible approval."[8]  Preliminary approval establishes an "initial presumption" of fairness[9] such that notice may be given to the class.  The

---

[7] *Staton v. Boeing Co.*, 327 F. 3D 938, 952 (9th Cir. 2003); *see* Manual for Complex Litigation (Fourth) § 21.632, 320-21 (2004).

[8] *Id.*; *see Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-302 (E.D. Cal. 2011).

[9] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted). *See also Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) (same).

"initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[10]

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with the range of possible approval.[11]   As is the case here, when proposed counsel are experienced and support the settlement, which was the result of arm's length negotiations, the "presumption [is] that the agreement is fair."[12]   The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[13]   All factors weigh in favor of preliminary approval here.

### 1.   The Settlement Is the Result of Non-Collusive, Informed, Arm's Length Negotiations

As the Ninth Circuit has stated, "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."[14]   The proposed Settlement Agreement here arises out of extended, informed, arm's length negotiations between experienced counsel for the parties.  The parties reached agreement after nearly four years of litigation, review of the relevant

---

[10] *Officers for Justice v. San Fran. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

[11] *Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806, 2016 WL 4157355, at *1 (N. D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, No. 11-1726, 2012 WL 5838198, at *1 n.1 (N.D. Cal. Aug. 17, 2012); *Tableware*, 484 F. Supp. 2d at 1079.

[12] *Am. Greetings Corp.*, 2015 WL 4498571, at *6 (also stating "[t]he proposed settlement "need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class."); *Nobles v. MBNA Corp.*, No. C 06-3723, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009); *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).

[13] *Officers for Justice*, 688 F.2dat 625.

[14] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

record in the Direct Purchaser Action, and investigation prior to and after filing.  Plaintiffs' "significant investigation, discovery[,] and research" weigh in favor of finding that the settlement was adequately informed.[15]   Further, counsel for both sides are experienced and nationally recognized for competently handling large-scale, high-profile antitrust class action litigation.

The substance of the Settlement Agreement also underscores that it is not the result of any collusion or conflict.  Where a settlement is reached prior to class certification, as is the case here, courts must be "particularly vigilant not only [to look] for explicit collusion, but also for more subtle signs" or any indication that the pursuit of the interests of the class counsel or the named plaintiffs "infected" the negotiations.[16]   There are three factors courts look for when evaluating whether collusion exists: (1) a disproportionate distribution of the settlement fund to counsel; (2) the presence of an agreement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.[17]   None of these are present here.

First, the Settlement Agreement provides that Plaintiffs' counsel cannot seek any more than one-third of the settlement fund in fees, a customary percentage in cases of this nature.  Ex. A, Settlement Agreement at ¶ 43.  In fact, Plaintiffs' counsel are seeking $750,000, which is only 21 percent of the settlement amount.  Any fee petition must be reviewed and approved by this Court, and the proposed class notices inform class members that class counsel will make a reasonable request for attorneys' fees from the gross settlement fund.  *Id*.  Second, there is no provision allowing for payment of fees separate and apart from the class funds.  Third, the proposed settlement is a common fund settlement, and there is no "kicker" provision that would

---

[15] *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

[16] *Id*. at 946-48

[17] *Id*. at 947.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 13-cv-01180 (BLF)                                                              10

1   allow unawarded fees to revert to the Defendants.  *Id*.  As described above, distribution to the

2   named plaintiffs and class members is based on the Distribution Plan specified in the Settlement

3   Agreement.  The Settlement Agreement is therefore entitled to a presumption of fairness.

4              **2.      *The Settlement Does Not Suffer from Any Obvious***

5                          ***Deficiencies***

6            The Settlement Agreement is the product of a thorough assessment and evaluation of the

7   strengths and weaknesses of Plaintiffs' case.  The parties have litigated important threshold

8   issues in this case for over four years.  Defendants have litigated virtually identical price-fixing

9   allegations for over seven years, during which time Defendants were engaged in very thorough

10  discovery with other plaintiffs, including the Direct Purchaser Litigation Plaintiffs, and Direct

11  Purchaser Opt-Out, Valspar Corporation.  Defendants have produced millions of pages of

12  discovery to Plaintiffs.  Over 120 depositions have taken place in the prior matters, most of which

13  have also been provided to Plaintiffs.  Though discovery never commenced in this matter,

14  Plaintiffs have had access to the extensive discovery record in the Direct Purchaser Litigation

15  and have analyzed and considered the extensive discovery that has already taken place.  In

16  addition, Plaintiffs have engaged expert witnesses.

17           The Settlement Agreement also reflects risks that Plaintiffs must consider in continuing

18  to litigate, including defending procedural and substantive pre-trial motions and the inherent

19  risks of a jury trial should the case proceed that far.  Weighing the stage of litigation against the

20  risks that Plaintiffs face in this litigation, there are no obvious deficiencies regarding the

21  settlement.  This factor also supports preliminary approval.

22              **3.      *The Settlement Does Not Provide Preferential Treatment***

23                          ***for Segments of the Class or the Class Representatives***

24           The third factor to consider is whether the Settlement Agreement grants preferential

25  treatment to class representatives or segments of the class.[18]  The Settlement Agreement here

26

27  _____

28  [18] *Zepeda*, 2015 WL 6746913, at *4.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 13-cv-01180 (BLF)                                            11

does not and instead provides a reasonable and fair distribution mechanism for named plaintiffs and class members.  All class members who make claims will receive the same reimbursement rate per gallon for up to 2,000 gallons of Architectural Paint.

### a. Eligible Class Members Will Recover Their Fair Share of the Settlement

A plan of distribution of class settlement funds must meet the "fair, reasonable and adequate" standard that applies to approval of class settlements.[19]  A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable.[20]  Here, as outlined above, class members will be compensated for up to 10 gallons of paint with no proof of purchase, and class members will be compensated for purchases of 11 gallons up to 2,000 gallons with proof of purchase.  Ex. A, Settlement Agreement at ¶ 27.  There will be no reversion of unclaimed funds to Defendants.  *Id.*

### b. The Service Awards for Class Representatives Reflect the Work They Undertook on Behalf of the Class

The Settlement Agreement permits the Settlement Class counsel to submit an application to the District Court for "incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the District Court (the 'Fee and Expense Award')."  *Id.* at ¶ 43.  The Settlement Agreement further provides that Settlement Class Counsel "reserve the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards," which may be paid out of the Settlement Fund.  *Id.*  The incentive awards for

---

[19] *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (on appeal on other grounds) (citing *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (stating same).

[20] *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.)

the class representatives contemplated by the Settlement Agreement reflect the work they undertook on behalf of the Class.  Each class representative had an opportunity to review the complaints, communicated with counsel, reviewed their records, and was prepared to engage in discovery.  They will each receive incentive awards totaling less than the maximum award that can be achieved ($1,520.00) under the settlement.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"[21]  Based on the contributions and commitments by the class representatives, the Settlement Agreement contemplates an award to each class representative.  There is no bright line minimum or maximum for service awards, and courts have awarded service awards in the amount sought here.  For example, in *Nitsch v. Dreamworks Animation SKG Inc.*, this Court granted preliminary approval of class settlement agreements that provided $10,000 for the class representatives.[22]

### 4.    The Settlement Falls Within the Range of Possible Approval

To grant preliminary approval, this Court must decide that the Settlement Agreement falls within the approved range for preliminary approval.[23]  To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]"[24] The amount

---

[21] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

[22] No. 14-cv-04062 (N.D. Cal.), ECF Nos. 338 (motion for preliminary approval of settlement proposing $10,000 service award), 353 (granting motion for preliminary approval). *See also In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (recognizing $20,000 service awards in partial settlement agreements with other defendants and awarding additional service awards in the range of $80,000 to $120,000); *Online DVD-Rental Antitrust Litigation*, 779 F.3d at 943 (affirming approval of "incentive awards of $5,000 each for nine class representatives" as "well within the usual norms of modest compensation paid to class representatives.").

[23] *Zepeda,* 2015 WL 6746913, at *4; *Fraley*, 2012 WL 5838198, at *1 n.1; *Tableware*, 484 F. Supp. 2d at 1079.

[24] *Tableware*, 484 F. Supp. 2d at 1080.

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 13-cv-01180 (BLF)                                                                  13

of recovery for the class certainly falls within a reasonable range given that the class faces the possibility of no recovery if class certification is denied, which this Court has indicated could be an issue, or if summary judgment is granted to Defendants.  The settlement properly accounts for these risks and is inherently equitable and adequate and thus in the approved range for preliminary approval.

### B.     The Proposed Settlement Class Satisfies Rule 23 and Should Be Certified

Rule 23(a) sets forth four prerequisites for class certification:

> (1) that "the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[25]

Additionally, the proposed settlement class seeks monetary damages, so Rule 23(b)(3) must also be met.  Rule 23(b)(3) requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."[26]  Unlike in a contested class certification process, which is a precursor to trial, a proposed settlement class does not require a showing that a trial on class claims would be manageable—precisely because there will be no trial that needs to be managed.[27]  Similar considerations apply to the analysis of whether common issues predominate over individual ones under Federal Rule 23(b)(3).

This proposed settlement class meets all Rule 23(a) and (b)(3) requirements for certification in this context.

---

[25] Fed. R. Civ. P. 23(a).

[26] Fed. R. Civ. P. 23(b)(3).

[27] *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   *Rule 23(a): Numerosity Is Met*

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable."[28]  Numerosity depends on the facts and circumstances of each case and does not require any specific minimum number of class members.[29]   Courts generally find numerosity when a class includes at least forty members,[30] and geographic disparity favors a finding of numerosity.[31]  Class size does not have to be "exactly determined" at the certification stage; "a class action may proceed upon estimates as to the size of the proposed class."[32]

Here, the potential class consists of hundreds of thousands members spread all across the country.  This Court has found the numerosity requirement met on less.[33]   Numerosity is therefore established.

---

[28] Fed. R. Civ. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

[29] *Marilley v. Bonham*, No. C-11-02418, 2012 WL 851182, at *3 (N.D. Cal. Mar. 13, 2012) (citing *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D 439, 448 (N.D. Cal. 1994)).

[30] *Bonham*, 2012 WL 851182, at * 3 (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal 2008)).

[31] *Evans v. Linden Research, Inc.*, No. 11-01078, 2012 WL 5877579 at *10 (N.D. Cal. Nov. 20, 2012) (citing *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996)).

[32] *Hartman v. United Bank Card Inc.*, No. C 11-1753, 2012 WL 4758052, at *10 (W.D. Wash. Oct. 4, 2012).

[33] *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (finding numerosity met with purported class of 1,000). *See* also *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (There is no bright-line minimum requirement for numerosity and recognizing that the class of approximately 60,000 is enough that "joinder of all members of this proposed class [would be] impracticable."); *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996) (citing *Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994)), which awarded certification of a class less than 300).

### 2.    Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class

The second Rule 23(a) requirement is the existence of common questions of law or fact.[34] A *single* issue has been held sufficient to satisfy the commonality requirement.[35]  In other words, commonality requires that class members' claims depend on a common contention that would be "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[36]

The issues of law and fact that are common to the class include: (1) whether Defendants and their alleged co-conspirators combined or conspired to manipulate, raise, maintain, or stabilize prices of TiO2 sold in the United States; (2) whether Defendants and their alleged co-conspirators shared nonpublic proprietary information, allocated markets and customers, restricted the supply and output of TiO2 sold in the United States, and/or committed unfair or anticompetitive conduct in furtherance of the alleged price-fixing conspiracy; (3) whether Defendants and their alleged co-conspirators engaged in unfair, false, deceptive, or unconscionable behavior; and (4) whether Plaintiffs and the Nationwide Class are entitled to nationwide injunctive relief.

Nearly identical questions have been found to satisfy the commonality requirement in other antitrust class actions.[37]  The commonality requirement is similarly met here.

---

[34] Fed. R. Civ. P. 23(a)(2).

[35] *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley*, 169 F.R.D. at 647.

[36] *Brown v. Wal-Mart Stores, Inc.*, No. 09-cv-03339, 2012 WL 3672957, at *4 (N.D. Cal. Aug. 24, 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)).

[37] *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967, 2013 WL 5979327, at *4 (N.D. Cal. Nov. 8, 2013) (class certification decision in case later titled O'Bannon v. NCAA). *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.").

### 3. Rule 23(a): Named Plaintiffs' Claims Are Typical of the Claims of the Class

The third requirement is that the "claims . . . of the representative parties are typical of the claims . . . of the class."[38]  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"[39] "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."[40]  Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[41]  The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."[42]  This requirement is "to assure that the interest of the named representative align with the interests of the class."[43]

Typicality is often easily satisfied in antitrust cases like this one, where the named plaintiffs and class members allege the same antitrust violation.[44]  In this case, the claims of the eighteen representative plaintiffs are typical of the claims of the class members because they all allege the same antitrust and conspiracy violation, and the same nature of injuries.  That is, the central question for all class members is whether Defendants conspired to fix the price of TiO2

---

[38] Fed. R. Civ. P. 23(a)(3).

[39] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

[40] *Id.*

[41] *Hanlon*, 150 F.3d at 1020. *See also Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 363 (N.D. Cal. 2010) (stating same).

[42] *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005))

[43] *Dataprods. Corp.*, 976 F.2d at 508.

[44] *White v. NCAA*, No. CV-0999, 2006 WL 8066803, at *2 (C.D. Cal. Oct. 19, 2006) (citing *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005)).

and whether Defendants' alleged conspiracy artificially inflated the prices paid by Plaintiffs and class members for Architectural Paint containing TiO2 to levels higher than what would have been paid in a competitive marketplace.  Furthermore, the named plaintiffs span 18 of the 32— a majority—of the Damages states, as well as the District of Columbia.  Thus, Plaintiffs' interests are typical of and closely aligned with those of the absent class members.

Plaintiffs' state law claims are typical of the claims of the Classes and arise from the same anticompetitive conspiracy and unlawful conduct engaged in by Defendants and co-conspirators as alleged in the Fourth Amended Class Action Complaint.  The relief sought by the Plaintiffs is common to the Classes.

### 4. Rule 23(a): Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the class.  The relevant inquiries are: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[45] The first inquiry requires only that a class representative not have interests  antagonistic to or in conflict with the interests of the class.[46]  As described above, the interests of the named plaintiffs and class members are aligned because they all are pursuing the claim that they suffered similar injury in the form of artificially inflated prices of Architectural Paint due to the alleged conspiracy, and all class members seek the same relief.  Moreover, this Court has already found that Plaintiffs alleviated the Court's concern regarding Plaintiffs' intent to represent classes at different levels of the distribution chain by abandoning their damages claim on behalf of business entities that purchased Architectural Paint for resale and seeking overcharges only on behalf of

---

[45] *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).

[46] *Hanlon*, 150 F.3d at 1020.

a consumer class of persons who purchased Architectural Paint for personal use and not for resale.  *See* [Order Denying Motion To Dismiss, ECF 180, at 4]; TAC ¶ 47, ECF 164.[47]

As to the second inquiry, Plaintiffs and their counsel have demonstrated that they will prosecute this action vigorously and will continue to do so. Each class representative has reviewed the Settlement Agreement and has given their approval. Additionally, class counsel are well qualified, possess no conflicts of interest, and have already proven capable of prosecuting this action vigorously on behalf of the class. Plaintiffs' counsel has litigated this action since its inception four years ago, and did so on behalf of both the putative injunctive and damages class members. As discussed more fully below, both firms that represent the class have extensive experience in handling complex commercial litigation, including class actions.  Adequacy is met.

### 5.   The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Damages Settlement Class under Rule 23(b)(3), which requires predominance and superiority.  Both are met for the settlement class in this case.

### a.   Common Questions of Fact or Law Predominate

As noted above, core questions that are common to all plaintiffs and members of the class is whether the alleged conspiracy existed and whether price-fixing occurred.  Courts have found those questions alone to be sufficient to satisfy the predominance prong.[48]

Plaintiffs also contend that they will be able to establish "a reasonable method for determining, on a class-wide basis, the alleged antitrust activity's impact on class members."[49]

---

[47] As this Court noted, Plaintiffs "cured those pleading defects in their TAC . . . [by] limit[ing] the relevant market to "Architectural Paint" as suggested by the Court in its prior order."  *See* [Order Denying Motion To Dismiss, ECF 180, at 4]; TAC ¶ 1, ECF 164.

[48] *See*, *e.g.*, *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. at 352 ("[T]he great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred.").

[49] *CRT*, 308 F.R.D. at 625.

And they allege that Defendants have acted in ways that cause similar injury to the Classes as a whole, thereby making final injunctive relief appropriate with respect to the Classes.

Finally, as recently as September 2015, the Ninth Circuit has opined that individualized questions of damages need not defeat predominance in a class action.  In *Pulaski & Middleman, LLC v. Google, Inc.*,[50] the court held that individualized damage calculations will not defeat class certification in cases brought under the California Unfair Competition Law and False Advertising Law, affirming its decision in *Yokoyama v. Midland National Life Ins. Co.*[51]  The Ninth Circuit specifically stated that "*Yokoyama* remains the law of this court, even after *Comcast.*"[52]

### b.  The Class Action Mechanism Is Superior to Any Other Method of Adjudication

The "superiority" element is satisfied because, through class certification, the nature of the alleged price-fixing conspiracy can be determined in one proceeding.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."[53]

The alternative – tens of thousands of individual claims – "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs[,]" thereby demonstrating the superiority of a class action.[54]  Moreover, an individual case would be risky and challenging.  In essence, individual indirect purchasers would be forced to bring separate lawsuits.  The Defendant entities need to cooperate collectively to effectuate the terms of

---

[50] No. 12-16752, 802 F.3d 979, 987-88 (9th Cir. 2015).

[51] 594 F.3d 1087, 1094 (9th Cir. 2010).

[52] *Pulaski & Middleman*, 807 F.3d at 988.

[53] *Hanlon*, 150 F.3d at 1022.

[54] *Id.* at 1023.

1   Settlement Agreement.   Such cooperation would be nearly impossible if Defendants were
2   engaged in thousands of individual lawsuits.

3       For these reasons, the proposed settlement classes meet the requirements of Rule 23(a)
4   and 23(b)(3), and the Court should grant provisional certification for purposes of effecting the
5   proposed Settlement Agreement.

6               **6.       *The Requirements of Rule 23(b)(2) Are Met***

7       Plaintiffs seek to certify the Injunctive Relief Settlement Class under Rule 23(b)(2).
8   "Th[is] Court may properly certify Plaintiffs claim for injunctive relief under (b)(2) and their
9   claim for monetary relief under (b)(3)."[55]   "This procedural route avoids the due process
10  concerns raised by the inclusion of monetary relief under the framework of a (b)(2) class."[56]
11  Certification is appropriate under Fed. R. Civ. P. 23(b)(2) when "the party opposing the class
12  has acted or refused to act on grounds that apply generally to the class, so that final injunctive
13  relief or corresponding declaratory relief is appropriate respecting the class as a whole."[57]

14      Here, Plaintiffs have alleged that Defendants engaged in uniform conduct toward the
15  Injunctive Relief Settlement Class by combining or conspiring to manipulate, raise, maintain, or
16  stabilize prices of TiO2 sold in the United States, thereby artificially inflating prices of
17  Architectural Paint.   The proposed injunctive relief resolves this dispute on a class-wide basis.
18  Defendants have "agree[d] for a period of 24 months from the date of the entry of final judgment
19  not to engage in conduct that constitutes a per se violation of Section 1 of the Sherman Act
20  (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect
21  to the sale of Ti02." Ex. A, Settlement Agreement at ¶ 7.   "Because an injunction would offer
22

23  _____

24  [55] *Zepeda v. PayPal, Inc.*, No. 10-cv-1668, 2017 WL 1113293, at *17 (N.D. Cal. Mar. 24, 2017)
    (citations omitted).
25
    [56] *Casale v. Kelly*, 257 F.R.D. 396, 413 (S.D.N.Y. 2009)
26
    [57] Fed. R. Civ. P. 23(b)(2).
27

28  Notice of Motion and Motion for
    Preliminary Approval of Settlement
    Case No. 13-cv-01180 (BLF)                                                            21

all class members 'uniform relief' from this harm, class certification of the Injunctive Relief Class is appropriate under Rule 23(b)(2)."[58]

### C.   The Court Should Reaffirm the Appointment of Class Counsel

At the outset of this case, Judge Orrick appointed Barrett Law Group and Cuneo Gilbert & LaDuca, LLP as Interim Co-Lead Counsel on behalf of Plaintiffs and the putative classes.[59] Barrett Law Group and Cuneo Gilbert & LaDuca, LLP now request that their appointment be reaffirmed.

Under Rule 23, the appointment of class counsel, to "fairly and adequately represent the interests of the class" is required.[60]   In making this determination, the Court must consider counsels': (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.[61]   As set forth in Plaintiffs' Motion to Appoint Interim Lead Counsel and as demonstrated in the resumes for both firms, Barrett Law Group and Cuneo Gilbert & LaDuca, LLP easily satisfy these requirements.  [Dkt. 49-1 (Memo. of Law in Support); Dkt. 49-3 (Firm Resumes)].

### D.   The Proposed Class Notice and Plan for Dissemination Meets the Strictures of Rule 23

Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal."  In addition, for a Rule 23(b)(3) class, the Rule requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can

---

[58] *Zepeda*, 2015 WL 6746913, at *7.

[59] Dkt. No. 61.

[60] Fed. R. Civ. P. 23(g)(1)(A), (B).

[61] Fed. R. Civ. P. 23(g)(1)(A).

be identified through reasonable effort."[62]  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[63]

The proposed plan of notice is supported by an experienced notice administrator, DSG, which has worked cooperatively with counsel to develop the proposed plan of notice.  DSG submits a declaration in support of the proposed notice plan attesting to its adequacy.[64]  The proposed forms of notice provide all information required by Rule 23(c)(2)(B) to the settlement class, in language that is plain and easy to understand.  Moreover, the proposed long-form notice of settlement follows, as closely as possible, the language recommended by this Court's Procedural Guidance for Class Action Settlements[65] and required by the Ninth Circuit.[66]  With this motion, Plaintiffs additionally provide proposed forms of notice by print publication and Internet advertising.[67]

The proposed plan of notice includes several components and is likely to reach nearly all class members.  The notice plan will rely primarily upon publication notice to the settlement classes.  DSG will use both print publications and Internet publication using Internet properties, which include targeted website and portal advertisements.  DSG has experience in identifying and notifying potential class members through a comprehensive notice program similar to the

---

[62] Fed. R. Civ. P. 23(c)(2)(B).

[63] *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

[64] *See* Ex. B, Schey Dec., ¶¶ 11-16.

[65] *See* http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited January 30, 2017).

[66] *See, e.g.*, *In re Online DVD Rental Antitrust Litig.*, 779 F.3d at 946; *Lane v. Facebook*, 696 F.3d 811, 826 (9th Cir. 2012); *Rodriquez*, 563 F.3d at 962.

[67] *See* Schey Decl., Ex. A.

proposed notice plan here.  The Internet advertisements and banner links will be advertised through the largest websites to reach the Internet population through, for example, Yahoo, Google, and Facebook.  The advertisements and banner links will allow for direct access to both short- and long- form notices, the claim form, and other relevant documents.  *See* Ex. C, Long-Form Notice; Ex. D, Short-Form Notice; Ex. E, Claim Form.  The notice advertisements will be designed to get the class member's attention and "be written in clear, concise, easily understood language."  After these steps have been taken, DSG estimates that its notice plan will reach at least 70 percent of the 29 million adult Internet users who fall into the targeted group.[68]

Additionally, DSG will establish a telephone number and a case-dedicated settlement website, which will be a source of reliable and accurate information for the class members, the media, and the general public.  In addition to being a primary source of information about the case, the case website will also serve as an important means of measuring audience engagement with the campaign.  Both the direct notice and paid media will direct individuals to the case website.[69]

Finally, the notice administrator will issue a neutral press release about the settlement of the case through the PR Newswire.  Press releases are one of the most cost-effective ways to supplement notice efforts and provide an opportunity for media outlets to pick up the story and post to print publications and websites.[70]

Courts have found that notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.[71]  Here, the notice administrator believes that notice

---

[68] *See* Ex. B, Schey Dec. at ¶ 24.

[69] *Id.*, ¶¶ 13, 23.

[70] *Id.*, ¶ 20.

[71] *See*, *e.g.*, *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015 WL 3990915, at *11 (N.D. Cal. June 30, 2015) (approving notice plan "that [wa]s targeted to reach 70 percent of persons over the age of 18 who live[d] in or [we]re located in California 1.6 times").

will reach at least 70 percent of class members.[72]  These notice provisions meet the requirements of Rule 23 and will allow the class a full and fair opportunity to review and respond to the proposed settlement.

### E.    Proposed Schedule for Final Approval and Dissemination of Notice

Below is a proposed schedule for providing notice, filing objections, and holding a fairness hearing:

| Event | Deadline |
|-------|----------|
| Notice campaign to begin, including Internet and publication notice, dedicated website, and press release | 8 weeks from preliminary approval order |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | 2 weeks before claims and objection deadline |
| Last day to file claims and objections to the Settlement or requests for exclusion from the Classes | 18 weeks from beginning of notice campaign |
| Last day for motion in support of final approval of Settlement | 2 weeks after claims and objection deadline |
| Final Fairness Hearing | 2 weeks after motion for final approval, unless otherwise ordered by the Court |

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court preliminarily approve the proposed Settlement Agreement, certify the proposed settlement class, appoint the undersigned Interim Co-Lead Class Counsel as Settlement Class Counsel, and approve the Notice to be issued to the Proposed Settlement Class and notice plan.

Dated: July 20, 2017                              Respectfully submitted,

                                                  PRATT & ASSOCIATES

                                                  */s/ Ben F. Pierce Gore*                              

---

[72] Ex. B, Schey Dec. at ¶ 24..

Ben F. Pierce Gore (SBN 128515)
1871 The Alameda, Suite 425
San Jose, California 95126
Telephone:      (408) 369-0800
Facsimile:      (408) 369-0752
pgore@prattattorneys.com

Don Barrett (admitted *pro hac vice*)
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com

Jonathan W. Cuneo (admitted *pro hac vice*)
Katherine Van Dyck (admitted *pro hac vice*)
Cuneo Gilbert & LaDuca LLP
4725 Wiscosin Ave. NW, Ste 200
Washington, DC 20016
Telephone:      (202) 789-3960
Facsimile:      (202) 789-1813
jonc@cuneolaw.com
kvandyck@cuneolaw.com

Charles F. Barrett  (admitted *pro hac vice*)
Charles Barrett, P.C.
6518 Highway 100, Suite 210
Nashville, TN 37205
Telephone:      (615) 515-3393
Facsimile:      (615) 515-3395
Email: charles@cfbfirm.com

Thomas P. Thrash (admitted *pro hac vice*)
Marcus N. Bozeman
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net
bozemanmarcus@sbcglobal.net

Shawn M. Raiter
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

Dewitt Lovelace
Lovelace & Associates, P.A.
12870 US Hwy 98 West, Ste. 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
dml@lovelacelaw.com

Gerard V. Mantese
Mantese Honigman Rossman &
Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone:      (248) 457-9200
Facsimile:      (248) 457-9201
gmantese@manteselaw.com

Phillip Duncan
Richard Quintus
Duncan Firm, P.A.
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone: (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

***Attorneys for Plaintiffs and the Putative Class***

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 13-cv-01180 (BLF)