**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JAN HARRISON, et al., | Case No. 13-cv-01180-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |
| E.I DUPONT DE NEMOURS AND COMPANY, et al., | |
| Defendants. | [RE: ECF 224, 226] |

On August 16, 2018, the Court heard (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and (2) Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards. For the reasons discussed below, the motions are GRANTED.

## I. BACKGROUND

In this indirect purchaser class action, Plaintiffs allege that Defendants conspired to and did fix the price of titanium dioxide sold in the United States in violation of federal and state laws. "Titanium Dioxide is . . . one of the most important inorganic chemicals used in the production of goods." Fourth Am'd Compl. ¶ 57. Its primary function "is to whiten or brighten Architectural Paint, paper, and plastic," although it "is also used in synthetic fiber production and to make inks, pharmaceutical coatings, toothpaste, sunscreen, cosmetics, food, rubber, ceramic, and other products." Fourth Am'd Compl. ¶ 58.

Defendants E.I. DuPont De Nemours and Company, Huntsman International, LLC, Kronos Worldwide, Inc., and Cristal USA Inc. (formerly known as Millennium Inorganic Chemicals, Inc.)

are dominant suppliers of titanium dioxide in the United States.  Fourth Am'd Compl. ¶ 2.

According to Plaintiffs, Defendants conspired to and did "manipulate, fix, raise, maintain, and

stabilize prices at which Titanium Dioxide is sold in the United States."  Fourth Am'd Compl. ¶ 3.

Plaintiffs allege that the artificially inflated prices of titanium dioxide were passed through to end-

user consumers of products containing titanium dioxide, with the result that Plaintiffs paid higher

prices for Architectural Paint than they would have paid in a competitive marketplace absent

Defendants' price-fixing.  Fourth Am'd Compl. ¶ 5.

Plaintiffs assert the following claims individually and on behalf of others who purchased

Architectural Paint for personal use in the United States:  (1) violation of state antitrust statutes;

(2) violation of state consumer protection statutes; (3) unjust enrichment; and (4) injunctive and

equitable relief under § 1 of the Sherman Act, 15 U.S.C. § 1.  Fourth Am'd Complaint, ECF 214.

A Settlement Agreement was reached in June 2017.  Cuneo Decl. ¶ 5, ECF 226-3.  On

December 13, 2017, the Court granted Plaintiffs' motion for preliminary approval of class action

settlement and set a fairness hearing for August 16, 2018.  *See* Order Granting Preliminary

Approval, ECF 223.  On June 11, 2018, Class Counsel discovered that Defendants had not served

notice of the Settlement Agreement on state and federal officials as required by the Class Action

Fairness Act ("CAFA").  *See* Cuneo Decl. ¶ 8, ECF 226-3; *see also* 28 U.S.C. § 1715(b) ("Not

later than 10 days after a proposed settlement of a class action is filed in court, each defendant that

is participating in the proposed settlement shall serve upon the appropriate State official of each

State in which a class member resides and the appropriate Federal official, a notice of the

proposed settlement.").  The parties subsequently negotiated an Amended Settlement Agreement

("Amended Agreement") that requires the Settlement Administrator to make no fewer than three

attempts to deliver claims checks to Damages Settlement Class members before processing those

claims under the appropriate state laws.  *See* Cuneo Decl. ¶ 9, ECF 226-3; Amended Agreement,

ECF 226-1.  The Settlement Administrator provided notice of the Amended Agreement to state

and federal officials on July 12, 2018.  Schey Decl. ¶ 8, ECF 226-2.

The parties' Amended Agreement defines a "Damages Settlement Class" and an

"Injunctive Relief Settlement Class" as follows:

> "Damages Settlement Class" means all purchasers who either (i) purchased Architectural Paint from a seller in a Damages State (defined in Paragraph 8 below), or (ii) who reside in a Damages State and purchased Architectural Paint in the United States, provided that in either case the Architectural Paint purchased was for personal use and not for resale containing, in some form, Titanium Dioxide manufactured by one or more of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof from January 1, 2002 until the date notice of this settlement is first distributed to the Damages Settlement Class, who do not timely opt out pursuant to Paragraphs 12 and 19 of this Agreement.

Amended Agreement ¶ 7.

> "Injunctive Relief Settlement Class" means all purchasers in the United States of Architectural Paint for personal use and not for resale containing, in some form, Titanium Dioxide manufactured by one or more of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof from January 1, 2002 until the date notice of this settlement is first distributed to the Injunctive Relief Settlement Class.

Amended Agreement ¶ 11.

Under the Amended Agreement, Defendants have agreed to provide a Settlement Fund in the amount of $3.5 million. Amended Agreement ¶¶ 16, 20. The Settlement Fund will be used to pay all settlement administration costs, any attorneys' fees awarded by the Court, any incentive award granted by the Court, and payments to members of the Damages Settlement Class. Amended Agreement ¶¶ 27, 39, 42-43.

The Settlement Administrator provided notice to Class members by implementing the Notice Plan approved by the Court when it granted preliminary approval of the class actions settlement. *See* Schey Decl., ECF 226-2. Notice was effected by means of a Settlement Website, press releases, internet notices, and print publications. *Id.* ¶ 9. The Settlement Website received 1,856,385 hits, and the Settlement Administrator received 150 calls, exchanged more than 180 emails, and received 24 mail-in requests for more information. *Id.* ¶¶ 13-17. The Settlement Administrator represents that the notice campaign reached at least 70% of the adult Internet users who were targeted and reached 11 million homeowners through ads in *Martha Stewart Living* and *This Old House*. *Id.* ¶ 18. During the claims period, the Settlement Administrator received 32,884 valid claims, seeking reimbursement for 398,332 gallons of paint. *Id.* ¶ 19. The Settlement Administrator received no objections and only one request for exclusion, from Home Depot U.S.A., Inc. *Id.*

On August 16, 2018, the Court heard Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards. The Court indicated on the record that both motions would be granted, but that the Court would delay issuance of a its written ruling until at least October 10, 2018, so as to be in compliance with CAFA. *See* 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). Plaintiffs' counsel indicated that Plaintiffs would submit a revised judgment after the October 10, 2018 date had passed. Plaintiffs submitted a revised Proposed Final Judgment and Order Approving Settlement on October 18, 2018.

The matter now being ripe for disposition, the Court addresses Plaintiffs' motions as follows.

## II.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A.    The Class Meets the Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule –

1    those designed to protect absentees by blocking unwarranted or overbroad class definitions –

2    demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

3    620 (1997).

4    　　　In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification

5    must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at

6    614.  Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or

7    fact common to class members predominate over any questions affecting only individual

8    members" and (2) "a class action is superior to other available methods for fairly and efficiently

9    adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

10   　　　The Court concluded that these requirements were satisfied when it granted preliminary

11   approval of the class action settlement.  *See* Order Granting Preliminary Approval, ECF 223.  The

12   Court is not aware of any new facts which would alter that conclusion.  However, the Court

13   reviews the Rule 23 requirements again briefly, as follows.

14   　　　Turning first to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that,

15   in light of the 32,884 valid claims received by the Settlement Administrator, joinder of all class

16   members would be impracticable.  *See* Schey Decl. ¶ 19, ECF 226-2.  The commonality

17   requirement is met because the key issue in the case is the same for all class members – whether

18   Defendants conspired to fix the price of titanium tioxide.  The named Plaintiffs' claims are typical

19   of the class members, as they purchased Architectural Paint.  *See Hanlon*, 150 F.3d at 1020

20   (typicality requires only that the claims of the class representatives are "reasonably co-extensive

21   with those of absent class members").  Finally, to determine Plaintiffs' adequacy, the Court "must

22   resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest

23   with other class members and (2) will the named plaintiffs and their counsel prosecute the action

24   vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.

25   2011) (internal quotation marks and citation omitted).  The Court has no reservations regarding the

26   abilities of Class Counsel or their zeal in representing the class, and the record discloses no

27   conflict of interest which would preclude the named Plaintiffs from acting as class representatives.

28   　　　With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes

are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common question in this case – whether Defendants conspired to fix the price of titanium dioxide – predominates. Given that commonality, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

### B.     The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### 1.     Notice was Adequate

The Court previously approved Plaintiffs' plan for providing notice to the class when it

granted preliminary approval of the class action settlement. *See* Order Granting Preliminary Approval, ECF 223. Prior to granting preliminary approval, the Court examined carefully the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and Due Process. *Id.* ¶ 4. Plaintiffs have provided declarations of counsel and the Settlement Administrator describing implementation of the notice plan. *See* Schey Decl., ECF 226-2; Cuneo Decl., ECF 226-3. Based on those declarations, it appears that at least 70% of the targeted Internet users were reached, and that in fact millions of households were reached by the class notice. The Court is satisfied that the class members were provided with the best notice practicable under the circumstances, and that such notice was adequate.

### 2.    Presumption of Correctness

Before discussing the *Hanlon* factors, the Court notes that "[a] presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)). The settlement in this case occurred after more than four years of litigation, which included substantial discovery and motion practice, and Class Counsel represents that it was the result of arms-length negotiations. *See* Cuneo Decl., ¶ 4, ECF 226-3.

The Court therefore concludes that on this record a presumption of correctness applies to the class action settlement.

### 3.    *Hanlon* Factors

Turning to the *Hanlon* factors, the Court first considers the strength of the plaintiff's case, weighing the likelihood of success on the merits and the range of possible recovery (factor 1). While Plaintiffs' claims survived motion practice, Defendants have articulated significant defenses in this case and have brought to the Court's attention the decision of another district court granting a defense motion for summary judgment on similar claims, which was affirmed by the Third Circuit Court of Appeals. *See Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 152 F. Supp. 3d 234 (D. Del. 2016), *aff'd*, 873 F.3d 185 (3d Cir. 2017). Thus, there is no guarantee that Plaintiffs would prevail at trial. With respect to the risk, expense, complexity, and duration of litigation

1  (factor 2), Plaintiffs would have faced significant hurdles, including opposition to class

2  certification.  Litigation likely would have been protracted in light of the nature of the claims and

3  the number of states' laws at issue.

4  Given the common questions of fact and law in this case, it is likely that the subclasses

5  would have been certified had the case progressed (factor 3).  The settlement recovery is

6  substantial (factor 4), as a class member who submits a claim for a single can of paint likely will

7  recover more than five dollars, and a class member who submits a claim for ten gallons likely will

8  recover more than fifty dollars.  *See* Schey Decl. ¶ 19, ECF 226-2.

9  Extensive discovery had been completed at the time of settlement, and the case has been

10  litigated since 2013 (factor 5).  The Court is satisfied that the parties are sufficiently familiar with

11  the issues in the case to have informed opinions regarding its strengths and weaknesses (factor 6).

12  Class Counsel and Defendants are represented by well-respected law firms.  Their views that the

13  settlement is a good one is entitled to significant weight.  *See In re Omnivision Techs., Inc.*, 559 F.

14  Supp. 2d 1036, 1043 (N.D. Cal. 2008).

15  There is no government participant (factor 7).  However, the class reaction to the

16  settlement is favorable (factor 8).  There were no objections, and only one opt-out.  *See* Schey

17  Decl. ¶ 19, ECF 226-2.

18  Based on the foregoing reasons, and after considering the record as a whole as guided by

19  the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the

20  settlement is not the result of collusion, and the settlement is fair, adequate and reasonable.

21  Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

22  **III.   MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

23  Plaintiffs seek an award of attorneys' fees in the amount of 21% of the $3.5 million

24  settlement fund, or $750,000.  They also seek reimbursement of litigation expenses in the amount

25  of $86,462.[1]  Finally, Plaintiffs request services awards in the amount of $1,500 for each class

26

27  _____

[1] In their motion, Plaintiffs requested expenses in the estimated amount of $89,813.54,
representing $79,813.54 in actual expenses and estimating up to $10,000 of additional expenses in

28  the final administration of the Settlement.  Cuneo Dec. ¶ 14, ECF 224-1.  However, in their
Proposed Final Judgment and Order Approving Settlement, Plaintiffs seek expenses in the amount

representative, for total service awards of $28,500.

### A. Attorneys' Fees and Expenses

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 1990). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

United States District Court
Northern District of California

---

of $86,462.00. *See* Proposed Final Judgment and Order ¶ 8, ECF 233. The Court understands the $86,462.00 figure to be the actual total amount of expenses incurred by Plaintiffs.

*Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Plaintiffs seek an award of $750,000, representing 21% of the $3.5 million settlement fund, and litigation expenses in the amount of $86,462.

Addressing expenses first, the Court has no hesitation in approving an award in the requested amount of $86,462.00. Class Counsel has submitted a declaration stating that all of the expenses were necessary to prosecution of this litigation. *See* Cuneo Decl. ¶¶ 11-15, ECF 224-1. The Court finds the requested expenses to be modest, considering the length of time this case was litigated and the substantial motion practice which occurred.

The Court likewise is satisfied that the request for attorneys' fees is quite reasonable. Using the percentage-of-recovery method, the Court starts at the 25% benchmark. *See Bluetooth*,

United States District Court
Northern District of California

654 at 942. The Court perceives no reason why the benchmark should be reduced, as the representation provided in this case, and the results, were excellent. A lodestar cross-check confirms the reasonableness of the requested fee, which is approximately 35% of the lodestar. *See* Cuneo Decl. ¶ 14, ECF 224-1.

Plaintiffs' motion for attorneys' fees and expenses is GRANTED. Plaintiff is awarded expenses in the amount of $86,462 and attorneys' fees in the amount of $750,000.

**B. Service Awards**

Plaintiffs request service awards of $1,500 for each class representative for total service awards of $28,500. Service awards, also referred to as incentive awards, "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). The Court finds that the requested award of $1,500 for each class representative is appropriate in this case, and that request is GRANTED.

**IV. ORDER**

(1)     Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED; and

(2)     Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards is GRANTED. Plaintiffs are awarded attorneys' fees in the amount of $750,000, expenses in the amount of $86,462, and service awards in the amount of $28,500 ($1,500 per class representative).

Dated:  October 22, 2018

_____
BETH LABSON FREEMAN
United States District Judge

11